```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF RHODE ISLAND
_____
                                   )
CONSERVATION LAW FOUNDATION,       )
INC.,                              )
                                   )
          Plaintiff,               )
                                   )       C.A. No. 17-396 WES
     v.                            )
                                   )
SHELL OIL PRODUCTS US, et al.,     )
                                   )
          Defendants.              )
_____)
```

**MEMORANDUM AND ORDER**

In this citizen-suit enforcement action brought under the Clean Water Act ("CWA") and the Resource Conservation and Recovery Act ("RCRA"), Defendants move to dismiss certain claims in Plaintiff's Third Amended Complaint, all of which relate to Defendants' conduct at the Providence Terminal ("the Terminal"). They say the so-called "Adaptation Claims", which challenge Defendants' failure to adapt the Terminal to prepare for incremental effects of climate change, are deficient. Having the benefit of trenchant briefing and argument, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion to Dismiss, ECF No. 46, as set forth below.

I.  Discussion

    A.  Standing

For the most part, Plaintiff has carried its burden of demonstrating associational standing to sue.  See Me. People's

All. & Nat. Res. Def. Council v. Mallinckrodt, Inc., 471 F.3d 277, 283 (1st Cir. 2006). That is, it has pleaded facts which, taken as true, plausibly establish an injury in fact, traceable to the challenged conduct and likely redressable with a favorable decision. See Spokeo Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).

Defendants' standing challenge largely centers on imminence, "a somewhat elastic" benchmark meant "to ensure that the alleged injury is not too speculative for Article III purposes — that the injury is certainly impending." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (emphasis and quotation marks omitted); see also Mallinckrodt, 471 F.3d at 283 (explaining that "probabilistic harms are legally cognizable").

To that end, and to the extent that its claims rely on future harms, Plaintiff lacks standing.[1] See Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (holding that the imminence requirement "ensures that the harm has either happened or is sufficiently threatening"). These flawed allegations include, for example, those detailing that, by 2100, the National Oceanic and Atmospheric Administration predicts — worst-case scenario — a greater-than-

---

[1] This follows Judge Wolf's holding in an analogous suit in the United States District Court for the District of Massachusetts, in which he found the plaintiff lacked standing as to harms in the far future but pleaded it for near-term harms from severe foreseeable weather events. See Conservation Law Found., Inc. v. Exxonmobil Corp., C.A. 1:16-cv-11950-MLW, Mar. 13, 2019 Tr. 127-28, ECF No. 73.

eight-foot sea level increase, and it is "virtually certain" the global mean sea level will continue to rise beyond then. Third Am. Compl. ("Compl.") ¶¶ 228-29, 232, ECF No. 45 (emphasis omitted). But as to near-term harms from foreseeable weather events, Plaintiff has asserted certainly impending harm, at least at this stage. See Clapper, 568 U.S. at 409. The Complaint makes clear that a major weather event, magnified by the effects of climate change, could happen at virtually any time, resulting in the catastrophic release of pollutants due to Defendants' alleged failure to adapt the Terminal to address those impending effects. While it might not occur for many years, the fact that it is certainly impending is enough to meet the standard.

Plaintiff's members use and enjoy the waters and roads near the Terminal, and are "affected by, and concerned with" Defendants' pollutant discharges. Compl. ¶¶ 11-13, 16-21. To establish a "concrete and particularized injury", "harm [that] in fact affects the recreational or even the mere esthetic interests of the plaintiff . . . will suffice." Summers v. Earth Island Inst., 555 U.S. 488, 494 (2009); see also Massachusetts v. United States Dep't of Health & Human Servs., 923 F.3d 209, 227 (1st Cir. 2019) (emphasizing that "[c]oncreteness requires something 'real, and not abstract'" (quoting Spokeo, 136 S. Ct. at 1548)). Plaintiff's members' declarations signal diminished enjoyment, apprehension over close contact with the waterways, and, in most cases,

decisions driven by that concern. See Sierra Club v. Morton, 405 U.S. 727, 734 (1972) ("Aesthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society[.]"). For example, one declarant rows near the Terminal, making contact with what he fears is polluted (or likely to be polluted) water unavoidable. Decl. of Timmons Roberts ¶¶ 6-7, 13, 16, ECF No. 47-2. A second declares the potential presence of pollutants deters him from swimming. See Decl. of David Riley ¶¶ 11-12, 17-21, ECF No. 47-5; see also Decl. of Howard Kilguss ¶¶ 6-8, 10, 13-14, ECF No. 47-6 (same). These attestations, supporting the well-pleaded allegations, reflect standing as to near-term harms. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

And Plaintiff's pleaded injury flows from the conduct it challenges: Defendants' failure to prepare the Terminal for the coming impacts of climate change. See Compl. ¶¶ 12-21. This "causal connection . . . permits tracing the claimed injury to . . . [D]efendant's actions". Mallinckrodt, 471 F.3d at 283. Plaintiff has pleaded all necessary elements as to near-term harms, so dismissal for lack of standing on these claims is not warranted.

B. Ripeness

For those same reasons, the matter is ripe for adjudication; this is especially true considering the First Circuit's recent recapitulation that "[t]he constitutional standing and ripeness

4

inquiries are interrelated and often duplicative". Foisie v. Worcester Polytechnic Inst., 967 F.3d 27, 35 (1st Cir. 2020).

C. Resource Conservation and Recovery Act

None of Defendants' arguments compels dismissal of the RCRA claims (except in one narrow respect). Foundationally, Plaintiff has pleaded the existence of solid and hazardous waste at the Terminal. See, e.g., Compl. ¶¶ 54-60, 407-11, 425-28 (describing alleged waste at the Terminal and status as generator of hazardous waste); Compl. Ex. L. ("2019 Permit") 32-33, ECF No. 45-12 (noting that the Terminal "stores and handles pollutants listed as toxic under Section 307(a)(1) of the CWA or pollutants listed as hazardous under Section 311 of the CWA and has ancillary operations which could result in significant amounts of these pollutants reaching the Providence River"); see also Mallinckrodt, 471 F.3d at 290 (recognizing "section 7002(a)(1)(B) applies to both solid waste and hazardous waste") (emphasis removed).

Plaintiff pleads that the alleged waste "may present an imminent and substantial endangerment to health or the environment". 42 U.S.C. § 6972(a)(1)(B); see, e.g., Compl. ¶¶ 409-22. Clarifying this "imminent and substantial endangerment" standard, the Supreme Court said in Meghrig v. KFC W., Inc., "[a]n endangerment can only be imminent if it threatens to occur immediately . . . ." 516 U.S. 479, 485 (1996) (internal quotation marks and alteration omitted). "May present", as the statute

5

reads, "implies that there must be a threat which is present now, although the impact of the threat may not be felt until later." Id. at 486 (internal quotation marks and citation omitted). Plaintiff has pleaded facts satisfying this standard (even if the harm may be well in the future) where Plaintiff theorizes that Defendants' failure to prepare the Terminal for the threat of foreseeable weather events is an imminent endangerment. See Compl. ¶¶ 409-22 (alleging that Defendants' failure to consider climatological data and adapt the Terminal (through prudent engineering or otherwise) poses a substantial and imminent risk); see also Mallinckrodt, 471 F.3d at 279 & n.1 (holding that RCRA "allows citizen suits when there is a reasonable prospect that a serious, near-term threat to human health or the environment exists", emphasizing "[i]t is the threat that must be close at hand, even if the perceived harm is not"); see also Crandall v. City & Cty. of Denver, 594 F.3d 1231, 1238 (10th Cir. 2010) ("No harm will result for years, but the endangerment already exists because that harm can result if remedial action is not taken in the interim.") (internal quotation marks and citation omitted).

And, as necessary, Plaintiff also alleges Defendants exercise control over the Terminal and its waste disposal processes, see, e.g., Compl. ¶¶ 48, 63, 408, 414, and have "contribut[ed] to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste", 42 U.S.C. §

6

6972(a)(1)(B). See Compl. ¶¶ 54-63, 407-11, 425-28; see also Hinds Invs., L.P. v. Angiolo, 654 F.3d 846, 851 (9th Cir. 2011) (explaining "contribution" requires active involvement in or some control over the waste disposal process, and courts have allowed claims to continue "with some allegation of defendants' continuing control over waste disposal"); United States v. Aceto Agric. Chems. Corp., 872 F.2d 1373, 1383 (8th Cir. 1989) (holding that explicit allegations of control are not required).[2]

Plaintiff's regulatory claim also survives, with some slight trimming. Its reliance on federal regulations fails easily; no federal regulation applies where Rhode Island maintains its own program. See 250 R.I. Code R. 140-10-1.4; see also Compl. ¶¶ 433-34. But its allegations of state regulatory violations, plausibly pleaded, endure Defendants' challenge at this stage. See Compl. ¶¶ 424-36; 250 R.I. Code R. 140-10-1.7.12(I)(1) (requiring that large quantity generators "maintain and operate their facilities in a manner that minimizes the possibility of a fire, explosion, or any unplanned spill or release of hazardous waste or hazardous waste constituents to the air, soil, or surface waters of the State"); id. 140-10-1.7.13(H)(1) (same, for small quantity generators); id. 140-10-1.7.14(H)(1) (same, for conditionally exempt small quantity generators).

---

[2] The First Circuit has not yet weighed in on this issue.

In sum, giving Plaintiff all due deference, both RCRA claims survive this early test.

D.  Clean Water Act

The CWA Adaptation claims relate to a National Pollutant Discharge Elimination System ("NPDES") Permit ("the Permit") issued through the Rhode Island Pollutant Discharge Elimination System program.  See Compl. ¶¶ 36, 42, 71.  As a condition of the Permit, the Storm Water Pollution Prevention Plan ("SWPPP") must be "prepared in accordance with good engineering practices and identify potential sources of pollutants" that "may reasonably be expected to affect the quality of storm water discharges associated with industrial activity from the facility."  2019 Permit 16 (emphasis added).  It must "describe and ensure the implementation of Best Management Practices (BMPs) which are to be used to reduce or eliminate the pollutants in storm water discharges" and "assure compliance with" the Permit.  Id.  Defendants "shall immediately amend the SWPPP . . . if the SWPPP proves to be ineffective in achieving the general objectives of controlling pollutants in storm water discharges associated with industrial activity."  Id.

These "permits are treated like any other contract".  Nat. Res. Def. Council, Inc. v. Cty. of Los Angeles, 725 F.3d 1194, 1204 (9th Cir. 2013); see also Piney Run Pres. Ass'n v. Cty. Comm'rs of Carroll Cty., Md., 268 F.3d 255, 269 (4th Cir. 2001).  Plaintiff's claims entail interpretating the Permit — asking, for

example, whether "good engineering practices" require preparing the Terminal for catastrophic weather, or whether the current SWPPP would be "ineffective" during such events — and state plausible claims under the CWA.

And because this suit does not challenge the Permit's terms (as Defendants suggest), the Court has jurisdiction over it, see 33 U.S.C. § 1365(a), and Defendants cannot invoke the permit shield to avoid it. See id. § 1342(k); see also Piney, 268 F.3d at 265 (explaining compliance with permit terms avoids liability); see, e.g., Compl. ¶¶ 13, 285, 292, 300, 304, 310, 315, 333, 338 (alleging noncompliance with the Permit). None of Defendants' other arguments persuades the Court to dismiss at this stage.

E. Motiva Enterprises LLC

Defendants ask the Court to dismiss Defendant Motiva Enterprises LLC ("Motiva"), arguing a past owner cannot be a present violator. See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 59-63 (1987)(holding that the CWA does not permit suits for "wholly past" violations). Motiva operated the Terminal before its dissolution in May 2017, Compl. ¶ 26, but Motiva's continued control is a live issue. See Paolino v. JF Realty, C.A. No. 12-039-ML, 2013 WL 3867376, at *4 (D.R.I. July 24, 2013) (allowing suit to proceed against former owner where that defendant potentially maintained control); see also Friends of the Sakonnet v. Dutra, 738 F. Supp. 623, 633 (D.R.I. 1990)

9

(dismissing former owner defendants, mentioning "they have no control over the pollution source"). Dismissal is thus, at best, premature.

F. Outfall 003A

The latest iteration of the Permit eliminated monitoring requirements for Outfall 003A, and so Defendants move to dismiss claims stemming from it. Plaintiff, when it sued, alleged Defendants were in violation of the CWA related to Outfall 003A, and it now argues persuasively that subject matter jurisdiction turns on the posture of a citizen suit at its inception. See also Gwaltney, 484 U.S. at 59 (recognizing "[a] citizen suit may be brought only for violation of a permit limitation 'which is in effect under the Act'" (quoting 33 U.S.C. § 1365(f)); see also U.S. Pub. Interest Research Grp. v. Atl. Salmon of Me., LLC, 339 F.3d 23, 33 (1st Cir. 2003) (explaining "only citizen suits alleging that defendants are in violation of the Clean Water Act at the time suit is brought are cognizable") (emphasis in original). These allegations therefore survive. Cf. Atl. States Legal Found., Inc. v. Pan Am. Tanning Corp., 993 F.2d 1017, 1021 (2d Cir. 1993) (holding that, even where wrongful conduct could not reasonably be expected to recur, "civil penalties can still be imposed, though only for post-complaint violations and for violations that were ongoing at the time plaintiffs filed suit").

G. Abstention and Primary Jurisdiction[3]

Last, the Court declines to exercise its discretion to abstain under Burford v. Sun Oil Co., 319 U.S. 315 (1943). Whether abstention is ever appropriate in these cases, "the circumstances justifying [it] [are] exceedingly rare", Chico Serv. Station, Inc. v. Sol P.R. Ltd., 633 F.3d 20, 31-32 (1st Cir. 2011), and are absent here. Neither does the primary jurisdiction doctrine favor dismissal (or a stay, if Defendants seek one) of this case. See Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Envtl. Prot., 196 F.3d 302, 304 (1st Cir. 1999). Like abstention, the doctrine's role in these cases is unsettled. See, e.g., PMC, Inc. v. Sherwin-Williams Co., 151 F.3d 610, 619 (7th Cir. 1998) (Posner, J.) (calling applying the doctrine of primary jurisdiction to these cases an "end run around RCRA"). But see Mallinckrodt, 471 F.3d at 292 (discussing RCRA, and remarking that the district court "sensibly left open the possibility that primary jurisdiction concerns could arise in the future") (internal citation and quotation marks omitted). Even so, its application is not justified in this case.

II. Conclusion

For these reasons, Defendants' Motion to Dismiss, ECF No. 46, is GRANTED IN PART AND DENIED IN PART; Plaintiff's Complaint

---

[3] The Court acknowledges the State of Rhode Island for its thorough amicus brief.

survives except insofar as Plaintiff lacks standing for future harms and to the extent it relies on federal regulations to support Claim 22.

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
District Judge
Date: September 28, 2020