## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., | |
| Plaintiff, | C.A. No. 1:17-cv-00396-WES-LDA |
| v. | |
| SHELL OIL PRODUCTS US, SHELL OIL COMPANY, SHELL PETROLEUM, INC., SHELL TRADING (US) COMPANY, MOTIVA ENTERPRISES LLC, TRITON TERMINALING LLC, and EQUILON ENTERPRISES LLC, | HEARING REQUESTED |
| Defendants. | |

**PLAINTIFF CONSERVATION LAW FOUNDATION'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO ALL DEFENDANTS**

## Table of Contents

I.   Introduction .................................................................................................................. 1

II.  Background ................................................................................................................... 4

   A.   Issues that Remain in Dispute ................................................................................ 8

     1.   Relevance/Scope of Documents Beyond the Providence Terminal ............................ 8

     2.   Delay in Document Production and Resolution of Search Terms ............................... 8

     3.   Time Period ............................................................................................................. 9

     4.   The Definition of "Climate Change" and Related Terms ........................................ 10

     5.   Appropriateness of General Objections ................................................................... 10

     6.   Miscellaneous Additional Objections ...................................................................... 11

III. Argument ................................................................................................................... 12

   A.   Documents Regarding Shell's Knowledge of the Risks of Climate Change and Actions It Has Taken in Response Are Relevant and Discoverable ............................................. 17

     1.   Requests Where Defendants Have Refused to Produce Any Documents Related to Shell's Knowledge of, or Actions Taken in Response to, Climate Change ......................... 26

     2.   Requests Where Defendants Have Improperly Limited Their Production of Documents Concerning Shell's Knowledge of Climate Change to Only Those that Relate to the Terminal .................................................................................................................. 47

   B.   Rolling Productions and Conditional Objections .......................................................... 52

     1.   Delay in Production of Documents ........................................................................... 52

     2.   Requests Where Production is Conditionally Based on Search Terms ...................... 55

   C.   Time Period Objections ............................................................................................... 68

     1.   Defendants Waived Any Time Period Objection if It Was Not Raised in Specific Objections .................................................................................................................... 72

     2.   The Court Should Overrule Defendants' Time-Period Objections as Improperly Vague and Impermissible "Conditional Responses" ........................................................... 78

     3.   The Time Period for CLF's Requests is Appropriate and Defendants' Objections Should Be Overruled ................................................................................................. 82

   D.   General Objections ...................................................................................................... 99

   E.   Miscellaneous Requests Where Defendants Refuse to Produce Relevant Documents (Request Nos. 4, 6, 7, 22, 31) .................................................................................. 102

IV.  Conclusion ................................................................................................................. 109

Fed. R. Civ. P. 37(a)(1) CERTIFICATION ................................................................... 114

Appendix 1 – Index of Exhibits Filed with this Motion ............................................... A-1

Appendix 2 – Chart of Requests and Related Disputes ................................................ A-2

Plaintiff Conservation Law Foundation, Inc. ("CLF") hereby moves pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule Cv 37 for an order compelling Shell Oil Products US, Shell Oil Company, Shell Petroleum, Inc., Shell Trading (US) Company, Motiva Enterprises LLC, Triton Terminaling LLC, and Equilon Enterprises LLC (collectively, "Defendants") to produce documents responsive to CLF's First Set of Requests for Production to All Defendants ("First RFPs").[1],[2] On May 28, 2021, CLF served the First RFPs, consisting of 62 requests for production, upon Defendants. In response, Defendants have produced only a limited number of responsive documents while maintaining various objections to CLF's requests. *See* Defendants' Responses to Plaintiff's First Set of Requests for Production to All Defendants ("Responses to First RFPs").[3] As detailed below, CLF and Defendants have met on multiple occasions and exchanged letters in an attempt to limit disputes and avoid the necessity of filing a motion to compel production. The Parties have nevertheless reached an impasse on several of these issues. CLF thus moves for an order overruling the objections and compelling production of documents responsive to the First RFPs.

## I.    INTRODUCTION

CLF filed this action to halt Defendants' longstanding and ongoing violations of the Clean Water Act and Resource Conservation and Recovery Act ("RCRA") at their bulk petroleum storage terminal in Providence, Rhode Island (the "Terminal"). As relevant to the present Motion (and as explained in more detail in Sections II and III.A, below), CLF alleges that Defendants have failed to evaluate and address the reasonably foreseeable risks to the Terminal posed by severe weather, including risks associated with climate change, which threaten to flood the Terminal and

---

[1] Attached hereto as Exhibit A.

[2] *See* Appendix 1 for an index of Exhibits accompanying the instant Motion.

[3] Attached hereto as Exhibit B.

release millions of gallons of oil and other toxic chemicals into surrounding neighborhoods and the environment. Defendants' actions (i) violate the terms of Defendants' Clean Water Act permit, including the obligation to satisfy "good engineering practices," (ii) violate the requirement to "maintain and operate their facilit[y] in a manner that minimizes the possibility of a fire, explosion, or any unplanned spill or release of hazardous waste constituents into the air, soil, or surface waters of the State," 250 R.I. Code R. § 140-10-1.7.12(I)(1); *id.* § 140-10-1.7.13(H)(1); *see also id.* § 140-10-1.7.14(H)(1), and (iii) present an imminent and substantial endangerment to human health and the environment under RCRA.

The primary dispute between the Parties centers on the relevance of documents that do not expressly refer to Defendant's bulk petroleum storage terminal in Providence, Rhode Island, including Shell corporate policies that set standards for the resilience of its infrastructure to severe weather risks and climate change, as well as analyses of pollution discharges from other Shell facilities during major storms, such as Superstorm Sandy. As described in detail in Section III.A below, Defendants' parent company, Royal Dutch Shell, has represented to the public and to government regulators that it has a detailed, centralized approach and process—applicable to the Shell family of companies such as Defendants—to evaluate and address risks to the physical infrastructure of Shell companies' facilities around the globe. This process includes, among other things, setting and utilizing engineering standards for infrastructure and employing a "Metocean Team" to evaluate Shell facilities.

Despite these representations, and despite publicly available documents indicating that Shell has known about and studied climate risks for decades, Defendants maintain their objections that documents that do not directly address the Terminal itself are not discoverable. To avoid discovery of these materials, Defendants claim that all climate change and severe weather risk

2

analyses are conducted by management at the individual facilities without centralized corporate policies, processes, or standards. In light of these conflicting representations and giving Defendants the benefit of the doubt, it appears only one of two possibilities is true: either (i) Royal Dutch Shell's representations to the public and to its regulators are false, or (ii) Defendants are violating Shell's policies in the operation of the Terminal. Either way, these documents are highly relevant for determining whether Defendants have satisfied their obligation to adequately prepare the Terminal for severe weather so as to prevent pollutant discharges.

Documents showing corporate policies and pertaining to facilities other than the Terminal are also highly relevant to several issues in this case including, among others, (i) the evaluation of what actions are required under the "good engineering practices" standard and whether Shell has complied with that standard, (ii) Defendants' knowledge of the risks to the Terminal, and their failure to disclose or address those risks as required under the Clean Water Act and RCRA, and (iii) the egregiousness of Defendants' violations. To the extent that there is a disconnect between Royal Dutch Shell's public representations about how it evaluates and prepares for climate change risks and Shell's actions with respect to the Terminal, CLF is entitled to production of documents to probe that discrepancy.

Furthermore, despite Defendants' numerous public acknowledgements of the reality and severity of climate change and severe weather risks, in this litigation Defendants have forcefully argued that the risks posed by severe weather are "highly speculative, remote, or hypothetical." Defs.' Mem. of Law in Support of MTD, ECF 46-1 at 14. These two positions stand in stark contrast and production of records addressing Defendants' actual knowledge and actions addressing climate change and severe weather risks is the only avenue to assess the veracity of

Shell's litigation position, as well as their understanding of appropriate engineering and management of the Terminal.

In addition to the dispute over the relevance of documents that do not expressly relate to the Terminal, Defendants are also withholding documents on several other grounds, including an unstated and unsupportable time period limitation. These disputes are addressed in Sections III.B (Rolling Production and Search Terms), III.C (Time Period), III.D (General Objections), and III.E (Miscellaneous Requests), below.

## II.   Background

CLF filed the instant case in August of 2017 under the citizen suit enforcement provisions of the Clean Water Act and RCRA, seeking declaratory, injunctive, and other relief to remedy Defendants' violations of these statutes, including their failure to evaluate and address the reasonably foreseeable risks to the Terminal posed by climate change-induced severe weather. In October of 2019, Defendants moved to dismiss a number of the claims in CLF's Third Amended Complaint ("TAC"), including claims regarding Defendants' failure to adapt the Terminal to prepare for incremental effects of climate change (the "Adaptation Claims"). *See* Motion to Dismiss, ECF No. 46. In its September 2020 order, this Court denied Defendants' motion "as to near-term harms from foreseeable weather events," writing that:

> The Complaint makes clear that a major weather event, magnified by the effects of climate change, could happen at virtually any time, resulting in the catastrophic release of pollutants due to Defendants' alleged failure to adapt the Terminal to address those impending effects. While it might not occur for many years, the fact that it is certainly impending is enough to meet the standard.

Mem. and Ord, ECF No. 55 at 3 (Sept. 28, 2020) ("Ord. on MTD"). Subsequently, Defendants filed their Answer to the TAC and the Court entered a schedule for discovery, which has since been amended. *See* ECF No. 64.

4

On May 28, 2021, CLF served the First RFPs and First Set of Interrogatories[4] on Defendants. On June 14, 2021, Defendants requested an additional sixty days to respond to the First RFPs. CLF agreed to the requested extension. On July 29, 2021, Defendants requested a further 30-day extension to respond to CLF's First RFPs and First Interrogatories. On August 3, 2021, the Parties held a meet-and-confer where (i) CLF agreed to extend the deadline for Defendants' interrogatory responses to August 27, 2021, and (ii) the Parties entered into a joint agreement governing discovery of electronically stored information. On August 9, 2021, prior to serving their responses to CLF's First RFPs, Defendants sent a letter[5] to CLF detailing several broad objections to the First RFPs. On August 13, 2021, Defendants served their formal Responses to First RFPs upon CLF, asserting various objections to the First RFPs. *See generally*, Exhibit B.

CLF worked diligently with Defendants to resolve or narrow the areas of dispute between the Parties. On August 18, 2021, CLF sent Defendants a letter[6] responding to the objections contained in Defendants' August 9 Letter. On August 20, 2021, the Parties met and conferred regarding the areas of dispute raised in their respective letters, mainly discussing disagreement over the scope of discovery and confirming that Defendants were conducting a search for responsive documents and would produce documents notwithstanding their general objections.[7] This conversation was general, as Defendants had only served their Responses to the First RFPs seven days prior. On September 1, 2021, the Parties jointly moved to amend and extend the discovery schedule, ECF No. 63, and the Court granted the joint motion on September 3, 2021,

---

[4] Because resolution of discovery disputes with regard to the First RFPs is expected to resolve similar disputes regarding the First Set of Interrogatories, only Defendants' Responses to First RFPs are the subject of the instant motion.

[5] Attached hereto as Exhibit C.

[6] Attached hereto as Exhibit D.

[7] *See* Exhibit E, attached hereto, for an email chain between Ian Coghill and Roy Prather, regarding the August 20 meeting.

ECF No. 64. On September 10, 2021, CLF sent Defendants a letter[8] specifically responding to the objections raised in Defendants' Responses to First RFPs, highlighting issues with Defendants' objections, stating that CLF could not accept Defendants' narrowing of "relevance" to documents only concerning the Terminal, and confirming that there would need to be some movement on Defendants' part for CLF not to seek the Court's intervention. The Parties held another meet-and-confer on September 13, 2021,[9] where CLF explained, among other things, the disconnect between Defendants' statements that climate resilience and infrastructure issues are addressed at the Terminal level with higher-level corporate statements implying centralization of these topics. Defendants responded to CLF's September 10 correspondence in another letter[10] sent on September 23, 2021, offering to meet again to narrow some of the areas of dispute, including specifically Defendants' issue with the default time period.

The Parties met and conferred again on September 27, 2021, where CLF expressed frustration that Defendants had not provided proposals to narrow the disputes and, instead, maintained blanket relevance objections.[11] Two days later, on September 29, Shell provided another letter[12] restating their objections to Requests they had already flatly refused to respond to and without including any substantive narrowing proposals for any Requests. CLF responded in a letter dated October 1, 2021.[13] The Parties held yet another meet-and-confer on October 4, 2021 to address Defendants' objection to the time frame of some of the RFPs. Once again, Defendants

---

[8] Attached hereto as Exhibit F.

[9] *See* Exhibit Q, attached hereto, for an email chain between Ian Coghill and Roy Prather, regarding the September 13 meet-and-confer.

[10] Attached hereto as Exhibit G.

[11] *See* Exhibit H, attached hereto, for an email between Ian Coghill and Roy Prather, regarding the September 27 meeting.

[12] Attached hereto as Exhibit I.

[13] Attached hereto as Exhibit J.

did not offer a specific narrowing proposal, but agreed to provide more specifics in a follow-up email later that week. The Parties exchanged several additional emails, but as of November 3, 2021, agreed that an impasse had been reached on several issues, including the scope of relevance and the default time period.[14] The Parties continued to exchange emails regarding search terms until Defendants agreed to run CLF's proposed terms on November 15, 2021.[15]

Seven months after CLF served its First RFPs, Defendants have produced only a limited number of documents in response the First RFPs. The documents that have been produced do not identify which Requests they are responsive to, nor do they include a description in cover letters of what the documents are or where they were obtained. In addition, while Defendants inadvertently produced documents marked as attorney work product—which CLF advised Defendants about and then destroyed at Defendants' request—CLF has not received a privilege log of any documents withheld under any claimed privilege.

The Parties have successfully resolved disputes over several categories of objections. First, Defendants confirmed that they would provide a privilege log for any documents withheld on the basis of attorney-client privilege or the work product doctrine. Exhibit G at 3.  Second, it is CLF's understanding that the Parties resolved Defendants' objection to CLF's use of the phrase "sufficient to show." Exhibit H at 2. Because the Parties have reached agreement on these issues, the instant Motion does not address those objections. The Parties have also conditionally agreed[16] on search terms for Electronically Stored Information ("ESI") for Requests to which Defendants

---

[14] *See* Exhibit K for an email chain between Ian Coghill and Roy Prather regarding time period discussions.

[15] *See* Exhibit L, attached hereto for an email chain between Roy Prather and Lili Peterson regarding search terms.

[16] CLF has reserved its right to propose new search terms based upon the hits from Defendants searches.

have not wholly objected,[17] although Defendants have not provided CLF with any feedback or documents from the searches. *See* Sections II.A.2, III.B.

### A.    Issues that Remain in Dispute[18]

### 1.    Relevance/Scope of Documents Beyond the Providence Terminal

One of the primary remaining disputes between the Parties is the relevance of documents that do not specifically pertain to the Providence Terminal. Defendants have taken the conclusory and legally unsupported position that only documents specifically related to the Providence Terminal are relevant to CLF's claims. While CLF has explained to Defendants why documents outside the fence line of the Terminal are relevant or could lead to relevant information, such as documents describing Defendants' actions at other similarly-situated facilities or corporate policies addressing climate change-related risks, Defendants have chosen to "limit their Responses to the Providence Terminal."[19]

CLF addresses this issue in Section III.A.

### 2.    Delay in Document Production and Resolution of Search Terms

Despite their agreement to conduct searches pending search terms discussions and to produce documents on a rolling basis, Defendants have turned over only two document productions to CLF (dated August 14, 2021, and November 8, 2021) totaling fewer than 1,800 documents, many of which are public records and others of which are duplicative of the 3,576 pages of materials CLF provided to Defendants on November 8, 2020, in connection with its initial

---

[17] While CLF has proposed search terms and search strings to which Defendants categorically object, CLF does not discuss those objections in this Motion. CLF believes the resolution of Defendants' objections to CLF's First RFPs as laid out here will help further discussion on those proposed search terms and strings, if not outright resolve the issues.

[18] *See* Appendix 2 for a chart of Requests and Related Disputes.

[19] Ex. B at 5.

disclosures. Defendants have failed to comply with their agreement to produce documents on a rolling basis.

CLF addresses this issue in Section III.B.

### 3.    Time Period

The Parties have been unable to agree on a relevant time period, in large part due to Defendants' changing position on this issue. At the beginning of the Parties' negotiations, Defendants stated that, despite making specific objections to the time period for certain Requests, Defendants "are not withholding any documents responsive to a RFP based upon their objection to the time period of the RFP, unless the RFP Response says so expressly." Exhibit E at 1-2 (confirming accuracy of CLF's summary of the parties' Aug. 20, 2021 meet-and-confer). Given these representations, CLF understood that Defendants were not withholding any documents based upon their time period objections unless expressly stated.

Later, however, Defendants changed course, stating that they were withholding documents from *all* Requests with a specific time period objection, even if the specific Response did not expressly limit their production. Of most concern to CLF, Defendants asserted a unilateral right to determine the relevant time period for any particular Request, *without disclosing* what time period Defendants found to be relevant. Exhibit G at 2.

Finally, Defendants changed their position again to assert their alleged right to withhold documents based on their as-yet unspecified "relevant" time period for a number of requests—regardless of whether Defendants had asserted a specific objection to the time period. Several times over the course of negotiations, CLF raised concerns about its inability to respond to Defendants' time period objections without a proposed time period. It was not until October 6, 2021 that Defendants finally offered a concrete proposal to which CLF could meaningfully

respond. CLF then offered a counter-proposal, which Defendants rejected. Accordingly, the Parties have reached an impasse on the issue.

CLF addresses the time-period issue in Section III.C.

### 4. The Definition of "Climate Change" and Related Terms

Five of Defendants' Responses object that the Requests are vague for using "climate change," "greenhouse effect," or related terms without defining the terms. *See* Responses to Request Nos. 10, 11, 23-25. CLF explained to Defendants that these terms are commonly understood, and in fact, Defendants have regularly used these terms both in this litigation and elsewhere. *See* Exhibit F at 2. The Parties conferred in an attempt to narrow the issue, but they were unable to reach a resolution.

In the instant Motion, CLF does not address this issue in its own section because the implicated Requests fall within several other categories. Instead, CLF has addressed this issue in Section III.A.1.j (the Basis for Relief for Request No. 24) and cross-references to this discussion in the Basis for Relief for other implicated Requests.

### 5. Appropriateness of General Objections

Defendants' Responses included a section entitled "GENERAL OBJECTIONS AND LIMITATIONS" with sixteen numbered items. The majority of these items are improper general objections that violate Local Rule Civil 34(b)'s requirement that objections be stated with specificity. CLF raised the issue with Defendants and attempted to confirm that they were not relying on the general objections. *See, e.g.,* Exhibit F at 1. Defendants maintained their position that general objections are permissible, but Defendants confirmed during the Parties' meet-and-confers that they were not relying on the general objections to withhold relevant documents. *See* Exhibit E at 1–2 (confirming Defendants "are not relying on their General Objections to withhold any documents responsive to a RFP and that any objection that Defendants are currently relying

on to withhold documents is expressly stated in their specific objections to the RFP."); Exhibit H at 1–2 (confirming same). However, as explained in Section III.C, Defendants later attempted to assert time period objections to Requests where Defendants did not include a time period objection. The lack of clarity regarding whether Defendants are relying on their general objections to withhold documents necessitates resolution by the Court.

CLF address the general objections in Section III.D.

### 6.      Miscellaneous Additional Objections

Finally, the Parties have more limited disputes concerning a few Requests that do not fall squarely within the other categories. CLF summarizes the disputed Requests below and addresses the disputes in detail in Section III.E.

***Request No. 4:*** The Parties dispute whether Defendants may limit their production of documents identifying individuals with supervisory or managerial roles at the Terminal related to only those individuals whom Defendants deem to work on issues implicated by CLF's Clean Water Act and RCRA claims. The Parties conferred in an attempt to resolve Defendants' concerns about the potential burden of the Request. Exhibit H at 1–2. However, Defendants have not provided any proposal to narrow the Request.

***Request No. 6:*** The Parties dispute whether Defendants may limit their production of documents related to corporate control of any activities at the Terminal to only documents concerning Defendants that have owned or operated the Terminal. CLF explained to Defendants that given the hierarchical structure of Shell's various subsidiaries, CLF is entitled to discovery of information concerning whether, and to what extent, entities in the corporate chain control the actions of subsidiaries. *See, e.g.,* Exhibit F at 4–5; Exhibit J at 8–9. Defendants flatly reject the relevance of these documents and refused to produce the requested documents. *See, e.g.,* Exhibit G at 6–7.

11

*Request No. 7*: The Parties dispute whether Defendants may limit their production of documents concerning environmental monitoring and analysis by contractors at the Terminal to only those contracts that Defendants deem to involve compliance with the Terminal's RIPDES permit or waste management. The Parties traded letters concerning the relevance of CLF's Request, but they were unable to reach an agreement. *See* Exhibit D; Exhibit G at 5.

*Request No. 22:* The Parties dispute whether Defendants may limit their production of documents regarding physical infrastructure changes at the Providence Terminal to only those documents that Defendants deem to be related to compliance with the Terminal's RIPDES permit or its obligations under RCRA. The Parties traded correspondence regarding the dispute, but they were unable to reach an agreement. *See* Exhibit D at 5; Exhibit G at 4.

*Request No. 31:* The Parties dispute whether Defendants may limit their production of communications with the State of Rhode Island or the City of Providence regarding the Terminal to only those documents that Defendants deem to be related to the Clean Water Act and RCRA claims in this case. The Parties traded letters concerning the relevance of CLF's Request, but they were unable to reach an agreement. *See* Exhibit D at 8; Exhibit G at 5.

*    *    *    *    *

CLF thus moves for an Order overruling Defendants' objections and compelling production of responsive documents.

## III.    Argument

The basic standard for discoverability is provided by Federal Rule of Civil Procedure 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

12

Fed. R. Civ. P. 26(b)(1).

The rules of discovery are to be accorded broad and liberal construction. *See*, *e.g.*, *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). "[D]istrict courts are to interpret liberally the discovery provisions of the Federal Rules of Civil Procedure to encourage the free flow of information among litigants." *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003). "The scope of discovery is broad, and to be discoverable, information need only appear to be reasonably calculated to lead to the discovery of admissible evidence." *Bonner v. Triple-S Mgmt. Corp.*, No. 19-1228 (BJM), 2021 WL 4295766, at *1 (D.P.R. Sept. 21, 2021) (quoting *Remexcel Managerial Consultants, Inc. v. Arlequin*, 583 F.3d 45, 52 (1st Cir. 2009)). Rule 26(b)(1) "does not condition the availability of discovery upon the likely admissibility of the information sought. If there is some legitimate relevance to the requested information and if no cognizable privilege attaches, it ought to be discoverable—at least in the absence of some countervailing consideration . . . ." *Bennett v. LaPere*, 112 F.R.D. 136, 138 (D.R.I. 1986).

This principle of broad and liberal construction is applicable to the Court's consideration of whether discovery is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The scope of what is relevant and therefore discoverable "is framed by the pleadings," and "because discovery itself is designed to help define and clarify the issues, the limits set forth in Rule 26 must be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Nat'l Liab. & Fire Ins. Co. v. Carman*, No. 17-CV-038-WES, 2017 WL 11477214, at *1 (D.R.I. Dec. 12, 2017) (quoting *Fudge v. Time Warner Cable, Inc.*, No. 3:16-CV-11396-MGM, 2017 WL 2836992, at *3 (D. Mass. June 30, 2017)). As a general matter, "relevancy must be

broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action." *Fudge v. Time Warner Cable, Inc.*, No. 3:16-CV-11396-MGM, 2017 WL 2836992, at *3 (D. Mass. June 30, 2017) (quoting *Cherkaoui v. City of Quincy*, No. 14-CV-10571-LTS, 2015 WL 4504937, at *1 (July 23, 2015).

Federal Rule of Civil Procedure 34(a) authorizes parties to request the production of any documents that fall with the scope of Rule 26(b). When objecting to any part of a document request, the objection must "*state with specificity* all grounds upon which the objecting party relies. Any ground not stated in an objection *shall be deemed waived*." Local Rule Cv 34(b) (emphasis added). "The requirement that the grounds for objecting be stated with specificity under each individual request precludes the consideration of any generic general objections." *Id.* Objections to document requests "must include reasons and, in this District, must be stated with specificity." *Cornell Corr. of R.I., Inc. v. Cent. Falls Det. Facility Corp.*, No. 11-CV-491-WES-PAS, 2012 WL 6738283, at *2 (D.R.I. Dec. 28, 2012). "[T]o the extent [a respondent] intends to stand by its objections and withhold documents based on relevance, burden, and/or vagueness*, it must articulate precisely why a particular discovery request calls for irrelevant information or uses vague terms and/or why responding to it would be unduly burdensome*." *HealthEdge Software, Inc. v. Sharp Health Plan*, No. 19-CV-11020-ADB, 2021 WL 1821358, at *4 (D. Mass. May 6, 2021) (citations omitted) (emphasis added).

"If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Fed. R. Civ. P. 37(a)(3)(A). In filing a motion to compel, "the moving party bears the burden of making an initial showing that the requested documents are relevant, and if that showing is made, the opposing party bears the burden of showing that the requested production is improper." *Keefe v. LendUS, LLC*, No. 20-CV-195-JD,

2021 WL 3550036, at *1 (D.N.H. Aug. 11, 2021) (citations omitted). Once CLF has satisfied its initial burden, Defendants "bear[] the burden of establishing lack of relevancy or undue burden." *Autoridad de Carreteras y Transportacion v. Transcore Atl.*, 319 F.R.D. 422, 427 (D.P.R. 2016); *see also* 8 Fed. Prac. & Proc. Civ. § 2008 & nn. 31, 31.5 (3d ed.) (collecting cases). Regarding electronically stored information, "*the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost*. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause . . . ." Fed. R. Civ. P. 26(b)(2)(B) (emphasis added).

The material sought through the instant Motion lies at the heart of CLF's claims. The Motion broadly seeks to compel production of documents concerning (i) Defendants' knowledge and analyses of the severity and imminence of risks posed to their infrastructure by severe weather and climate change, (ii) corporate policies and practices governing the climate resilience of Shell's infrastructure, and (iii) actions taken at and severe weather impacts already affecting Shell's other facilities similar to the Terminal. As described in Section III.A, this material is relevant to various issues in this case including, among others: (i) the severity and imminence of risks to the Terminal, (ii) the requirements of "good engineering practices," and (iii) whether Defendants are satisfying the "good engineering practices" standard.

The instant Motion divides the relevant Requests into categories based upon the type of documents sought and the type of objections raised by Defendants. Section III.A concerns documents regarding Defendants' knowledge of the risks of climate change and actions they have taken in response, and begins by explaining generally why these documents are relevant and discoverable before discussing each RFP individually. Section III.B discusses Defendants' failure to make rolling productions despite having agreed to do so. Section III.C concerns RFPs over

which the only dispute is the relevant timeframe. Section III.D discusses Defendants' improper reliance on general objections. Section III.E concerns additional requests in dispute. In the Sections below, as required by Local Rule Cv 37, each RFP for which CLF is moving to compel a response is listed, along with the response made and the reasons why CLF maintains that the response is inadequate. Where a Request falls within multiple categories, CLF only reproduces it in the first Section in which it appears.

As an initial matter, however, Defendants' make boilerplate vagueness, proportionality, and burden arguments in their objections to virtually every Request. These objections are waived for lack of specificity. An objection to a discovery request must "state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). "[B]oilerplate generalized objections are inadequate and tantamount to not making any objection at all." *HealthEdge Software, Inc. v. Sharp Health Plan*, No. 19-CV-11020-ADB, 2021 WL 1821358, at *4 (D. Mass. May 6, 2021) (citations omitted); *see also Cornell Corr. of Rhode Island, Inc. v. Cent. Falls Det. Facility Corp.*, No. CA 11-491S, 2012 WL 6738283, at *2 (D.R.I. Dec. 28, 2012) ("General or boilerplate objections do not comply" with the Federal or Local Rules) "Boilerplate objections that a request for discovery is overbroad and unduly burdensome are improper unless based on particularized facts." *Autoridad de Carreteras y Transportacion v. Transcore Atl.*, 319 F.R.D. 422, 427 (D.P.R. 2016) (citations and quotation marks omitted); *see also Brenford Envtl. Sys., L.P. v. Pipeliners of P.R., Inc.*, 269 F.R.D. 143, 146–47 (D.P.R. 2010) (finding that the defendant had waived its objections that a discovery request was "vague, overly broad and unduly burdensome" because its objections were insufficiently specific). Defendants' boilerplate overbreadth, burden, and proportionality objections do not explain how the requested documents are not relevant to CLF's claims or give CLF any basis to evaluate what Defendants

16

would deem to be relevant. Defendants also do not provide specific facts about how the Requests are overbroad, burdensome, or not proportional to the needs of the case. These objections are, therefore, waived.

### A.     Documents Regarding Shell's Knowledge of the Risks of Climate Change and Actions It Has Taken in Response Are Relevant and Discoverable

The primary dispute between the Parties concerns the relevance of documents that do not specifically refer to the Terminal, such as (i) documents concerning the Shell companies' knowledge of risks posed to infrastructure from severe weather and climate change, (ii) corporate policies regarding how to analyze and address climate-change risks to infrastructure, and (iii) documents concerning climate change preparation taken, and severe weather damages suffered, at other facilities owned by Shell. Defendants have maintained that only documents that specifically refer to the Terminal's design and operation are relevant and any other documents are outside the scope of CLF's claims. *See, e.g.,* Exhibit C at 2. However, as explained below, many categories of documents from outside the Terminal's fence-line are relevant and discoverable, including information regarding Shell's engineering policies and practices, whether those policies and practices were followed at the Terminal, and Defendants' understanding of the risks associated with climate change. Shell has a long and extensive history of research and analysis of climate impacts, as well as declarations calling for governments and companies to address those impacts, and has made many public statements suggesting that its own consideration of severe weather and climate change risk and resilience is centralized. These documents are discoverable for at least three reasons.

*First*, the requested material is relevant to the severity and imminence of the risks posed to the Terminal from climate change, as well as Defendants' knowledge about those risks. CLF has alleged that Defendants' failure to address the risks to the Terminal presents an "imminent and

substantial endangerment to human health and the environment," TAC ¶¶ 406–22, and the Court has held that CLF has standing to assert claims for near-term risks to the Terminal, Ord. on MTD at 3–4; 5–6. Similarly, CLF has also alleged that Defendants have failed to disclose to its regulators relevant information regarding the risks to the Terminal. TAC ¶¶ 329-334. CLF further alleges that Defendants misled RIDEM and the public by failing to disclose and address these risks in their SWPPP, permit application, and other filings with RIDEM. *See, e.g.,* TAC ¶¶ 274–93; 312–16; 331–32. CLF additionally alleges that Defendants' extensive history of public statements about the risks posed by climate change demonstrate that they are well aware of corresponding substantial danger to all of their infrastructure, including the Terminal; yet despite this knowledge, Defendants have failed to address those risks at the Terminal in violation of the Clean Water Act and RCRA.

Shell has long been aware of the present impacts and risks of climate change and has said that it was "one of the first energy companies to recognise the climate change threat and to call for action." TAC ¶ 132, (quoting Royal Dutch Shell plc, *Responsible Energy Sustainability Report* 2 (2008)). In 1986 Shell conducted a study, memorialized in an internal report entitled "The Greenhouse Effect," demonstrating a clear understanding that climate change is driven by increasing $CO_2$ concentrations in the atmosphere, which in turn is driven mainly by the burning of fossil fuels. TAC ¶ 170 (quoting Shell International BV, *The Greenhouse Effect* (1988), *available at* https://www.documentcloud.org/documents/4411090-Document3.html (last visited May 27, 2021). The same document contains discussion of climate change impacts, including "significant changes in sea level, ocean currents, precipitation patterns, regional temperatures, and weather." *Id.*

In 1991, Shell published a twenty-eight-minute educational film entitled "Climate of Concern," which warned about the risks of climate change. TAC ¶ 133, (quoting Damian Carrington and Jelmer Mommers, *'Shell Knew': Oil Giant's 1991 Film Warned of Climate Change Danger*, The Guardian (Feb. 28, 2017)). Shell claimed that the warning about climate change was "endorsed by a uniquely broad consensus of scientists in their report to the United Nations at the end of 1990." *Id.* The film says that "global warming is not yet certain, but many think that to wait for final proof would be irresponsible. Action now is seen as the only safe insurance." *Id.* In the decades since the film was released, Shell has participated in numerous international initiatives related to climate change, and Shell scientists have contributed to Intergovernmental Panel on Climate Change ("IPCC") Assessment Reports and Special Reports in capacities including Reviewer, Contributing Author, Expert Reviewer, and Lead Author. TAC ¶¶ 136-39. Shell scientists served in Working Groups I and III on the topics of Scientific Basis and Mitigation of Climate Change, respectively. TAC ¶ 138.

For 50 years, Shell has claimed to develop "scenarios" in order to "make crucial choices in uncertain times and tackle tough energy and environmental issues." TAC ¶ 135 (quoting Shell Global, *Earlier Scenarios*). Since the 1990s, Shell claims to have "helped other organisations in developing their own scenarios in various subject areas," including "climate change with the Intergovernmental Panel on Climate Change . . . ." *Id.* (quoting Peter Knight, *Profits and Principles – does there have to be a choice? The Shell Rep. 1998* 25 (1998)). Shell has contributed its "scenarios" to IPCC Assessment Reports and Special Reports since as early as 1995 and as recently as 2014. TAC ¶ 137.

Shell also has extensive knowledge and experience with exactly the kinds of asset losses from infrastructure failures—and more importantly, the resulting pollutant discharges—that CLF

has alleged in the TAC. Shell, in statements to the international non-governmental organization CDP,[20] stated that climate change is a chronic physical risk to the company, warning that "[g]lobal changes in the global hydrological cycle caused by climate change could impact Shell's assets, for example by causing flooding." Royal Dutch Shell plc, *CDP Climate Change 2020 Information Request* (2020) (Exhibit M at 11, row 3).[21] In 2019, Shell conducted a "preliminary internal risk assessment" that estimated that it would suffer between $800 million and $1.4 billion in losses between 2030-2050 from climate change impacts, including, among other things, "damage from storms and flooding and production downtime." Royal Dutch Shell plc, *CDP Climate Change 2019 Information Request* (2019) (Exhibit P at 6).[22] Major storms have causes substantial damage to Shell's facilities and resulted in substantial oil spills. Hurricane Katrina "disrupted Shell's operations in the Gulf of Mexico, USA, and led to refitting of some platforms and changes in operations." Royal Dutch Shell plc, *CDP Climate Change 2018 Information Request* (2018) (Exhibit O at 11).[23] As explained in the TAC, during Superstorm Sandy, a Shell terminal in Sewaren, New Jersey was inundated and released almost 400,000 gallons of oil into the environment. TAC ¶ 248. Any investigation into what caused the containment failure and how it could be avoided is highly relevant to identifying the risks at the Terminal.

This evidence illustrates Shell's knowledge of severe weather and climate-change-related risks and subsequent failure to address and disclose them: Shell is a large, sophisticated energy company that has been researching climate change and managing severe weather risks for decades.

---

[20] CDP, formerly the Carbon Disclosure Project, is a nonprofit organization dedicated to corporate accountability that requests "information on climate risks and low carbon opportunities from the world's largest companies on behalf of over 590 institutional investor signatories with a combined US$110 trillion in assets and 200+ major purchasers with over US$5.5 trillion in procurement spend." CDP, *Climate Change* (2021), *available at* https://www.cdp.net/en/climate.

[21] Excerpt attached hereto as Exhibit M.

[22] Excerpt attached hereto as Exhibit P.

[23] Excerpt attached hereto as Exhibit O.

The depth of Shell's knowledge of climate and severe weather impacts, such as sea level rise and increased frequency of severe storm events, and the risks of those impacts to infrastructure including the Terminal is probative of both what Shell was required to do to safely operate the Terminal and what Shell needed to disclose to Rhode Island Department of Environmental Management ("RIDEM"). It is, therefore, relevant and discoverable here.

*Second*, the requested material is also relevant for evaluating (i) what is required by the "good engineering practices" standard, and (ii) whether Defendants have violated that standard. CLF's claims require interpretation of what qualifies as a "good engineering practice"—language from Defendants' RIPDES Permit—to analyze and address climate change risks at facilities like the Terminal. Shell's policies and procedures for analyzing and addressing such risks are clearly relevant to the inquiry of what qualifies as "good engineering practices."

Indeed, Shell's decades-long development of scenarios suggests an embedded company practice dedicated to understanding climate and severe weather risks, and Shell has made numerous statements describing centralization of climate change risk and resilience consideration. According to its 2020 Annual Report, "Shell has established specialist forums at different levels of the organisation where climate change and GHG-related matters are addressed, monitored and reviewed. Each Shell entity and each Shell-operated venture is responsible for implementing climate change policies and strategies." Royal Dutch Shell plc, *Powering Progress: Annual Report and Accounts 2020* 96 (2021), *available at* https://reports.shell.com/annual-report/2020/servicepages/downloads/files/shell-annual-report-2020.pdf. Shell has also stated that it has established global teams that "support the businesses in monitoring and addressing certain physical risks of climate change," including by providing "direct technical assistance to facilities, based on their analysis of the potential impacts of climate change in different operating environments." *Id.*

21

at 97. Shell's teams also incorporate "considerations of certain potential physical climate change risks in the internal Design and Engineering Practice (DEP) requirements for new projects" and then periodically reviews these DEPs "to take account of changes in the risk environment, including emerging weather and climate factors." *Id.*

In its 2020 statement to the CDP, Shell repeats that it has "set up several dedicated climate change and GHG-related forums at different levels of the organisation where climate change issues are addressed, monitored and reviewed." Exhibit M at 2. In the same document, Shell acknowledges that "[g]lobal rising sea levels could potentially impact Shell's coastal facilities (e.g. refineries, ports, terminals, etc.) and our offshore platforms. Changes in the global hydrological cycle caused by climate change could potentially impact Shell's assets, for example by causing flooding . . . ." *Id.* at 11, row 3.

Additional confirmation of Shell's centralized approach to assessment and management of climate change and associated risks can be found in a recent court decision from the Netherlands. In that case, the Hague District Court was asked to decide whether Royal Dutch Shell was liable for the emissions of its subsidiaries in the Shell group. Rechtbank Den Haag [The District Court of The Hague], 26 May, 2021, Rechtspraak.nl, ECLI:NL:RBDHA:2021:5339 (Neth.), *available at* https://uitspraken.rechtspraak.nl/inziendocument?id=ECLI:NL:RBDHA:2021:5339.[24]   The court noted that Shell has stated that its CEO "has ultimate responsibility for the general management" of the company and is responsible for Shell's climate change plan. *Id.* at 2.5.6. The court also noted that Shell had stated that the Royal Dutch Shell Board is responsible for overseeing and implementing policies related to climate change issues. *Id.* at 2.5.7. The court found that individual Shell companies have the responsibility to implement corporate policy, but Royal Dutch

---

[24] Attached hereto as Exhibit N.

Shell determines the policies of the Shell group. *Id.* at 4.4.4. Following its findings, the court held

that Royal Dutch Shell was obligated to reduce the emissions of the entire Shell group, through

corporate policies, to meet the level of emissions set by the court. *Id.* at 4.4.55.

The Hague District Court's findings are borne out by many of Shell's statements. Of

particular note for this case, Shell has made clear that it incorporates climate preparedness into

updates of design standards for new infrastructure and reviews the vulnerability of existing

facilities to determine if they need to be retrofitted:

> Shell has long life assets that will last many decades. Some of these might have
> been designed according to outdated climate parameters. We are taking steps at our
> facilities to help making sure that they are resilient to climate change. We
> progressively adjust our design standards for projects while, for existing as-sets, we
> identify those that are most vulnerable to climate change and take appropriate
> action.

Exhibit O at 27.

Shell tasks a specialized team with considering climate preparedness for its

infrastructure—the "Metocean Team." This team is responsible for (i) generating climate change

projections, (ii) establishing climate preparedness standards for Shell infrastructure, and

(iii) evaluating the preparedness of Shell's existing infrastructure. Examples of the Metocean

Team's climate change projections for the years from 2030 to 2050 include a "Regional

Temperature Increase Review," a "Global Sea Level Rise Review," and a "Regional Increased

Precipitations Review." *See, e.g.,* Exhibit O at 8-10. The Metocean Team also develops and

updates design standards for new infrastructure that includes climate preparedness requirements.

*Id*. In addition to setting standards for new infrastructure, the Metocean Team also evaluates the

climate preparedness of Shell's existing infrastructure to determine what facilities need to be

retrofit to meet modern standards. *Id.* As Shell describes: "The most vulnerable existing assets,

designed under previous standards, are identified and any adaptation plans will be integrated into

Shell existing procedures and processes such as the asset reference plans that guide their ongoing maintenance schedules." *Id.*

Shell's own climate change projections, climate preparedness standards, climate vulnerability analyses, and remedial actions at other facilities are highly relevant to determining what a reasonable engineer would do at the Terminal. Even though the ultimate application of the "good engineering practices" standard is an objective issue to be decided by the Court and the jury, evidence of Defendants' similar evaluations at other facilities is relevant and discoverable. *See, e.g.,* a *City of Wilmington v. United States*, 141 Fed. Cl. 558, 563–64 (2019) (holding that the defendants' assessments of whether a charge was "reasonable" was relevant even though the court makes the ultimate determination *de novo*).

Similarly, this information is also highly relevant to Defendants' defenses in this case. Defendants maintain that they are satisfying all of their obligations at the Terminal and that they have done everything required by the "good engineering practices" standard. Evidence regarding Defendants' process for making these pertinent legal and factual determinations, as well as an examination of whether Defendants' actions at the Terminal are consistent with their established policies, including as evidenced by actions taken at other facilities, is clearly relevant for the purpose of evaluating that defense. *See City of Wilmington*, 141 Fed. Cl. at 563 ("The process Defendant follows to evaluate the reasonableness of stormwater charges is relevant for discovery purposes. . . . Defendant presumably marshalled facts that led it to determine the charges were unreasonable, and Plaintiff is entitled to discovery of those facts . . .")

Shell's climate resilience policies are also relevant for assessing the credibility of Defendants' defenses, as well as their assertions and expert testimony on the subject. *See id.* at 563-64 (finding that the defendants' evaluations of "reasonableness" may be used to impeach the

defendants' experts); Fed. R. Civ. P. 26(b)(1) Advisory Committee's Note (2000) ("[I]nformation that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable."). Indeed, whether or not formal policies exist is of the utmost relevance. If a sophisticated entity like the Shell group of companies has not developed broadly applicable policies—despite Royal Dutch Shell's statements to the public and its regulators—it casts doubt on any post hoc assurances of compliance in this litigation. Conversely, if such policies exist but the Terminal has not satisfied them, that fact is also relevant to whether Defendants are satisfying "good engineering practices."

Finally, this material is also relevant to CLF's request for civil penalties. A substantial component of the civil penalty calculation is the egregiousness of Defendants' conduct, and the duration of the violations is relevant to that analysis. *See, e.g.*, 33 U.S.C. § 1319(d) ("In determining the amount of a civil penalty the court shall consider the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, . . . .").

Failing to prepare the Terminal for climate change is particularly egregious if Defendants have extensive information about the likelihood and severity of risks and have not taken any measures to mitigate those risks. Even if the actual violations are limited by a five-year statute of limitations (which CLF does not concede), Defendants' long history of ignoring climate risks would be relevant to the appropriate penalty calculation.

\* \* \* \* \*

For the reasons described above, CLF's Requests seeking documents concerning Defendants' knowledge of climate change risks, corporate policies concerning climate

preparedness, and climate change actions taken, and climate-change damages, at other Terminals are relevant and discoverable. The following subsections address two categories of specific Requests where Defendants objected to producing these documents.[25] The first category consists of Requests where Defendants refused to produce any relevant documents. The second category consists of Requests where Defendants have agreed to produce documents but improperly restricted their response to produce only documents specifically referring to the Terminal.

### 1.   Requests Where Defendants Have Refused to Produce Any Documents Related to Shell's Knowledge of, or Actions Taken in Response to, Climate Change

This section discusses the Requests where Defendants refused to produce any documents from outside the Terminal in response to Requests seeking documents concerning Shell's knowledge and actions related to climate change.

### a.   Request No. 12

**RFP No. 12:** All Documents related to Shell's participation in the research and creation of the following reports and articles, including communications and shared research with U.S. government agencies and industry trade groups:

(a) Shell International BV, *The Greenhouse Effect* (1988), *available at* https://www.documentcloud.org/documents/4411090-Document3.html        (last visited May 27, 2021);

(b) Freek Rijkels, Shell, *The Environmental Challenge and the Oil Industry's Response* (1990), *available at* http://www.climatefiles.com/shell/1990-shell-environmental-challenge-oil-industrys-response/ (last visited May 27, 2021);

(c) P. Langcake, Shell International BV, *The Enhanced Greenhouse Effect: A Review of the Scientific Aspects* (1994), *available at* https://www.documentcloud.org/documents/4411099-Document11.html        (last visited May 27, 2021);

(d) Shell, *Statement of General Business Principles* (1994), *available at* http://www.climatefiles.com/shell/1994-shell-statement-general-business-principles/ (last visited May 27, 2021);

---

[25] Defendants raised similar objections to Request No. 10, but Defendants agreed to produce documents subject to agreed search terms. Therefore, CLF addresses Request No. 10 in the search terms section below, Section III.B.

(e) Shell, S*hell Briefing Service: Renewable Energy* (1994), a*vailable at* http:/ /www.climatefiles.com/shell/1994-shell-briefing-service-renewable-energy/ (last visited May 27, 2021);

(f) Shell, *Shell and the Environment* (1995), *available at* http:// www.climatefiles.com/shell/1995-report-shell-environment/ (last visited May 27, 2021);

(g) Shell, Shell Management Brief: Climate Change (1995), *available at* https:/ /www.documentcloud.org/documents/4411100-Document12.html (last visited May 27, 2021);

(h) Shell, *Shell Management Brief: The Intergovernmental Panel on Climate Change* (1996), *available at* http://www.climatefiles.com/shell/1996-shell-management-brief-intergovernmental-panel-climate-change/ (last visited May 27, 2021);

(i) Shell, *Climate Change: What Does Shell Think and Do About It?* (1998), *available at* http://www.climatefiles.com/shell/1998-shell-report-think-and-do-about-climate-change/ (last visited May 27, 2021);

(j) Shell, *Profits and Principles –Does There Have to Be a Choice? (1998)*, *available at* http://www.climatefiles.com/shell/1998-shell-report-profits-principles-choice/ (last visited May 27, 2021);

(k) Shell, *Listening and Responding –The Profits and Principles Advertising Campaign* (1999), *available at* http://www.climatefiles.com/shell/1999-shell-profits-and-principles-campaign-and-address/ (last visited May 27, 2021);

(l) U.S. Dep't of Energy, Office of Elec. Delivery and Energy Reliability, *Hardening and Resiliency: U.S. Energy Industry Response to Recent Hurricane Seasons* (2010), *available at* https://www.oe.netl.doe.gov/docs/ HR-Report-final-081710.pdf (last visited May 27, 2021);

(m) Nat'l Petroleum Council, E*nhancing Emergency Preparedness for Natural Disasters* (2014), *available at* https://www.npc.org/reports/epandp.html (last visited May 27, 2021);

(n) Shell International BV, *New Lenses on Future Cities: A New Lens Scenarios Supplement* (2014), *available at* https://www.foresightfordevelopment.org/ library/54/1438-new-lenses-on-future-cities-a-new-lens-scenarios-supplement (last visited May 27, 2021);

(o) U.S. Dep't of Homeland Security, U.S. Dep't of Energy, *Energy Sector-Specific Plan* (2015), *available at* https://www.cisa.gov/sites/default/files/ publications/nipp-ssp-energy-2015-508.pdf (last visited May 27, 2021);

(p) Am. Petroleum Inst., *Oil and Natural Gas Industry Preparedness Handbook* (2016), *available at* https://pdf4pro.com/amp/view/oil-and-natural-gas-american-petroleum-institute-2b1dc3.html (last visited May 27, 2021);

(q) Shell International BV, *A Better Life with a Healthy Planet –Pathways to Net-Zero Emissions* (2016), *available at* https://www.shell.com/energy-and-innovation/the-energy-future/scenarios/a-better-life-with-a-healthy-planet/_jcr_content/par/relatedtopics.stream/1475857466913/

27

f53f377c72c622102c589336d7eb60bfc1cf0c6b/scenarios-nze-brochure-interactive-afwv9-interactive.pdf (last visited May 27, 2021);

(r) May 2014 Letter from Shell Executive Vice President of Investor Relations J.J. Trainor to investors (referenced in John Vidal, *Shell Hits Back at 'Carbon Bubble' Claims*, The Guardian (May 20, 2014) https://www.theguardian.com/environment/2014/may/20/shell-hits-back-at-carbon-bubble-claims);

(s) Shell et al., *The Case for Green Infrastructure* (2013), *available at* https://www.nature.org/content/dam/tnc/nature/en/documents/the-case-for-green-infrastructure.pdf (last visited May 27, 2021); and

(t) Univ. Of Cambridge Inst. For Sustainability Leadership, The Prince of Wales's Corp. Leaders Grp., *The Trillion Tonne Communiqué* (2014) (to which Shell was a signatory), *available at* https://www.corporateleadersgroup.com/system/files/documents/trillion-tonne-communique-brochure_0.pdf (last visited May 27, 2021).

**RESPONSE TO RFP No. 12:** Defendants object to this Request as overbroad, unduly burdensome, oppressive, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including claims regarding alleged long-term risks that have been dismissed from this case. The Request seeks documents that are wholly unrelated to Plaintiff's claims, which are limited to alleged current or ongoing violations (for a period of up to five years) of the Terminal's RIPDES permit and its obligations under RCRA. Defendants also object to this Request as vague, ambiguous and misleading because it seeks information about 'Shell' but defines that term to include all Defendants. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.[26]

**BASIS FOR RELIEF:** Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

Defendants' vague time-period objection also fails. The Default Time Period is appropriate for the reasons described in Section III.C.3 below. The time-period objection is also insufficient because, as explained in Section III.C.2 below, objections merely referring to the "five-year period" are improperly vague.

---

[26] Exhibit B at 17.

Documents related to the Shell reports and publications listed above are relevant to Shell's knowledge and understanding of climate risks, and they are discoverable for the reasons described in detail in Section III.A, above.

***Scope of CLF's Claims***: Defendants' relevance argument in their Response to this Request is based on a fundamental misunderstanding of the nature of CLF's claims and the categories of information that are relevant to them. Defendants take the wholly unsupportable position that documents that do not directly "address the operations at the Providence Terminal or the engineering practices . . . at issue in this case" are not relevant to CLF's claims. Exhibit I at 3. Specifically, Defendants assert that only documents regarding the design and operation of the Terminal are relevant. *Id*. From this untenable premise, Defendants object that this Request has nothing to do with the Terminal or how it is operated, and they take the position that Defendants will not produce documents in this litigation that do not pertain to the Terminal. *Id.*

Defendants' description of the scope of this case cannot withstand even cursory review of CLF's claims. CLF alleges that Defendants have violated the RIPDES Permit for the Terminal and created an imminent and substantial endangerment to human health and the environment by failing to assess and respond to the reasonably foreseeable risks to the Terminal posed by severe weather and climate change. *See, e.g.,* TAC ¶¶ 1, 126-27, 271-73, 407–22. As the Court has described, CLF's claims involve determining whether "good engineering practices" require preparing the Terminal for catastrophic weather, and whether the current SWPPP would be "ineffective" during such events. Ord. on MTD at 8–9.

Defendants recognize that documents and information concerning the Terminal's infrastructure, RIPDES permit, operations, stormwater pollution prevention plans, emergency preparedness, stormwater management, waste management, and engineering standards and best

management practices of bulk petroleum storage terminals are relevant and discoverable. *See generally* Exhibits. C, G, and I. While documents concerning the day-to-day operation of the Terminal and its design are clearly relevant, a reasonable, good faith reading of CLF's claims makes clear that various documents from outside the fence line are also relevant. For example, to the extent a document sets forth a companywide approach to the implementation of engineering practices or methods by which to address climate or severe weather risks, the lack of a specific reference to the Providence Terminal does not render it irrelevant or non-discoverable. *See also* III.A.1.d below (Request No. 15) (discussing relevance of statements made by Royal Dutch Shell to CDP because statements show that climate-change-related decisions are managed centrally).

CLF further alleges that Defendants' extensive history of public statements about the risks posed by severe weather and climate change demonstrates that they are well-aware of substantial danger to the Terminal and all of their infrastructure; yet despite this knowledge, Defendants have failed to address those risks at the Terminal. *See, e.g.*, TAC ¶¶ 88, 122-27, 271-73; *see also id.* ¶¶ 283, 291, 299, 314, 332, 337, 421, and 435. In particular, CLF has alleged that Shell has extensive knowledge of the likely impacts of climate change and has "fail[ed] to prepare the Terminal for the coming impacts of climate change." Ord. on MTD at 4. In addition, CLF has alleged that Defendants misled RIDEM and the public by failing to disclose and address these risks—well-known to Defendants—in their SWPPP, permit application, and other filings with RIDEM. *See, e.g.*, TAC ¶¶ 329–34. CLF is entitled to probe what Shell knew about climate change and severe weather risks and when Shell knew about it. The depth of Shell's knowledge and how long Shell failed to act on that knowledge is relevant to both Shell's liability under several of CLF's claims as well as the appropriate civil penalties to be imposed for Shell's failure to act. *See, e.g.*, 33 U.S.C. § 1319(d) (explaining that civil penalty calculation takes into account many factors

including "the seriousness of the violation or violations, . . . any history of such violations, [and] any good-faith efforts to comply with the applicable requirements.").

Further, Defendants have argued that the risks posed by severe weather are "highly speculative, remote, or hypothetical." Defs.' MTD Mem., ECF 46-1 at 14. Defendants' knowledge and analysis of climate-change impacts, including decades of research and data, are highly relevant to analyzing the credibility of its current litigation positions and the choices it has made in operating the Terminal. Accordingly, even the publications from 1988 to 1999 sought in Request 12 are relevant to CLF's claims. The depth and degree of Defendants' knowledge and understanding regarding the ongoing and increasing impacts from climate change tie directly to CLF's allegations that, despite knowing this information, Defendants did not disclose nor employ it in preparing to minimize potential pollutant discharges from the Terminal. These materials also counter Defendants' position that the realities of climate change and severe weather are somehow hypothetical. In addition, this information is relevant for determining the evolution of corporate policy and research addressing climate risks and infrastructure engineering, exactly when Defendants' violations started and therefore their history of violations, and the veracity of testimony and evidence presented in this matter.

Relatedly, Defendants object to the scope of this Request because it seeks documents that include information about "claims regarding alleged long-term risks that have been dismissed from this case." However, Defendants have not explained how the requested documents dealing with climate change and resiliency planning would not shed light on near-term harms associated with the impacts of climate change, especially given that many of the articles and reports listed in the Request date back more than a decade. While the Court held CLF lacked standing for future harms, the Court specifically acknowledged that near-term harms were actionable, stating,

> The Complaint makes clear that a major weather event, magnified by the effects of climate change, *could happen at virtually any time*, resulting in the catastrophic release of pollutants due to Defendants' alleged failure to adapt the Terminal to address those impending effects. *While it might not occur for many years*, the fact that it is certainly impending is enough to meet the standard.

Ord. on MTD at 3 (emphasis added).

The allegations in CLF's TAC provide context for the Court's ruling and this Request (as well as Request No. 8, Request No. 9, Request No. 10, and Request No. 11). Extreme weather events and sea level rise projected to occur *by* dates in the future, such as 2100, do not constitute discrete events that will occur exactly on those dates; rather, these facts provide the framework for the reality that the effects of climate change are necessarily occurring now and are worsening over time. These changes are mostly gradual, meaning they started many years ago, are happening now, and will only aggregate with the passage of time. *Conservation Law Found., Inc. v. Exxonmobil Corp.*, C.A. 1:16-cv-11950-MLW, Mar. 13, 2019 Tr. 127-28, ECF No. 73 (noting that while sea level rise by 2100 is not the basis of standing, it is "relevant for other purposes"). Defendants simply have not explained how the documents would not lead to relevant information, nor have they adequately explained any burden imposed by the Request.

Additionally, CLF has alleged Defendants' failure to prepare the Terminal for severe weather including climate change is a continuing violation, so the statute of limitations has not yet started to run and documents outside Defendants' purported five-year limitation are relevant. *See* Section III.C.3 below.

Moreover, for the material requested in Request No. 12, Defendants were either the author of these publications, a contributor to them, or a member of the organizations that drafted them. Statements that Defendants made to these entities or contributions that Defendants made to the publications are relevant for determining what Defendants knew and when they knew it.

b.    **Request No. 13**

**RFP No. 13:** All Documents related to the creation of the following Shell webpages:

(a) *Climate Change and Energy Transitions*, Shell, https://www.shell.com/
energy-and-innovation/the-energy-future/our-climate-target.html    (last
visited May 27, 2021);

(b) *Circular Economy and Waste*, Shell, https://www.shell.com/sustainability/
environment/circular-economy-and-waste.html (last visited May 27, 2021);

(c) *Make the Future*, Shell, https://www.shell.us/make-the-future.html (last
visited May 27, 2021);

(d) *Sustainability – Our Approach*, Shell, https://www.shell.com/sustainability/
our-approach.html (last visited May 27, 2021); and

(e) *Protecting Coastal Cities*, Shell, https://www.shell.com/energy-and-
innovation/the-energy-future/future-cities/city-innovation/protecting-
coastal-cities.html (last visited May 27, 2021).

**RESPONSES TO RFP No. 13:** Defendants object to this Request as overbroad, unduly burdensome, oppressive, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff. The Request seeks documents that are wholly unrelated to Plaintiff's claims, which are limited to alleged current or ongoing violations of the Terminal's RIPDES permit and its obligations under RCRA. Defendants also object to this Request as vague, ambiguous and misleading because it seeks information about 'Shell' but defines that term to include all Defendants. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.[27]

**BASIS FOR RELIEF:** Request No. 13 seeks documents related to the creation of five pages on

the main website for the Shell companies, Shell.com, discussing Shell's position on various aspects

of climate change and waste disposal, including the danger to coastal cities from sea level rise and

flooding—issues specifically addressed in CLF's claims. The documents related to the creation of

these pages are relevant for the same reasons described in the Basis for Relief for Request No. 12

above—they go directly to Shell's knowledge of risks posed by climate change to coastal

infrastructure like the Terminal.

Moreover, Defendants' objection that the Request is overbroad and not proportional is

improper without any supporting facts, as discussed above in Section III (discussing insufficiency

---

[27] Exhibit B at 18.

of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections). Similarly, Defendants' attempt to unilaterally narrow the scope of relevant documents solely to those related to the Terminal ignores CLF's allegations regarding Shell's decades of knowledge about climate change and Shell's own statements about its forward-looking policy on climate preparedness for its infrastructure. *See id.* (Scope of Claims: explaining how companywide approach to the implementation of good engineering practices or methods by which to address risks of increased variability in climactic events, as well as corporate statements on the risks associated with climate change, all bear on CLF's claims regarding good engineering practices, failure to disclose information to RIDEM, and evaluation of civil penalties).

Finally, Defendants' assertion that the webpages at issue were not authored by Defendants, *see* Exhibit I at 4, is immaterial. Discovery is not determined by authorship; the relevant question is whether or not Defendants have documents in their care, custody, or control that are responsive to Request No. 13.

Therefore, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 13.

### c.    Request No. 14

**RFP No. 14:** All Documents related to the following speeches and interviews, including communications, research, and supporting documents to aid in the development of statements made by Shell and its agents:

> (a) September 14, 1992 speech by L.C. van Wachem titled "The Three Cornered Challenge – Energy, Environment, and Population";
> (b) January 25, 1994 speech by M. Moody-Stuart titled "Environmental Action – a Shared Responsibility";
> (c) Ben van Beurden, Royal Dutch Shell CEO, *Why I'm Left Humbled by Hurricane Harvey* (Sept. 1, 2017), available at https://www.shell.com/media/speeches-and-articles/articles-by-date/why-im-left-humbled-by-hurricane-harvey.html (last visited May 27, 2021);
> (d) Karel Beckman, *Interview with David Hone, Chief Climate Change Advisor Shell: "Net Zero Emissions Are Achievable. The Timing is Challenging,"* (Jun. 13, 2017), available at http://energypost.eu/interview-david-hone-

34

chief-climate-change-officer-shell-net-zero-emissions-are-achievable-the-timing-is-challenging/ (last visited May 27, 2021);

(e) Justin Worland, *The Reason Fossil Fuel Companies Are Finally Reckoning with Climate Change*, Time (Jan. 16, 2020), *available at* https://time.com/5766188/shell-oil-companies-fossil-fuels-climate-change/ (last visited May 27, 2021); and

(f) H. Eliot Fang, *Shell Energy Security and Climate Change Seminar Series* (April 4, 2011), *available at* http://engineering.utep.edu/mu3com/Events/Invited-Speakers/2011-Spring/April-04-Fang.pdf (last visited May 27, 2021).

**RESPONSES TO RFP No. 14:** Defendants object to this Request as overbroad, unduly burdensome, oppressive, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff. The Request seeks documents that are wholly unrelated to Plaintiff's claims, which are limited to alleged violations of the Terminal's RIPDES permit and its obligations under RCRA. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.[28]

**BASIS FOR RELIEF:** Request No. 14 seeks documents related to speeches and interviews made by Shell or agents of Shell. These documents are relevant for the same reasons described in the Basis for Relief for Request No. 1212 above—they go directly to Shell's knowledge of risks posed by climate change to coastal infrastructure like the Terminal.

Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections). Similarly, Defendants' attempt to unilaterally narrow the scope of relevant documents solely to those related to the Terminal ignores CLF's allegations regarding Shell's decades of knowledge of climate change and Shell's own statements about its forward-looking policy on climate preparedness for its infrastructure. *See id.* (explaining how companywide approach to the implementation of good engineering practices or methods by which to address risks of increased variability in climactic events, as well as corporate statements on the

---

[28] Exhibit B at 19.

risks associated with climate change, all bear on CLF's claims regarding good engineering practices, failure to disclose information to RIDEM, and evaluation of civil penalties).

As with Request No. 13, Shell's arguments in its September 29, 2021 letter concerning the author or speaker have no bearing on the discoverability of the information. The question is whether or not Defendants have documents in their care, custody, or control that are responsive to Request No. 14. Moreover, the statements made in these public presentations are binding on all entities within the Royal Dutch Shell corporate structure and, as such, are appropriate to probe in discovery.

Therefore, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 14.

### d.      Request No. 15

**RFP No. 15:** All Documents related to Shell's submissions to the Climate Disclosure Project,[29] including original responses and official reports."

**RESPONSES TO RFP No. 15:** Defendants object to this Request as overbroad, unduly burdensome, oppressive, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff. The Request seeks documents that are wholly unrelated to Plaintiff's claims, which are limited to alleged violations of the Terminal's RIPDES permit and its obligations under RCRA. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.[30]

**BASIS FOR RELIEF:** Request No. 15 requests documents related to Shell's submissions to the CDP. Royal Dutch Shell has made voluntary disclosures to the CDP since at least 2012. These statements are highly relevant to CLF's claims. These statements indicate, among other things, that climate-change risks to facilities owned by Shell companies are largely managed centrally.

---

[29] As explained in note 20, the organization is currently named CDP and was formerly known as the Carbon Disclosure Project. This Request contained a typo, referring to the organization as the *Climate* Disclosure Project. However, Defendants did not object to the typo and both Parties understood the documents requested. *See* Exhibit I at 4.
[30] Exhibit B at 20.

Courts have recognized the relevance of Shell's CDP statements to Shell's overall management of its climate change policy. In *Milieudefensie et al. v. Royal Dutch Shell plc.*, the Hague District Court in the Netherlands found Royal Dutch Shell was obligated to reduce the emissions of the entire Shell group through corporate policy and used Shell's submissions to the CDP in assessing Shell's climate change management, stating:

> The 2019 CDP submission explains that the climate policy, for which the RDS CEO bears ultimate accountability, is adopted by the RDS Board, which has 'oversight of climate-related issues'. Among its 'governance mechanisms into which climate-related issues are integrated' are 'Setting performance objectives; Monitoring; implementation and performance of objectives; Overseeing major capital expenditures, acquisitions and divestitures; Monitoring and overseeing progress against goals and targets for addressing climate-related issues'.

Exhibit N ¶ 2.5.7.

The statements themselves also evince a general corporate policy towards reacting to and preparing for climate change. For example, Shell's statement 2020 statement to CDP states:

> The potential, timing, and severity of the impact of physical risks are largely dependent on the geographical location and the asset type. *To manage these risks, Shell employs existing procedures and processes such as the asset reference plan and other plans that guide the assets' ongoing operations and maintenance schedules and response planning.* In certain cases, Shell may take additional steps, for example deploy a team of experts such as our Metocean team which, as and when deemed appropriate, analyses the physical impact of potential weather and climate related issues on existing assets and new projects. It also provides guidance on the associated adaptation aspects to address those issues. This may include considerations around the Project Metocean Design Standards for new projects which are reviewed every 3-4 years to take account of a variety of risks, including weather and climatic influences. *The reviews could potentially include weather and climate change related hazards, such as higher water and air temperatures, flooding and droughts, sea level rise, changes in the intensity of tropical cyclones, that could potentially be relevant to a variety of assets in our portfolio.*

Exhibit M at 18 (emphasis added).

Other reports discuss Shell's assessments of the anticipated loss to Shell's physical assets from climate change impacts between 2030–2050. *See* Exhibit P at 6 ("A preliminary internal risk assessment conducted indicates $0.8-1,4 billion from physical climate change impact between

2030–2050. This will be driven by several factors such as temperature increase, water replacement cost and other factors such as damage from storms and flooding and production downtime."). Shell's analyses of likely climate risks and the anticipated losses resulting from them are highly relevant to CLF's claims that Defendants failed to prepare the Terminal for known climate risks. And these are merely two examples of highly relevant information contained in Shell's statements to CDP.

Lastly, Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

Therefore, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 15.

### e.   Request No. 16

**RFP No. 16:** All Documents related to Defendants' interactions with the United Nations Intergovernmental Panel on Climate Change (IPCC), including but not limited to contributions to Assessment Reports, Special Reports, other reports, and working groups.

**RESPONSES TO RFP No. 16:** Defendants object to this Request as overbroad, unduly burdensome, oppressive, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff. The Request seeks documents that are wholly unrelated to Plaintiff's claims, which are limited to alleged violations of the Terminal's RIPDES permit and its obligations under RCRA. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.[31]

**BASIS FOR RELIEF:** The IPCC is an international body specifically focused on analyzing climate change and the risks resulting therefrom. Any interactions by Defendants with the IPCC, by their very nature, would concern the incidence and impacts of climate change, which

---

[31] Exhibit B at 20.

38

are at the very center of CLF's claims. It has long been public knowledge that Defendants' employees have been members of various aspects of the IPCC process on behalf of the Royal Dutch Shell corporate family in capacities including Reviewer, Contributing Author, Expert Reviewer, and Lead Author. TAC at 139. Documents evidencing those interactions would be particularly relevant to Defendants' knowledge of likely risks from climate change, which is highly relevant for the reasons described in the Basis for Relief for Request No. 12—all of Defendants' relevance arguments rely on their unsupportable narrowing of the scope of CLF's claims and an impermissible attempt to restrict the relevance standard. Lastly, Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

Therefore, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 16.

### f.    Request No. 17

**RFP No. 17:** All Documents related to the work of Shell's Metocean Team and any Metocean Advisors.

**RESPONSES TO RFP No. 17:** Defendants object to this Request as overbroad, unduly burdensome, oppressive, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff. The Request seeks documents that are wholly unrelated to Plaintiff's claims, which pertain only to the design and operation of the Providence Terminal. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Motiva responds that it does not possess any documents responsive to this Request because it seeks, as best as Defendants can discern, information about non-Motiva entities (i.e. 'Shell') that are not in Motiva's custody, possession or control.

Subject to the foregoing general and specific objections, the other Defendants respond that after reasonable investigation, the other Defendants have determined that the Metocean team has not done any work involving the Providence Terminal and therefore, there are no such documents.[32]

**BASIS FOR RELIEF:** Shell has publicly described the Metocean team as follows: "[W]e employ a Metocean team focused on the physical climate impacts and adaptation aspects." Exhibit O at 10. Examples of work performed by the Metocean Team that CLF is aware of include:

- "assessments of future climate conditions," like "Regional Temperature Increase Review (2030-2050)";
- "Global Sea Level Rise Review (2030-2050)"; and
- "Regional Increased Precipitations Review (2030-2050)".

*Id.* at 23-25. Shell also states, concerning the Metocean Team:

> As this team influences ongoing engineering design standards, our new projects' resilience is always based on the latest climate science outlook. The ongoing challenge is retrofitting existing assets, while design standards are revised on an ongoing basis to take account of climate change influences. The most vulnerable existing assets, designed under previous standards, are identified and any adaptation plans will be integrated into Shell existing procedures and processes such as the asset reference plans that guide their ongoing maintenance schedules.

*Id.* at 9.

From Shell's own statements, the Metocean Team is at the heart of Shell's analysis of near-term climate risks and the vulnerability of Shell's existing physical assets, such as the Terminal. The Metocean Team's analysis of future climatic conditions is highly relevant to Shell's knowledge of the risks to the Terminal, and analyses of the vulnerability of the Terminal and similar facilities is also relevant for evaluating the risk to this Terminal and to consideration of what "good engineering practices" require. These are merely examples of the type of work performed and documents produced by the Metocean Team identified from limited public

---

[32] Exhibit B at 21.

statements by Shell. The extent of other relevant documents from the Metocean Team is uniquely within Defendants' knowledge and possession; CLF has no visibility into those documents.

Defendants' protestation that the Metocean Team has done no work directly involving the Providence Terminal, while relevant, is not the end of the inquiry or the bounds of relevant discovery, as described above in Section III.A and Basis for Relief for Request No. 12 above (Scope of Claims: explaining how Shell's corporate documents evincing companywide policies on addressing climate change and/or good engineering practices are relevant to CLF's claims).

Lastly, Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

CLF has previously expressed a willingness to consider any proposal from Defendants on ways to limit any burden imposed by Request No. 17 (e.g., geographic limitations, types of facilities), and despite admitting that "documents that pertain to all Shell terminals in the northeastern United States (which would necessarily include the Providence Terminal), . . . could, in theory, be responsive provided the documents relate to the claims in this case," Exhibit G at 5, Defendants refused CLF's proposals and have not offered their own suggestions, nor have they provided any evidence of the potential burden. Instead, Defendants have stood on their unsupportable relevance objection.

Therefore, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 17.

### g.      Request No. 19

**RFP No. 19:** A copy of Shell's 1991 video titled "Climate of Concern," and any associated Documents.

41

**RESPONSES TO RFP No. 19:** Defendants object to this Request as overbroad, unduly burdensome, oppressive, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff. The Request seeks documents that are wholly unrelated to Plaintiff's claims, which are limited to alleged violations of the Terminal's RIPDES permit and its obligations under RCRA. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Motiva responds that it does not possess any documents responsive to this Request because it seeks, as best as Defendants can discern, information about non-Motiva entities (i.e. "Shell") that are not in Motiva's custody, possession or control.

The other Defendants respond that Plaintiff can find the referenced video from a publicly available source (*see* https://www.youtube.com/watch?v=0VOWi8oVXmo (last visited August 13, 2021)). The other Defendants further respond that they will not search for the documents sought by this Request related to the referenced video, which have no connection to the Providence Terminal's compliance with its RIPDES permit or RCRA, i.e., the alleged bases for Plaintiff's claims and requested relief.[33]

**BASIS FOR RELIEF:** Shell's "Climate of Concern" video warned about the dangers of climate change and stated that "global warming is not yet certain, but many think that to wait for final proof would be irresponsible. Action now is seen as the only safe insurance." TAC ¶ 133 (citations and internal quotations omitted). These statements in 1991 contrast markedly with Defendants' litigation position that the risks to the Terminal from climate change are too speculative to allow standing. The video and related documents are relevant both to Shell's knowledge of climate change risks and to what is required to satisfy "good engineering practices." *See also* Basis for Relief for Request No. 12 (Scope of Claims: explaining how Shell's corporate documents evincing companywide policies on addressing climate change and/or good engineering practices are relevant to CLF's claims). While Defendants argue that the video is publicly available, that fact does not render it, or any related documents, either irrelevant or immune from discovery.

---

[33] Exhibit B at 22.

Moreover, Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

Therefore, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 19.

### h.    Request No. 20

**RFP No. 20:** All Shell sustainability reports and associated Documents.

**RESPONSES TO RFP No. 20:** Defendants object to this Request as vague, ambiguous, overbroad and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff. The Request seeks documents that are wholly unrelated to Plaintiff's claims, which are limited to alleged violations of the Terminal's RIPDES permit and its obligations under RCRA. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.[34]

**BASIS FOR RELIEF:** The Shell Sustainability Reports describe, among other things, actions Shell is taking to analyze climate risks and to reduce the vulnerability of its existing facilities. For example, Shell's 2015 Sustainability Report stated:

> Adaptation reduces the vulnerability of assets, infrastructure, environmental systems and societies to climate change, and is a response to the risks associated with changes in weather patterns . . . Shell is currently identifying our facilities and locations that are most exposed to the physical impacts of climate change.

Royal Dutch Shell plc, Sustainability Report 17 (2014).[35]

The Sustainability Reports and associated documents are relevant to the claims and defenses in this case for the same reasons as Shell's statements to the CDP. *See* Basis for Relief for Request No. 15 above (explaining that statements made by Royal Dutch Shell to CDP evince

---

[34] Exhibit B at 23.

[35] Available at https://reports.shell.com/sustainability-report/2014/servicepages/downloads/files/entire_shell_sr14.pdf?cat=b.

a policy of managing climate-related decisions and risks centrally). Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

Therefore, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 20.

### i. Request No. 21

**RFP No. 21:** All Documents and research related to Shell's recommendation that the United States not withdraw from the Paris Agreement addressing climate change."

**RESPONSES TO RFP No. 21:** Defendants object to this Request as overbroad, unduly burdensome, oppressive, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff. The Request seeks documents that are wholly unrelated to Plaintiff's claims, which are limited to alleged violations of the Terminal's RIPDES permit and its obligations under RCRA. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.[36]

**BASIS FOR RELIEF:** Defendants publicly argued that the United States should not withdraw from the Paris Agreement. Documents supporting Defendants' position are relevant to the scope of their knowledge of the risks of climate change and, in particular, the imminence and exigency of those risks. *See also* Basis for Relief for Request No. 12 (Scope of Claims: explaining how companywide approach to address risks of increased variability in climactic events bear on CLF's claims regarding good engineering practices, failure to disclose information to RIDEM, and evaluation of civil penalties). Any statements or research by Shell concerning the imminence or foreseeability of the risks posed by climate change both support CLF's claims that the risk to the Terminal are imminent and substantial, as well as cast doubt on Defendant's litigation position that the alleged risks are too speculative. *See also id.* (Scope of Claims: explaining how corporate

---

[36] Exhibit B at 23.

statements on the risks associated with climate change bear on CLF's claims regarding good engineering practices, failure to disclose information to RIDEM, and evaluation of civil penalties). Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

Therefore, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 21.

### j.      Request No. 24

**RFP No. 24:** All Documents related to Shell's consideration of climate change in investment and spending decisions.

**RESPONSE TO RFP No. 24:** Defendants object to this entire Request vague, ambiguous, and vexatious because it seeks documents wholly unrelated to the Providence Terminal. Defendants further object to this Request as unduly burdensome and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including information wholly unrelated to the Providence Terminal. Defendants also object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. Defendants also object to this Request as vague and ambiguous because the term "climate change" is undefined.[37]

**BASIS FOR RELIEF:** Documents concerning the ways in which Shell considers climate change before making investments are highly probative of Shell's views on the imminence and magnitude of risks posed to Shell's investments. These documents are relevant for the same reasons described in Basis for Relief for Request No. 12 above (Scope of Claims: explaining how companywide approach or methods by which to address risks of increased variability in climactic events, as well as corporate statements on the risks associated with climate change, all bear on CLF's claims regarding good engineering practices, failure to disclose information to RIDEM, and evaluation of

---

[37] Exhibit B at 25.

civil penalties) and Request No. 21 above (discussing the relevance of Shell's consideration of the imminence and exigency of the risks posed by climate change). Defendants fail to provide any further context or a potential limitation, simply stating the Request is "vague, ambiguous, and vexatious" and "wholly unrelated." These generic statements are far too vague to preserve the objection. *See* Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

In addition, Defendants' objection that this Request is vague and ambiguous because "climate change" and "greenhouse effect" are undefined is unsupportable, as Defendants are intimately familiar with these terms and use them extensively in both public statements and in their own filings in this case. For example, Defendants used the term "climate change" over thirty times in their Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint, ECF 46-1, including Defendants' argument that the court should have deferred to actions by the State of Rhode Island on climate change. Similarly, an entire section of Royal Dutch Shell's most recent Annual Report is entitled "Climate Change and Energy Transition," where Shell states that "Shell has long recognized that greenhouse gas (GHG) emissions from the use of hydrocarbon-based energy are contributing to the warming of the climate system." Royal Dutch Shell PLC, *Annual Report and Accounts 2020* 94, *available at* https://reports.shell.com/annual-report/2020/servicepages/downloads/files/shell-annual-report-2020.pdf.

Therefore, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 24.

    **2.      Requests Where Defendants Have Improperly Limited Their Production of Documents Concerning Shell's Knowledge of Climate Change to Only Those that Relate to the Terminal**

This section discusses Requests that seek documents related to Shell's knowledge and actions related to climate change, but Defendants have expressly limited their Response to only produce documents expressly related to the Terminal.

    **a.      Request No. 23**

**RFP No. 23:** All Documents related to Shell's consideration of climate change in its design and engineering of terminals, refineries, and other infrastructure.

**RESPONSE TO RFP No. 23:** Defendants object to this Request as vague, ambiguous, overbroad, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including information wholly unrelated to the Providence Terminal. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. Defendants also object to this Request as vague and ambiguous because the term "climate change" is undefined.

Subject to the foregoing general and specific objections, Motiva responds that it does not possess any documents responsive to this Request because it seeks, as best as Defendants can discern, information about non-Motiva entities (i.e. "Shell") that are not in Motiva's custody, possession or control.

Subject to the foregoing general and specific objections the other Defendants will produce responsive, non-privileged documents in their possession, custody, and control related to the Providence Terminal using the document search terms that remain to be negotiated and agreed upon by the parties.[38]

**BASIS FOR RELIEF:** Defendants purport to limit their production to documents specifically related to the Providence Terminal; this narrowing of CLF's claims is improper.

Defendants' say-so relevance objection is waived because it is wholly unsupported by any explanation for why documents that do not expressly relate to the Providence Terminal are irrelevant. Objections must be sufficiently specific to allow CLF to understand the nature of the objection. *See* Section III (discussing insufficiency of boilerplate and generic objections that lack

---

[38] Exhibit B at 24–25.

specific supporting facts under FRCP and case law and resulting waiver of such objections). Defendants make no attempt to meet this standard and, indeed, do not even attempt to describe what kinds of documents they consider to be "unrelated to the Providence Terminal."

Moreover, CLF explained the relevance of documents related to Shell's knowledge, consideration, and experience with climate change in Section III.A.1.a (Basis for Relief for Request No. 12) and how limiting Defendants' response to documents pertaining only to the Providence Terminal is far too narrow when it comes to CLF's Adaptation Claims because Shell's companywide policies related to severe weather and climate risks and preparedness go to Defendants' knowledge of climate change and therefore the depth of their CWA and RCRA violations.

Defendants' objection that "climate change" is undefined fails for the reasons described previously in this Section. *See* Basis for Relief for Request No. 24. (describing Defendants' extensive use and understanding of these terms in this litigation and elsewhere).

Further, Defendants' statement that they will produce documents using the search terms agreed to by the Parties does not clarify their vague objections because such production is still "subject to" Defendants' ambiguous objections. *See* Section III.B.2 (explaining impropriety of conditional responses).

Therefore, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 23.

### b.      Request No. 25

**RFP No. 25:** All Documents related to the study of climate change and/or weather-related risks created, used, or relied on by Defendants, including but not limited to any Documents relating to:

the incidence, frequency, and magnitude of flooding or inundation from extreme weather events, sea level rise, or other events induced by climate change;

48

the environmental and public health impacts of climate change and events that have been or may be caused by climate change in areas surrounding the Terminal; and

monitoring, study, evaluation, or preparation for climate change impacts on the Terminal.

**RESPONSE TO RFP No. 25:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including information wholly unrelated to the Providence Terminal. Defendants further object to this Request as vague and ambiguous because the terms "climate change" "climate change impacts" "other events induced by climate change" and "weather-related risks" are undefined. Defendants also object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control related to the Providence Terminal using the document search terms that remain to be negotiated and agreed upon by the parties.[39]

**BASIS FOR RELIEF:** Defendants purport to limit their production to documents specifically related to the Providence Terminal; this narrowing of CLF's claims is improper.

Defendants' say-so relevance objection is waived because it is wholly unsupported by any explanation for why documents that do not expressly relate to the Providence Terminal are irrelevant. Objections must be sufficiently specific to allow CLF to understand the nature of the objection. *See* Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections). Defendants make no attempt to meet this standard and, indeed, do not even attempt to describe what kinds of documents they consider to be "unrelated to the Providence Terminal."

Moreover, CLF explained the relevance of documents related to Shell's knowledge, consideration, and experience with climate change in Section III.A.1.a (Basis for Relief for Request No. 12) and how limiting Defendants' response to documents pertaining only to the Providence Terminal is far too narrow when it comes to CLF's Adaptation Claims because Shell's

---

[39] Exhibit B at 26.

companywide policies related to severe weather and climate risks and preparedness go to Defendants' knowledge of climate change and therefore the depth of their CWA and RCRA violations.

Defendants' objection that "climate change" and related terms are undefined fails for the reasons described previously in this Section. *See* Basis for Relief for Request No. 24 (describing Defendants' extensive use and understanding of these terms in this litigation and elsewhere).

Further, Defendants' statement that they will produce documents using the search terms agreed to by the Parties does not clarify their vague objections because such production is still "subject to" Defendants' ambiguous objections. *See* Section III.B.2 (explaining impropriety of conditional responses).

Therefore, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 25.

### c.   Request Nos. 26 & 27

**RFP No. 26:** All Documents related to the effects of Hurricane/Superstorm Sandy on Defendants' infrastructure and on Defendants' engineering, design, and management of terminals, refineries, and other infrastructure.

**RFP No. 27:** All Documents related to the effects of Hurricane Ike on Defendants' infrastructure and on Defendants' engineering, design, and management of terminals, refineries, and other infrastructure.[40]

**RESPONSE TO RFP No. 26–27 (identical):** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including information wholly unrelated to the Providence Terminal. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control relating to the Providence Terminal using the document search terms that remain to be negotiated and agreed upon by the parties."[41]

---

[40] Exhibit A at 14.

[41] Exhibit B at 27.

**BASIS FOR RELIEF (RFP Nos. 26–27):** Documents regarding the effects of Hurricanes Sandy and Ike on Defendants' infrastructure are relevant to CLF's claims.

Defendants' say-so relevance objection is waived because it is wholly unsupported by any explanation for why documents that do not expressly relate to the Providence Terminal are irrelevant. Objections must be sufficiently specific to allow CLF to understand the nature of the objection, and Defendants' objection that the Request is overbroad and not proportional is also improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections). Defendants make no attempt to meet this standard and, indeed, do not even attempt to describe what kinds of documents they consider to be "unrelated to the Providence Terminal."

Also, the relevance of Defendants' knowledge of climate change risks, as well as the actions they have taken to address those risk at other facilities, is relevant to CLF's claims. *See* Section III.A.1.a (Basis for Relief for Request No. 12) (discussing how limiting documents to only those pertaining to the Providence Terminal is far too narrow when it comes to CLF's Adaptation Claims because Shell's companywide policies and actions related to climate risks and climate preparedness go toward Defendants' knowledge of climate change and therefore the depth of their CWA and RCRA violations). Specifically, the impacts of two hurricanes, both of which affected the Providence Terminal, on Defendants' other infrastructure and Defendants' subsequent responses to those impacts are relevant and discoverable. The requested documents show the actualized risk borne out at other facilities during these hurricanes and evidence vulnerabilities at the Providence Terminal as well as Defendants' prior knowledge of those vulnerabilities. As noted in the TAC, climate change-induced hurricanes increase the frequency and intensity of

precipitation and flooding, thereby increasing the risk of pollutant discharge and release. TAC § IV.A.

Defendants' statement that they will produce documents using the search terms agreed to by the Parties does not clarify their vague objections because such production is still "subject to" Defendants' ambiguous objections. *See* Section III.B.2 (explaining impropriety of conditional responses).

Therefore, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request Nos. 26 and 27.

## B.    Rolling Productions and Conditional Objections

This Section addresses the Defendant's delay in producing documents, despite agreeing to produce them on a rolling basis, as well as the impropriety of Defendants' conditional objections stating they will produce documents with agreed upon search terms "subject to" their other objections.

### 1.    Delay in Production of Documents

In connection with CLF's First RFPs, Defendants requested that CLF propose search terms to address ESI and also requested that they be permitted to produce ESI and other responsive documents on a rolling basis. *See* Exhibit L at 4. CLF agreed to both requests and provided proposed search terms to Defendants on July 8, 2021. *Id.* Defendants responded with proposed edits on July 30, 2021, prior to sending their Responses to First RFPs. *Id.* On August 19, 2021, CLF sent revised proposed search terms. *Id.* Throughout, the terms were provided with the mutual understanding that the exchange of proposed search terms and any disagreement thereto would not be cause to delay Defendants' initiation of a search for, and production of, responsive documents, including ESI.

While Defendants objected outright to certain of CLF's proposed search terms and strings in their July 30 proposed edits, many of their Responses to First RFPs stated Defendants would "produce responsive, non-privileged documents in their possession, custody and control using the document search terms that remain to be negotiated and agreed upon by the parties."[42] Thereafter, CLF reiterated its understanding that Defendants were searching for responsive documents as the Parties were negotiating search terms in connection with a meet and confer that took place on August 20, 2021. An email from CLF dated August 24, 2021, memorializing that call stated in part that:

> Defendants confirmed that they are not withholding any documents responsive to a RFP unless either (a) Defendants specifically narrow the production in their RFP Response, or (b) Defendants objected to a RFP without providing a further response.
>
> Defendants confirmed that they are not withholding any documents responsive to a RFP based upon their objection to the time period of the RFP, unless the RFP Response says so expressly. . . .
>
> Defendants confirmed that they are conducting a reasonable search for responsive documents, in addition to any agreed-upon search terms. In particular, Defendants agreed that they will investigate the locations of any responsive documents and will not withhold any known responsive documents, even if those documents do not hit on search terms agreed to by the Parties or ordered by the Court.

Exhibit E at 2. A day later, Shell confirmed that this was its understanding: "It reflects our understanding of the discussion that occurred during our August 20th conference call." *Id.* at 1.

CLF again expressed its understanding in its September 10 letter that "Defendants confirmed that they are conducting a reasonable search for responsive documents, in addition to any agreed-upon search terms." Exhibit F at 5. As such, Defendants did not identify any issues that would have precluded ongoing searches. Instead, on November 1, 2021, in the context of a meet and confer conference, Defendants for the first time indicated that they were unable to run

---

[42] CLF addresses the issue with this conditional response in Section III.B.2 below.

some of the searches proposed by CLF because of certain requirements of their vendor. In fact, it

was only then that Defendants advised CLF that they could not even run the alternate search terms

they provided to CLF on July 30, 2021 because Defendants' proposed search strings also ran afoul

of their vendor's requirements. As of November 3, 2021, Defendants had only run searches on

four Requests and had not provided any feedback on the results of those searches. When CLF

expressed consternation that search strings for only four Requests had been run, Defendants

distinguished those Requests over which disputes regarding search terms persisted. In part,

Defendants asserted:

> In prior discussions, I have repeatedly said that certain searches that require running agreed upon search terms (particularly of emails) could not be completed until the parties reached agreement on those terms. That does not mean Defendants have not conducted any searches for responsive documents. We have done searches of records stored on personal computers, shared drives, and hard copy files of various custodians for all RFPs where Defendants did not expressly stand on our objections. Such searches are the "reasonable search[es]" CLF references throughout the spreadsheet. The searches referenced in my November 3 communication relate specifically to attempts to run search terms as part of broader ESI searches (e.g., of emails) beyond the aforementioned "reasonable search" efforts.  If you have a different view of what was contemplated by our discussions about the types of searches that would be run prior to agreeing to ESI search terms, please explain it to us.
>
> To reiterate, Defendants have not delayed conducting reasonable searches in response to CLF's RFPs and thus there was is no delay Defendants needed to advise CLF of in that regard. To date we have produced tens of thousands of pages of documents from records that have been searched based upon Defendants' own collection and review of thousands of potentially responsive documents that are not currently the subject of objections still in dispute.

Exhibit L at 1.

Despite this, until the beginning of November, CLF had received less than 975 documents

by way of production. Even the second production of documents on November 14, 2021 only

consisted of 815 documents. As of the date of filing of this Motion, CLF has still not received

feedback on the four searches Defendants previously advised they had run, nor on any other

searches Defendants may have run. Defendants have not timely complied with their obligations in discovery. The continued and unjustified delays in production of documents should not be allowed to continue. Accordingly, CLF requests that Defendants be required to produce the remainder of those materials responsive to and consistent with the search strings they provided to CLF on November 3, 2021, on a continuing basis every two weeks and to be completed no later than February 15, 2021.

### 2.     Requests Where Production is Conditionally Based on Search Terms

The Requests described below all contain the same Response from Defendants: "Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms that remain to be negotiated and agreed upon by the parties." *See* Defendants' Responses to First RFPs. This conditional response is improper. "Absent an indication of what, exactly, the responding party was objecting to, courts would have no way of assessing the propriety of the objections. Instead, courts would be flooded with motions to compel by litigants seeking to confirm that undisclosed responsive documents did not exist. And courts would then be forced to ask counsel, over and over again, 'Do other documents exist?'" *Haeger v. Goodyear Tire & Rubber Co.*, 906 F. Supp. 2d 938, 977 (D. Ariz. 2012), *aff'd*, 793 F.3d 1122 (9th Cir. 2015), *aff'd*, 813 F.3d 1233 (9th Cir. 2016), *vacated and remanded on other grounds*, 869 F.3d 707 (9th Cir. 2017).

As discussed below in more detail, Defendants' objections are vague and do not state what parameters Defendants are placing on their production, leaving CLF unable to properly respond to Defendants' objections as well as unable to tell when a production is complete or partial. Saying that Defendants will produce documents using the search terms agreed to by the Parties does not clarify the matter, because despite saying they will use agreed upon search terms, such production is still "subject to" Defendants' vague objections. CLF "is left guessing as to whether Defendant

has produced all documents, or only produced some documents and withheld others on the basis of" their objections. *See Pro Fit Mgmt., Inc. v. Lady of Am. Franchise Corp.*, No. 08-CV-2662-JAR-DJW, 2011 WL 939226, at *9 (D. Kan. Feb. 25, 2011), *objections overruled*, No. 08-CV-2662-JAR-DJW, 2011 WL 1434626 (D. Kan. Apr. 14, 2011). For these reasons, the Court should overrule and strike Defendants objections for the Requests listed below and order Defendants to produce documents based on the Parties' search terms irrespective of Defendants' specific objections.

### a.      Request No. 8

**RFP No. 8:** All Documents related to the Terminal that utilize any of the following terms:

> (a) climate change;
> (b) climate effect;
> (c) global warming;
> (d) greenhouse gas(es); and
> (e) greenhouse effect.

**RESPONSE TO RFP No. 8:** Defendants object to this Request as vague, overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including claims regarding alleged long-term risks that have been dismissed from this case. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms that remain to be negotiated and agreed upon by the parties.[43]

**BASIS FOR RELIEF:** Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections). In addition, Defendants' objection about information "regarding alleged long-term risks that have been dismissed from this case" because

---

[43] Exhibit B at 10.

Defendants have not explained how the requested documents related *specifically* to climate change as it relates to the Terminal would not shed light on near-term harms associated with the impacts of climate change. *See* Basis for Relief for Request No. 12 (Scope of Claims: explaining that information about climate change and its effects, including long-term climate risks, necessarily reflects on the near-term harms alleged in this case).

For these reasons and those stated in Section III.B.2 above regarding conditional objections, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 8.

### b.      Request No. 9

**RFP No. 9:** All Documents related to the Terminal that utilize any of the following terms:

>    (a) climate risk;
>    (b) climate resilience;
>    (c) environmental risk;
>    (d) severe weather;
>    (e) extreme weather;
>    (f) extreme precipitation;
>    (g) flooding;
>    (h) inundation;
>    (i) extreme wind;
>    (j) sea level rise; and
>    (k) hurricane(s).

**RESPONSE TO RFP No. 9:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including claims regarding alleged long-term risks that have been dismissed from this case. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms to be negotiated and agreed upon by the parties.[44]

---

[44] Exhibit B at 10-11.

**BASIS FOR RELIEF:** Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections). In addition, Defendants' objection about information "regarding alleged long-term risks that have been dismissed from this case" because Defendants have not explained how the requested documents related *specifically* to the effects of climate change on the Terminal would not shed light on near-term harms associated with the impacts of climate change. *See* Basis for Relief for Request No. 12 (Scope of Claims: explaining that information about climate change and its effects, including long-term climate risks, necessarily reflects on the near-term harms alleged in this case).

For these reasons and those stated in Section III.B.2 above regarding conditional objections, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 9.

### c.   Request No. 10

**RFP No. 10:** All Documents related to Defendants addressing or adapting to climate change and/or the greenhouse effect, both at the Terminal and generally, including but not limited to documents concerning:

>    (a) policies and procedures related or applicable to the Terminal's physical infrastructure (including but not limited to buildings, pipelines, and berms);
>    (b) engineering, design and management of facilities and infrastructure;
>    (c) investment and financial management;
>    (d) interactions with industry trade groups;
>    (e) interactions with regulatory and other governmental agencies (including but not limited to the U.S. Department of Energy, the U.S. Environmental Protection Agency or any other Federal agency);
>    (f) interactions with any other governmental entity (including the United States Congress or members thereof); and
>    (g) corporate policy, management, or decision-making.

**RESPONSE TO RFP No. 10:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff.

Further, the phrase "and generally" is vague and overbroad and seeks information unrelated to the Terminal. Defendants also specifically object to subparts (c) and (d) as irrelevant because Defendants' financial information and their interactions with industry trade groups bear no relation to the Terminal's alleged non-compliance with the terms of its RIPDES permit or RCRA, the bases for Plaintiff's claims and requested relief.

Defendants further object to this Request as vague and ambiguous because the terms "climate change" and "greenhouse effect" are undefined. Defendants also object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms that remain to be negotiated and agreed upon by the parties.[45]

**BASIS FOR RELIEF:** Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections). In addition, documents concerning how Shell considers climate change before making investments and in its communications with industry trade groups are highly probative of Shell's views on the imminence and magnitude of risks posed to Shell's investments. These documents are relevant for the same reasons described in Basis for Relief for Request No. 12 (Scope of Claims: explaining how companywide approach or methods by which to address risks of increased variability in climactic events, as well as corporate statements on the risks associated with climate change, all bear on CLF's claims regarding good engineering practices, failure to disclose information to RIDEM, and evaluation of civil penalties) and Request No. 21 (discussing the relevance of Shell's consideration of the imminence and exigency of the risks posed by climate change), above.

Defendants' objection that this Request is vague and ambiguous because "climate change" and "greenhouse effect" are undefined is unsupportable for the reasons previously described. *See*

---

[45] Exhibit B at 11-13.

Section III.A.1.j (Request No. 24) (describing Defendants' extensive use and understanding of these terms in this litigation and elsewhere).

In addition, CLF has already explained how documents that do not specifically mention the Terminal but evince a corporatewide policy regarding climate change and/or resiliency planning are relevant to CLF's claims. *See* Basis for Relief for Section III.A.1.a (Request No. 12) (Scope of Claims: explaining how companywide approach to the implementation of good engineering practices or methods by which to address risks of increased variability in climactic events, as well as corporate policies on dealing with the risks associated with climate change, all bear on CLF's claims regarding good engineering practices, failure to disclose information to RIDEM, and evaluation of civil penalties).

For these reasons and those stated in Section III.B.2 above regarding conditional objections, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 10.

### d.      Request No. 11

**RFP No. 11:** All Documents concerning risks to the Terminal's physical infrastructure from climate change, flooding, sea level rise, and/or severe weather.

**RESPONSE TO RFP No. 11:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including the time period where a Defendant owned or operated the Terminal. Defendants further object to this Request to the extent it seeks information regarding alleged long-term risks that have been dismissed from the claims in this case. Defendants also object to this Request as vague, overbroad and ambiguous because the term "climate change" is undefined. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control based upon the document search terms that remain to be negotiated and agreed upon by the parties.[46]

---

[46] Exhibit B at 13.

**BASIS FOR RELIEF:** Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections). Defendants' vague time-period objection also fails. The Default Time Period is appropriate for the reasons described in Section III.C.3 below. The time-period objection is also insufficient because, as explained in Section III.C.2 below: (i) objections regarding "the time period relevant to Plaintiff's claims" are improperly vague, and (ii) Defendants' "conditional response" waives the time period objection.

In addition, Defendants' objection about information "regarding alleged long-term risks that have been dismissed from this case" because Defendants have not explained how the requested documents related *specifically* to the effects of climate change on the Terminal's physical infrastructure would not shed light on near-term harms associated with the impacts of climate change. *See* Basis for Relief for Section III.A.1.a (Request No. 12) (Scope of Claims: explaining that information about climate change and its effects, including long-term climate risks, necessarily reflects on the near-term harms alleged in this case).

For these reasons and those stated in Section III.B.2 above regarding conditional objections, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 11.

### e.     Request No. 30

**RFP No. 30:** All Documents related to emergency planning and spill response at the Terminal, including but not limited to:

(a) Facility Response Plans ("FRP") and related Documents;
(b) Emergency Response Action Plans and related Documents;
(c) Documents describing related policies and practices; and
(d) Documents regarding contacts or communications, including attendance at meetings, with governmental agencies and officials responsible for emergency planning and preparedness related to Rhode Island, Narragansett Bay, Providence, or surrounding areas.

**RESPONSE TO RFP No. 30:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief sought by Plaintiff, including critical infrastructure information that implicates security concerns that is not necessary to resolve the issues in this action, and information beyond the periods of Defendants' ownership or operation of the Terminal. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms that remain to be negotiated and agreed upon by the parties.[47]

**BASIS FOR RELIEF:** Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections). Defendants' vague time-period objection also fails. The Default Time Period is appropriate for the reasons described in Section III.C.3 below. The time-period objection is also insufficient because, as explained in Section III.C.2 below: (i) objections regarding the period beyond Defendants' "ownership or operation of the Terminal" are improperly vague, and (ii) Defendants' "conditional response" waives the time period objection.

In addition, Defendants' objection about "critical infrastructure information that implicates security concerns that is not necessary to resolve the issues in this action" is so vague and boundless that CLF cannot properly evaluate the objection, including whether CLF disagrees with Defendants' definition of "not necessary" (likely the case given the Parties' disagreement over Defendants' various relevance objections) and whether marking any relevant documents as

---

[47] Exhibit B at 29.

"Confidential" pursuant to the Protective Order (ECF No. 67) is sufficient to address Defendants' alleged security concerns.

For these reasons and those stated in Section III.B.2 above regarding conditional objections, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 30.

### f.    Request No. 32

**RFP No. 32:** All engineering diagrams, drawings, and/or site plans related to the Terminal, including but not limited to past physical infrastructure upgrades, current physical infrastructure projects, and planned physical infrastructure changes.

**RESPONSE TO RFP No. 32:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including critical infrastructure information that implicates security concerns that is not necessary to resolve the issues in this action.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms that remain to be negotiated and agreed upon by the parties.[48]

**BASIS FOR RELIEF:** Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections). In addition, Defendants' objection about "critical infrastructure information that implicates security concerns that is not necessary to resolve the issues in this action" is so vague and boundless that CLF cannot properly evaluate the objection, including whether CLF disagrees with Defendants' definition of "not necessary" (likely the case given the Parties' disagreement over Defendants' various relevance objections) and

---

[48] Exhibit B at 30.

whether marking any relevant documents as "Confidential" pursuant to the Protective Order (ECF No. 67) is sufficient to address Defendants' alleged security concerns.

For these reasons and those stated in Section III.B.2 above regarding conditional objections, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 32.

### g.      Request No. 36

**RFP No. 36:** All Documents regarding potential for flooding at the Terminal.

**RESPONSE TO RFP No. 36:** Defendants object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms that remain to be negotiated and agreed upon by the parties.[49]

**BASIS FOR RELIEF:** For the reasons stated in Section III.B.2 above regarding conditional objections, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 36.

### h.      Request No. 37

**RFP No. 37:** All analyses of the Terminal's infrastructure, including but not limited to buildings, berms, and pipelines.

**RESPONSE TO RFP No. 37:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief sought by Plaintiff.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms that remain to be negotiated and agreed upon by the parties.[50]

---

[49] Exhibit B at 32.
[50] Exhibit B at 32-33.

**BASIS FOR RELIEF:** Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

For these reasons and those stated in Section III.B.2 above regarding conditional objections, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 37.

### i.    Request No. 39

**RFP No. 39:** All Communications related to storm water monitoring policies and practices at the Terminal.

**RESPONSE TO RFP No. 39:** Defendants object to this Request as overbroad and unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including beyond the period applicable to the CWA and RCRA claims at issue and/or the effective date of the CWA RIPDES permits alleged to be violated. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms that remain to be negotiated and agreed upon by the parties.[51]

**BASIS FOR RELIEF:** Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections). CLF addresses Defendants' time period objection in Section III.C.3, explaining how the default time period is appropriate, especially given the fact that the statute of limitations hasn't begun to run.

---

[51] Exhibit B at 33-34.

For these reasons and those stated in Section III.B.2 above regarding conditional objections, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 39.

**j.      Request No. 41**

**RFP No. 41:** All Documents related to Defendants' policies and practices regarding Terminal employee training, and employee supervision and monitoring.

**RESPONSE TO RFP No. 41:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief sought, including beyond the effective date of the CWA RIPDES permits alleged to be violated and the periods of Defendants' operation or ownership of the Terminal. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms that remain to be negotiated and agreed upon by the parties.[52]

**BASIS FOR RELIEF:** Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections). Defendants' vague time-period objection also fails. The Default Time Period is appropriate for the reasons described in Section III.C.3 below. The time-period objection is also insufficient because, as explained in Section III.C.2 below: (i) objections regarding the period beyond Defendants' "ownership or operation of the Terminal" are improperly vague, and (ii) Defendants' "conditional response" waives the time period objection.

---

[52] Exhibit B at 34-35.

For these reasons and those stated in Section III.B.2 above regarding conditional objections, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 41.

### k.    Request No. 53

**RFP No. 53:** All Documents related to facility management at the Terminal, including but not limited to pump operation, facility operation, and timed flows.

**RESPONSE TO RFP No. 53:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including beyond the time period applicable to Plaintiff's CWA and RCRA claims, Defendants' periods of ownership or operation of the Terminal, and critical infrastructure information that implicates security concerns that is not necessary to resolve the issues in this action.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms that remain to be negotiated and agreed upon by the parties.[53]

**BASIS FOR RELIEF:** Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections). Defendants' vague time-period objection also fails. The Default Time Period is appropriate for the reasons described in Section III.C.3 below. The time-period objection is also insufficient because, as explained in Section III.C.2 below: (i) objections regarding the period beyond "the time period applicable to Plaintiff's CWA and RCRA claims" and Defendants' "ownership or operation of the Terminal" are improperly vague, and (ii) Defendants' "conditional response" waives the time period objection. In addition, Defendants' objection about "critical infrastructure information that implicates security concerns that is not necessary to resolve the issues in this action" is so vague and boundless that CLF cannot

---

[53] Exhibit B at 41.

properly evaluate the objection, including whether CLF disagrees with Defendants' definition of "not necessary" (likely the case given the Parties' disagreement over Defendants' various relevance objections) and whether marking any relevant documents as "Confidential" pursuant to the Protective Order (ECF No. 67) is sufficient to address Defendants' alleged security concerns.

For these reasons and those stated in Section III.B.2 above regarding conditional objections, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 53.

### l.      Request No. 57

**RFP No. 57:** All Documents regarding contamination at the Terminal.

**RESPONSE TO RFP No. 57:** Defendants object to this Request as vague and ambiguous because the term "contamination" undefined. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms that remain to be negotiated and agreed upon by the parties.

**BASIS FOR RELIEF:** For the reasons stated in Section III.B.2 above regarding conditional objections, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 57.

### C.      Time Period Objections

The Parties dispute how far back in time Defendants must search for responsive documents. CLF's First RFPs included the following provision concerning the responsive time period: "Unless otherwise stated, the applicable time frame for these Requests for Production is January 1, 2005 to present" ("Default Time Period"). Exhibit A at 3. Defendants objected to the application of this Default Time Period on several of the Requests. In particular, Defendants' General Objection No. 15 states: "Defendants object to the purported applicable default timeframe of January 1, 2005 to present for these Requests. This timeframe is not relevant, overbroad, unduly burdensome, and not

proportional in relation to the reasonable needs in this case for many of these Requests, as noted in the specific objections below." Exhibit B at 5. This general objection is improper because it is vague and gives no explanation for why the time period is purportedly inappropriate. *See Cornell Corr. of Rhode Island, Inc. v. Cent. Falls Det. Facility Corp.*, No. CA 11-491S, 2012 WL 6738283, at *2 (D.R.I. Dec. 28, 2012) (stating objections to document requests "must include reasons and, in this District, must be stated with specificity.") Moreover, general objections are improper for the reasons described in Section III.D below.

In addition to their general objection to the time period, Defendants also included a variety of objections that could relate to the time period in their Responses to certain Requests: Nos. 1, 5– 7, 11, 12, 28–30, 33, 38–42, 44–46, 49–55, and 59.[54] In particular, Defendants' Responses mix-and-match five different types of vague and unclear objections potentially relating to the time period. As explained in detail in Section III.C.2 below, for every category of time period objection, CLF was left to guess what, if any, limitation Defendants intended to place on their productions in light of these objections. After raising the objection, Defendants then purported to produce documents "[s]ubject to the foregoing general and specific objections,"[55] without any statement purporting to limit the time period that Defendants would apply to the search.

CLF sought clarification from Defendants regarding whether they were limiting their productions, but Defendants changed their answer several times throughout the Parties negotiations. At the beginning of the Parties' negotiations, Defendants stated that, despite making the objection in their specific objections to the above Requests, Defendants were "not withholding any documents responsive to a RFP based upon their objection to the time period of the RFP,

---

[54] Defendants have not maintained their time period objections to Requests 29, 54, and 55, so this Motion does not address those Requests.

[55] With the exception of four Responses where Defendants refused to produce any responsive documents. *See* Request Nos. 12-14, and 21.

unless the RFP Response says so expressly." Exhibit E at 2. Given these representations, CLF understood that Defendants were not withholding any documents based upon their time period objections.

Later, however, Defendants repudiated their earlier position, stating that they *were* withholding documents from *all* Requests with a specific objection, even if their substantive Response did not expressly limit their production. More specifically, Defendants asserted a unilateral right to determine the time period they felt most relevant for any particular Request, without disclosing what time period Defendants were applying:

> Where Defendants have explicitly objected to the time period, Defendants are currently withholding documents that pre-date the time period relevant to specific claims CLF has raised under the Clean Water Act ("CWA") and the Resource Conservation Recovery Act ("RCRA"), some of which relate only to current conduct or alleged ongoing violations. For requests where documents from 2005 or later are relevant, such as waste-related documents potentially pertaining to CLF's RCRA claim, Defendants intend to produce those documents.

Exhibit G at 2. Later in that letter, Defendants summarized their position: "Defendants are only withholding documents based on the time period where documents from that time period are irrelevant to the specific claims CLF has raised in this litigation. This is a request-by-request application of Defendants' time period -based objections." *Id.* at 3–4. For this new position, CLF was left to guess what time period Defendants felt was relevant for each particular Response.

Finally, Defendants changed position again during the Parties most recent negotiations, and now assert a right to withhold documents for *any* request based on what time period Defendants feel is applicable—regardless of whether Defendants had asserted a specific objection to the time period. At the September 27, 2021 meet and confer, CLF raised its concerns about Defendants' time period objections because Defendants had not identified what time period they were using, at which time Defendants agreed to supplement their Responses to provide more specific information on the time periods that they are applying to their responses. Exhibit H at 2.

On October 4, 2021, the Parties held a meet-and-confer where CLF again raised the time period issue, stating that CLF cannot reasonably consider the adequacy of the time period(s) that Defendants were applying to their productions because Defendants had not provided CLF with the time period(s) that Defendants were applying. Defendants again agreed to follow-up with CLF and provide the time periods that they were purporting to apply.

On October 6, 2021, Defendants proposed a responsive time period of 2011 to the present, but Defendants proposed to apply this time limitation to a host of Requests where Defendants had not included a time period objection previously. Exhibit K at 3. In particular, Defendants proposed to apply this period to: "Request Nos. 1 – 11, 22 – 23, 25, 28, 30 – 53, 56 – 59, and 62." *Id.* This proposal sought to apply a time period limitation, for the first time, to the following *twenty-two Requests*: Requests 2-4, 8-10, 22, 23, 25, 31, 32, 34-37, 43, 47, 48, 56-58, 62.

Despite Defendants' changing positions, CLF made every attempt to resolve the time period dispute. In an effort to reach common ground, CLF counter-offered to apply a period of 2008 to the present. Exhibit K at 2. Defendants rejected CLF's counter-offer out of hand and the Parties reached an impasse. *Id.* at 1–2.

Below, CLF addresses the parties' time period-related disputes as follows:

*First*, CLF asks the Court to order Defendants to apply the Default Time Period to the Requests where Defendants did not include a specific time period objection in their Response. Following this argument, CLF then reproduces the text of the relevant Requests and Responses, in accordance with Local Rule Cv 37(a).

*Second*, CLF asks the Court to order Defendants to apply the Default Time Period to the Requests where Defendants used improper "conditional objections," agreeing to produce

documents "subject to the foregoing general and specific objections" but without stating what time period Defendants were using to manage their production.

*Third*, CLF explains why the Default Time Period is appropriate and why Defendants have not met their burden to support their objection or their assertion that 2011 to the present is an appropriate timeframe. CLF then addresses the specific Requests relevant to this objection that have not previously been addressed earlier in the Motion.

### 1. Defendants Waived Any Time Period Objection if It Was Not Raised in Specific Objections

Defendants cannot maintain an objection to the Default Time Period for Responses that did not include a time period objection in their specific objections. Defendants asserted time period objections in their responses to Requests 1, 5–7, 11, 12, 28–30, 33, 38–42, 44–46, 49–55, and 59. While CLF challenges the sufficiency and merit of these objections, *see, e.g.,* Section III.C.3 (generally), Defendants have at least tried to preserve the objection by raising it in their specific objections to each of these Requests. Indeed, this is the premise that CLF operated under during the Parties' negotiations.

However, as explained above, Defendants' October 6 Letter attempted to raise time period objections to *twenty-two* new Requests for the first time. More specifically, Defendants sought to apply a 2011 to present time period to the following Requests where Defendants made no specific objection to the time period: Requests 2-4, 8-10, 22, 23, 25, 31, 32, 34-37, 43, 47, 48, 56-58, 62.

Defendants have waived any objection to the Default Time Period where they did not include the objection in responses to a specific Request. As explained in Section III.D, Defendants cannot rely on their General Objections to preserve an objection that is not made in response to a specific Request. *See* LR cv 34(b). Indeed, Defendants have confirmed with CLF on multiple occasions that they do not intend to apply their General Objections to any Request where a specific

objection was not raised. *See, e.g.,* Exhibit E at 2 (confirming that Defendants "are not relying on their General Objections to withhold any documents responsive to a [Request] and that any objection that Defendants are currently relying on to withhold documents is expressly stated in their specific objections to the [Request]"); Exhibit G at 2-3 (arguing that use of general objections was permissible because they included the objection in their specific objections as well). CLF relied on these representations during the Parties discovery negotiations. In fact, as noted above, Defendant's General Objection to the Default Time Period expressly stated that its specific objections would identify any relevant Requests. *See* Exhibit B at ¶ 15 (arguing that "[t]his timeframe is not relevant, overbroad, unduly burdensome, and not proportional in relation to the reasonable needs in this case for many of these Requests, *as noted in the specific objections below*." (emphasis added)).

For these reasons, the Court should order Defendants to produce documents from the period from 2005 to the present—the Default Time Period—that are responsive to Requests 2–4, 8–10, 22, 23, 25, 31, 32, 34–37, 43, 47, 48, 56–58, 62.

Of the Requests above, CLF has reproduced the text of the following Requests in the earlier sections above concerning other disputes: 4, 8–10, 22, 23, 25, 31, 32, 36, 37, and 57. Therefore, CLF has not reproduced the text of those Requests here. The time period waiver issue is the only outstanding dispute between the Parties for the following Requests: 2, 3, 34, 35, 43, 47, 48, 56, 58, 60, and 62. Pursuant to Local Rule Cv 37(a), CLF here reproduces the text of those Requests and Defendants' Responses.

### a.    Request No. 2

**<u>RFP No. 2:</u>** Documents sufficient to show Defendants' corporate structure (including all parent companies and subsidiary companies) and relationships between the Defendants, including but not limited to organizational charts.

**RESPONSE TO RFP No. 2:** Defendants object to this Request as overbroad, irrelevant, and not proportional in relation to the reasonable needs of the case because Plaintiff's claims relate to the CWA and RCRA compliance at the Terminal, and Shell Oil Company, Shell Petroleum, Inc., and Shell Trading (US) Company have not owned, operated, or controlled the Terminal. Defendants further object to this Request as vague and ambiguous because it fails to define what would be "sufficient to show" the requested information. Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control.[56]

**BASIS FOR RELIEF:** Defendants have waived any objection to the Default Time Period applicable to this Request by failing to include a specific objection, as explained in Section III.C.1 above. Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

### b.      Request No. 3

**RPF No. 3:** Documents sufficient to show ownership (including but not limited to deeds and title) of the Terminal, including Documents concerning the transfer of ownership of the Terminal at all times during which Defendants or their subsidiaries had any ownership interest.

**RESPONSE TO RFP No. 3:** Defendants object to this Request as vague and ambiguous because it fails to define what would be "sufficient to show" the requested information. Defendants further object to the extent the Request seeks information that is publicly available and therefore equally available to Plaintiff. Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control.[57]

**BASIS FOR RELIEF:** Defendants have waived any objection to the Default Time Period applicable to this Request by failing to include a specific objection, as explained in Section III.C.1 above.

### c.      Request No. 34

**RFP No. 34:** Documents sufficient to show all locations where hazardous waste is generated, transported, and/stored at the Terminal.

---

[56] Exhibit B at 6–7.
[57] Exhibit B at 7.

**RESPONSE TO RFP No. 34:** Defendants object to this Request as vague and ambiguous because it fails to define what would be "sufficient to show" the requested information.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control that identify or describe where hazardous waste is generated, transported, and/or stored at the Terminal.[58]

**BASIS FOR RELIEF:** Defendants have waived any objection to the Default Time Period applicable to this Request by failing to include a specific objection, as explained in Section III.C.1 above.

### d.    Request No. 35

**RFP No. 35:** All Documents related to analyses of potential pollution from the Terminal.

**RESPONSE TO RFP No. 35:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief sought by Plaintiff. Defendants further object to this Request as vague and ambiguous because the term "pollution" is undefined. Defendants also object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control.[59]

**BASIS FOR RELIEF:** Defendants have waived any objection to the Default Time Period applicable to this Request by failing to include a specific objection, as explained in Section III.C.1 above. Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

### e.    Request No. 43

**RFP No. 43:** All Documents related to compliance with the certification requirements under 40 C.F.R. § 122.22.

---

[58] Exhibit B at 31.

[59] Exhibit B at 32.

**RESPONSE TO RFP No. 43:** Defendants object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control.[60]

**BASIS FOR RELIEF:** Defendants have waived any objection to the Default Time Period applicable to this Request by failing to include a specific objection, as explained in Section III.C.1 above.

### f.    Request No. 47

**RFP No. 47:** All Documents related to Terminal inspections performed by, or on behalf of, Defendants on the days leading up to, during, and after storms, floods, inundation, and/or weather events.

**RESPONSES TO RFP No. 47:** Defendants object to this Request as vague, overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief sought by Plaintiff. Defendants also object to the extent this Request seeks information from non-parties. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce all responsive, non-privileged documents in their possession, custody, and control.[61]

**BASIS FOR RELIEF:** Defendants have waived any objection to the Default Time Period applicable to this Request by failing to include a specific objection, as explained in Section III.C.1 above. Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

### g.    Request No. 48

**RFP No. 48:** All Documents related to any maintenance or repairs performed on the Terminal infrastructure following a storm event, inundation, or flooding, including but not limited to

---

[60] Exhibit B at 35–36.
[61] Exhibit B at 37-38.

maintenance logs and Documents identifying when such maintenance occurred and by whom it was undertaken.

**RESPONSES TO RFP No. 48:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief sought by Plaintiff. Defendants also object to the extent this Request seeks information from non-parties. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control.[62]

**BASIS FOR RELIEF:** Defendants have waived any objection to the Default Time Period applicable to this Request by failing to include a specific objection, as explained in Section III.C.1 above. Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

### h.    Request No. 56

**RFP No. 56:** All Documents regarding the presence of chemicals in soil and groundwater at the Terminal.

**RESPONSES TO RFP No. 56:** Defendants object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control.[63]

**BASIS FOR RELIEF:** Defendants have waived any objection to the Default Time Period applicable to this Request by failing to include a specific objection, as explained in Section III.C.1 above.

---

[62] Exhibit B at 38.
[63] Exhibit B at 42-43.

i.  <strong>Request No. 58</strong>

<strong><u>RFP No. 58:</u></strong> All Documents regarding soil and groundwater remediation at the Terminal.

<strong><u>RESPONSES TO RFP No. 58:</u></strong> Defendants object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control.[64]

<strong><u>BASIS FOR RELIEF:</u></strong> Defendants have waived any objection to the Default Time Period applicable to this Request by failing to include a specific objection, as explained in Section III.C.1 above.

j.  <strong>Request No. 62</strong>

<strong><u>RFP No. 62:</u></strong> All Documents Defendants relied on in preparing, or referred to in its answers to, Plaintiff's Interrogatories.

<strong><u>RESPONSE TO RFP No. 62:</u></strong> Subject to the foregoing general objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control.[65]

<strong><u>BASIS FOR RELIEF:</u></strong> Defendants have waived any objection to the Default Time Period applicable to this Request by failing to include a specific objection, as explained in Section III.C.1 above.

<strong>2.  The Court Should Overrule Defendants' Time-Period Objections as Improperly Vague and Impermissible "Conditional Responses"</strong>

All of Defendants specific time-period objections should be overruled for two reasons.

*First*, all of Defendants time-period objections are too vague to adequately state an objection. As explained above, to be preserved an objection must be "state[d] with specificity." L.R. Cv. 34(b). If a respondent "intends to stand by its objections and withhold documents based on relevance, burden, and/or vagueness, it must articulate *precisely why* a particular discovery request calls for

---

[64] Exhibit B at 48.
[65] Exhibit B at 45.

78

irrelevant information or uses vague terms and/or why responding to it would be unduly burdensome." *HealthEdge Software, Inc. v. Sharp Health Plan*, No. 19-CV-11020-ADB, 2021 WL 1821358, at *4 (D. Mass. May 6, 2021) (emphasis added). Defendants' Responses include five different categories of objections (addressed individually below) that appear to relate to time period. The different categories are applied almost randomly throughout Defendants' Responses without a clear basis for when one or another is applied. Regardless, as detailed below, all five categories have the same insufficiencies: (i) they do not explain the basis for limiting the time period, and (ii) they do not define what time period Defendants are applying:

*Beyond Period Relevant to CLF's Claims:* Defendants' Responses to three Requests contain an unexplained, generic objection that the Request seeks documents "beyond the period relevant to Plaintiff's claims." *See* Request Nos. 1, 5, and 6. These objections give CLF no information with which to evaluate Defendants' objection. Defendants do not define what period Defendants claim is relevant to CLF's claims or what limitation, if any, Defendants intend to place on their productions. CLF is left to guess Defendants' intentions.

*Beyond Period Applicable to Plaintiff's Claims or Relief Sought*: Several other Responses include similar objections that Requests seek documents beyond "the period applicable to Plaintiff's claims or relief sought." *See* Request Nos. 33, 38–40, 45, 46, 52–55, and 59. These objections are just as vague as the previous objections. CLF is left to guess what period that Defendants claim is relevant to CLF's claims or what limitation, if any, Defendants intend to place on their productions.

*Beyond Period A Defendant Owned or Operated the Terminal*: Several Responses object to producing documents from any period outside the period that "a Defendant owned or operated the Terminal." *See* Request Nos. 11, 28–30, 38, 41, 42, 44, 49, 51 and 53. Like Defendants' other

time-period objections, this objection is hopelessly vague because it does not identify the period during which Defendants assert that a Defendant owner or operated a Terminal. In fact, this objection is particularly puzzling because Defendant Motiva owned the Terminal at the start of the Default Time Period in 2005 and Defendants Equilon and Triton took over ownership and operation from Motiva. Meanwhile, Defendant Shell Oil Company has held at least an indirect stake in the Terminal for that entire period. CLF has no way to meaningful understand or evaluate Defendants' objection.

*Limited to A Five-Year Period*: Three of Defendants Responses make vague statements that CLF's Requests are improper because CLF's claims are for "ongoing violations that are limited to a five-year period." *See* Request Nos. 1, 7, and 12. While it is not clear that every one of these references is intended as a time-period objection, *see* Request No. 12, CLF is assuming that each is a time period objection. However, these objections are still hopelessly vague. All the objections amount to is the uncontroversial fact that Clean Water Act and RCRA actions carry a five-year statute of limitations. Defendants' objections do not explain whether Defendants are asserting that the statute of limitations is the outer bound of discoverability or provide any information on what period Defendants intend to apply to their responses. CLF is, again, left to guess.

*Outside Effective Date of Permits:* Seven of Defendants Responses object to producing documents from outside the "the effective date of the . . . permits alleged to be violated." *See* Request Nos. 33, 38–41, 50, 51. Like the five-year period objection, these objections merely state the CWA permit has a start date. Defendants Responses do not explain why discovery should be cutoff at the effective date of the CWA permit or what limitation, if any, Defendants intend to actually place on their productions.

For these reasons, all of Defendants' time-period objections are too vague to preserve any of the objections, and the Court should overrule all of the objections.

*Second*, the time-period objections are also insufficient for the same reasons described in Section III.B.2 above—they are followed by improper "conditional responses." Each of Defendants' time period objections are followed by a response substantially in the following form: "Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control." As explained in Section III.B.2 above, such "conditional responses" are improper because they leave CLF and the court "guessing as to whether Defendant[s] ha[ve] produced all documents, or only produced some documents and withheld others on the basis of" their objections. *Pro Fit Mgmt., Inc. v. Lady of Am. Franchise Corp.*, No. 08-CV-2662 JAR/DJW, 2011 WL 939226, at *9 (D. Kan. Feb. 25, 2011), *objections overruled*, No. 08-CV-2662-JAR-DJW, 2011 WL 1434626 (D. Kan. Apr. 14, 2011).

Indeed, the reason for disallowing "conditional responses" is manifest in this case—CLF has no way to know whether Defendants are withholding responsive documents and, if so, over which period. As explained above, Defendants' time period objections are a confusing mix-and-match of five different time period objections, none of which are supported with adequate explanation. Moreover, Defendants changed their position throughout the Parties negotiations, originally stating that they were not withholding any documents based on the time period objections and then altering course and asserting a unilateral right to withhold documents based on whatever unstated timeframe they felt appropriate.

For these reasons, the Court should overrule and strike Defendants' time period objections and order Defendants to produce documents from 2005 to the present for Requests 1, 5–7, 11, 12, 13, 28–30, 33, 38–42, 44–46, 49–55, and 59.

### 3. The Time Period for CLF's Requests is Appropriate and Defendants' Objections Should Be Overruled

For those Requests where a time period applies, CLF's Requests apply two responsive time periods. The majority of CLF's requests apply the Default Time Period of 2005 to the present. Two Requests apply a time period of 1985 to the present. *See* Request Nos. 1 & 7. As explained below, these time periods are relevant and appropriate, and Defendants' objections should be overruled.

The Default Time Period from 2005 to the present is relevant because Defendants' prior Clean Water Act permit was issued in 2005. CLF has alleged that Defendants are violating their Clean Water Act permit issued in 2011 by, among other things, (i) failing to prepare the Terminal for the reasonably foreseeable risks of climate change, and (ii) failing to disclose known climate change risks to its regulators. At a minimum, even if Defendants' purported five-year statute of limitations applies to CLF's Clean Water Act claims, violations of the Permit from August 2012 to the present—the vast majority of the current permit term—would be in play because CLF filed its Complaint in August 2017. *See* Complaint, ECF 1 (filed Aug. 28. 2017). Defendants' permit immediately preceding the 2011 permit was issued in 2005.

Defendants' knowledge and actions during the prior permit, and Defendants' statements to RIDEM during the 2005 permit and the application for the 2011 permit are relevant for evaluating the state of Defendants' knowledge and experience at the start of the current permit term. Defendants' knowledge about the risks posed by climate change—including what Defendants knew and when they knew it—is highly relevant to several important issues in the case. For

82

example, CLF has alleged Defendants failed to disclose knowledge in their possession about the risks posed by climate change. Documents, even those from before 2011, are likely to demonstrate the depth of Defendants' knowledge about climate change and are relevant to determine what Defendants were obligated, and failed, to disclose. In addition, CLF's claims require interpretation of what qualifies as "good engineering practices" and a determination of whether Defendants have utilized that standard at the Terminal. Defendants' past policies and procedures for analyzing and addressing climate change-related risks at oil terminals, including the Providence Terminal, how "good engineering practices" may have evolved over time and whether Defendants have complied with the standard.

Indeed, the State of Rhode Island adopted its first formal, binding Sea Level Rise policy applicable to coastal infrastructure during this period. As CLF alleged, the Rhode Island Coastal Resources Management Council (the "CRMC") has adopted a "Climate and Sea Level Rise Policy" requiring the Council to, among other things, "reassess coastal infrastructure and seaworthy marine structure building standards periodically not only for sea level rise, but also for other climate changes including more intense storms, increased wave action, and increased acidity in the sea." TAC ¶ 268. CRMC first enacted this policy in 2008, during the prior permit term. Defendants' actions in response to this binding policy, or lack of action, is relevant to whether Defendants have adequately analyzed and addressed the risk of climate change to the Terminal.

The pre-2011 information is also highly relevant to Defendants' defenses in this case. Defendants maintain that they are satisfying all of their obligations at the Providence Terminal. An examination of whether Defendants' pre-2011 actions at the Providence Terminal are consistent with established policies and actions taken at other facilities is clearly relevant for evaluating that defense. Defendants have also taken the litigation position that CLF's allegations

of the risks posed by severe weather are "highly speculative, remote, or hypothetical." Defs.' Mem. of Law in Support of MTD at 14. Defendants' knowledge and analysis of climate-change impacts, including decades of research and data, is highly relevant to analyzing the credibility of this position, as well as probing the veracity of testimony and evidence Defendants produce.

Contrary to Defendants assertions, the beginning of the statute of limitations period is not the boundary for the time period relevant to discovery. *See, e.g., Stanzler v. Loew's Theatre & Realty Corp.*, 19 F.R.D. 286, 288 (D.R.I. 1955) ("[I]t is permissible and proper to compel answers concerning [the] defendants' activities for some period beyond the statutory period of limitations."). Indeed, the First Circuit is clear that evidence from before the statute of limitations is admissible at trial. *See Shervin v. Partners Healthcare Sys.*, 804 F.3d 23, 47–48 (1st Cir. 2015) (allowing the jury to consider evidence before the statute of limitations for "background evidence (i.e. as it may, for example, bear upon motive, intent or context)"); *United States v. Balthazard*, 360 F.3d 309, 314 n.3 (1st Cir. 2004) (noting that it was not improper for the jury to consider pre-statute of limitations evidence); *Morrison v. Carleton Woolen Mills, Inc.*, 108 F.3d 429, 438 (1st Cir. 1997) (holding that the admission of evidence before the statute of limitations was not improper given the "systemic violation"). This rule conforms with common sense. If discovery cut off at the beginning of a statute of limitations period, it would often be impossible to prove violations occurring early in that period.

Here, CLF has alleged that Defendants failed to analyze, disclose, or address the risks posed by climate change at the Providence Terminal, both in its permit application and going forward. It stands to reason that the experience and knowledge Defendants accrued during the previous permit is highly relevant to what Defendants were obligated to do under the 2011 permit and to disclose when applying for the 2011 permit.

Moreover, CLF alleges that Defendants' Clean Water Act and RCRA violations are continuing, *see* TAC ¶¶ 286, 293, 301, 305, 311, 316, 322, 328, 334, 339, 346, 355, 362, 367, 372, 378, 386, 392, 399, 405, 422, 435–36, and thus no statute of limitations has begun to run. *U.S. Pub. Interest Research Grp. v. Atl. Salmon of Me., LLC.*, 257 F. Supp. 2d. 407, 427 (D. Me. 2003) (The "[d]efendants' violations of the [Clean Water Act] . . . have been continuous and are still ongoing; thus no 'accrual' has occurred in this case, and the statute of limitations has not yet begun to run . . . ."); *Eastman v. Brunswick Coal & Lumber Co.*, No. 95–255–P–C, 1996 WL 911200, at *6 (D. Me. Apr. 19, 1996) (determining whether the plaintiff adequately alleged continuing violations for its RCRA claims to avoid the statute of limitations); *Cornerstone Realty, Inc. v. Dresser Rand Co.*, 993 F. Supp. 107, 115 (D. Conn. 1998) ("Under the continuing violation doctrine, 'the limitations period for a continuing offense does not begin until the offense is complete.' Because a continuing violation tolls the running of the limitations period until the offense is complete, the date when a violation 'first accrues' is not to be confused with the date when a violation 'first occurs.'") (discussing RCRA) (quoting *United States v. Rivera–Ventura,* 72 F.3d 277, 281 (2d Cir. 1995)).

Therefore, Defendants have failed to provide sufficient objections to confine the responsive time frame to 2011 to the present.

\*     \*     \*     \*     \*

Below, CLF addresses the time period objections Defendants have raised as they apply to individual Requests. CLF is not reproducing Requests that have already been specifically addressed in this Motion; in those instances, CLF addressed the time period objections when it addressed the other objections.

### a.      Request No. 1

**RFP No. 1:** All document or record retention policies applicable to the operations and remediation efforts at the Terminal from 1985 through present."

**RESPONSE TO RPF No. 1:** Defendants object to this Request as overbroad and unduly burdensome to the extent it seeks document or record retention policies beyond the period relevant to Plaintiff's claims, which concern alleged current violations of the CWA and RCRA, and/or ongoing violations that are limited to a five-year period. Further, the effort to locate and produce policies from 1985, i.e., a period of over 35 years, is not proportional in relation to the reasonable needs of the case.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control that have been in place during the time a Defendant owned, operated, or controlled the Terminal.[66]

**BASIS FOR RELIEF:** This Request seeks a very limited set of documents governing the Terminal's records retention policies. These policies inform what documents Defendants can be expected to have retained over that period. The nature and limited scope of information sought by Request No. 1 justify the request for information from 1985 to the present.

Meanwhile, Defendants' vague time-period objection is insufficient because, as explained in Section III.C.2 above: (i) objections regarding "the period a Defendant owned or operated the Providence Terminal" are improperly vague, and (ii) Defendants' "conditional response" waives the time period objection. Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

### b.      Request No. 5

**RFP No. 5:** Documents sufficient to show the operators of the Terminal.

**RESPONSE TO RFP No. 5:** Defendants object to this Request as vague and ambiguous because it fails to define what would be "sufficient to show" the requested information. Defendants also

---

[66] Exhibit B at 6.

object this this Request to the extent it seeks information beyond the time period relevant to Plaintiff's claims.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control that identify the Terminal's operators.[67]

**BASIS FOR RELIEF:** This Request seeks a very limited set of documents—only documents sufficient to identify the operators of the Terminal for the Default Time Period. Information concerning Shell's operation of the Terminal during this period is relevant for the reasons described in Section III.C.3 above. Meanwhile, Defendants' vague time-period objection is insufficient because, as explained in Section III.C.2 above: (i) objections regarding "the time period relevant to Plaintiff's claims" are improperly vague, and (ii) Defendants' "conditional response" waives the time period objection.

### c.      Request No. 28

**RFP No. 28:** All Clean Water Act permits, permit applications, and technical filings for the Terminal, including but not limited to:

(a) National    Pollution    Discharge    Elimination    System("NPDES") permits and related Documents;
(b) Stormwater Pollution and Prevention Plans and related Documents; and
(c) Spill Prevention, Control and Countermeasures Plans and related Documents.

**RESPONSE TO RFP No. 28:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including documents outside the period a Defendant owned or operated the Providence Terminal. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control.[68]

---

[67] Exhibit B at 8.
[68] Exhibit B at 28.

**BASIS FOR RELIEF:** This Request seeks highly relevant documents related to Defendants' Clean Water Act permit. Information concerning Shell's operation of the Terminal during the Default Time Period is relevant for the reasons described in Section III.C.3 above. Meanwhile, Defendants' vague time-period objection is insufficient because, as explained in Section III.C.2 above: (i) objections regarding "the period a Defendant owned or operated the Providence Terminal" are improperly vague, and (ii) Defendants' "conditional response" waives the time period objection. Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

#### d.      Request No. 33

**RFP No. 33:** All Discharge Monitoring Reports for the Terminal, along with all related monitoring data, lab analyses, and Communications.

**RESPONSE TO RFP No. 33:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks documents not relevant to the period applicable to Plaintiff's claims or relief sought, including beyond the effective date of the CWA RIPDES permits alleged to be violated. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, and non-privileged documents in their possession, custody, and control.[69]

**BASIS FOR RELIEF:** This Request seeks highly relevant documents related to pollution monitoring under Defendants' Clean Water Act permit. Information concerning Shell's operation of the Terminal during the Default Time Period is relevant for the reasons described in Section III.C.3 above. Meanwhile, Defendants' vague time-period objection is insufficient because, as explained in Section III.C.2 above: (i) objections regarding the period "beyond the effective date

---

[69] Exhibit B at 31.

of the CWA RIPDES permits alleged to be violated" are improperly vague, and (ii) Defendants' "conditional response" waives the time period objection.

Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

### e.      Request No. 38

**RFP No. 38:** All Documents related to Defendants' stormwater monitoring policies and practices at the Terminal.

**RESPONSE:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks documents not relevant to the period applicable to Plaintiff's claims or relief sought, including beyond the effective date of the CWA RIPDES permits alleged to be violated and the periods of Defendants' operation or ownership of the Terminal. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control.[70]

**BASIS FOR RELIEF:** This Request seeks highly relevant documents related to pollution monitoring under Defendants' Clean Water Act permit. Information concerning Shell's operation of the Terminal during the Default Time Period is relevant for the reasons described in Section III.C.3 above. Meanwhile, Defendants' vague time-period objection is insufficient because, as explained in Section III.C.2 above: (i) objections regarding the period "beyond the effective date of the CWA RIPDES permits alleged to be violated" and beyond the period of Defendants' operation or ownership of the Terminal are improperly vague, and (ii) Defendants' "conditional response" waives the time period objection.

---

[70] Exhibit B at 33.

Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

### f.      Request No. 40

**RFP No. 40:** All Documents related to stormwater pumping, inspection, and discharge at the Terminal.

**RESPONSE TO RFP No. 40:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including beyond the period applicable to the CWA and RCRA claims at issue and/or the effective date of the CWA RIPDES permits alleged to be violated. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control.[71]

**BASIS FOR RELIEF:** This Request seeks highly relevant documents related to the stormwater discharges regulated by Defendants' Clean Water Act permit. Information concerning Shell's operation of the Terminal during the Default Time Period is relevant for the reasons described in Section III.C.3 above. Meanwhile, Defendants' vague time-period objection is insufficient because, as explained in Section III.C.2 above: (i) objections regarding the period "beyond the effective date of the CWA RIPDES permits alleged to be violated" and beyond the "period applicable to the CWA and RCRA claims at issue" are improperly vague, and (ii) Defendants' "conditional response" waives the time period objection.

Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of

---

[71] Exhibit B at 34.

boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

### g.      Request No. 42

**RFP No. 42:** All Documents related to policies, procedures, and training for the corporate official responsible for the certification under 40 C.F.R. § 122.22.

**RESPONSE TO RFP No. 42:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including information outside of Defendants' periods of ownership or operation of the Terminal. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control.[72]

**BASIS FOR RELIEF:** This Request seeks highly relevant documents related to Shell's policies and procedures surrounding applications—and their corresponding legally required certifications—for Clean Water Act permits. Information concerning Shell's operation of the Terminal during the Default Time Period is relevant for the reasons described in Section III.C.3 above. Meanwhile, Defendants' vague time-period objection is insufficient because, as explained in Section III.C.2 above: (i) objections regarding the period outside of Defendants' ownership or operation of the Terminal are improperly vague, and (ii) Defendants' "conditional response" waives the time period objection.

Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

---

[72] Exhibit B at 35.

h.      **Request No. 44**

**RFP No. 44:** All Documents regarding Terminal employee training related to discharge monitoring, including but not limited to manuals, handbooks, or presentation.

**RESPONSE TO RFP No. 44:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including information outside of Defendants' periods of ownership or operation of the Terminal. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control.[73]

**BASIS FOR RELIEF:** This Request seeks highly relevant documents related to pollution monitoring under Defendants' Clean Water Act Permit. Information concerning Shell's operation of the Terminal during the Default Time Period is relevant for the reasons described in Section III.C.3 above. Meanwhile, Defendants' vague time-period objection is insufficient because, as explained in Section III.C.2 above: (i) objections regarding the period "outside of Defendants' periods of ownership or operation of the Terminal" are improperly vague, and (ii) Defendants' "conditional response" waives the time period objection.

Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

i.      **Request No. 45**

**RFP No. 45:** All Documents regarding Terminal employee training related to emergency preparedness, including but not limited to manuals, handbooks, or presentations.

**RESPONSES TO RFP No. 45:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief

---

[73] Exhibit B at 36.

sought by Plaintiff, including information beyond the period applicable to Plaintiff's claims, and critical infrastructure information that implicates security concerns that is not necessary to resolve the issues in this action. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control.[74]

**BASIS FOR RELIEF:** This Request seeks highly relevant documents related to emergency preparedness at the Terminal, which CLF has alleged is insufficient. Information concerning Shell's operation of the Terminal during the Default Time Period is relevant for the reasons described in Section III.C.3 above. Meanwhile, Defendants' vague time-period objection is insufficient because, as explained in Section III.C.2 above: (i) objections regarding the "period applicable to Plaintiff's claims" are improperly vague, and (ii) Defendants' "conditional response" waives the time period objection.

Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

### j.    Request No. 46

**RFP No. 46:** All Documents regarding Terminal employee training related to water testing following weather events, floods, or inundations, including but not limited to manuals, handbooks, or presentations.

**RESPONSES TO RFP No. 46:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief sought by Plaintiff, including information beyond the period applicable to Plaintiff's claims. Defendants also object to the extent this Request seeks information from non-parties. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

---

[74] Exhibit B at 36–37.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control.[75]

**BASIS FOR RELIEF:** This Request seeks highly relevant documents related to post-storm and flooding procedures at the Terminal. Information concerning Shell's operation of the Terminal during the Default Time Period is relevant for the reasons described in Section III.C.3 above. Meanwhile, Defendants' vague time-period objection is insufficient because, as explained in Section III.C.2 above: (i) objections regarding the "period applicable to Plaintiff's claims" are improperly vague, and (ii) Defendants' "conditional response" waives the time period objection.

Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

### k.    Request No. 49

**RFP No. 49:** All Documents related to the containment of leaks and spills at the Terminal, including related practices, policies, and procedures.

**RESPONSES TO RFP No. 49:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief sought by Plaintiff, including beyond the periods of Defendants' operation or control of the Terminal. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce all responsive, non-privileged documents in their possession, custody, and control.[76]

**BASIS FOR RELIEF:** This Request seeks highly relevant documents related to containment of leaks and spills at the Terminal, which CLF alleges pose an imminent risk. Information concerning Shell's operation of the Terminal during the Default Time Period is relevant for the reasons

---

[75] Exhibit B at 37.
[76] Exhibit B at 39.

described in Section III.C.3 above. Meanwhile, Defendants' vague time-period objection is insufficient because, as explained in Section III.C.2 above: (i) objections regarding the period beyond "Defendants' operation or control of the Terminal" are improperly vague, and (ii) Defendants' "conditional response" waives the time period objection.

Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

### l.      Request No. 50

**RFP No. 50:** All Documents related to implementation of the best management practices referenced in any stormwater pollution prevention plans for the Terminal.

**RESPONSES TO RFP No. 50:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including beyond the effective date of the CWA RIPDES permit(s) alleged to be violated. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control.[77]

**BASIS FOR RELIEF:** This Request seeks highly relevant documents related to implementation of stormwater best management practices at the Terminal, which CLF has alleged is insufficient. Information concerning Shell's operation of the Terminal during the Default Time Period is relevant for the reasons described in Section III.C.3 above. Meanwhile, Defendants' vague time-period objection is insufficient because, as explained in Section III.C.2 above: (i) objections regarding the period beyond "the effective date of the … permits at issue" are improperly vague, and (ii) Defendants' "conditional response" waives the time period objection.

---

[77] Exhibit B at 40.

Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

### m.      Request No. 51

**RFP No. 51:** Documents sufficient to show Defendants' practices, policies, and procedures relating to maintenance of oil/water separators and stormwater ponds at the Terminal.

**RESPONSES TO RFP No. 51:** Defendants object to this Request as vague and ambiguous because it fails to define what would be "sufficient to show" the requested information. Defendants further object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including beyond the effective date of the CWA RIPDES permit(s) alleged to be violated, and the periods of Defendants' ownership or operation of the Terminal.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control that identify or describe the practices, policies, and procedures at the Providence Terminal relating to the maintenance of oil/water separators and stormwater ponds.[78]

**BASIS FOR RELIEF:** This Request seeks highly relevant documents related to maintenance of stormwater control measures at the Terminal, which CLF has alleged is insufficient. Information concerning Shell's operation of the Terminal during the Default Time Period is relevant for the reasons described in Section III.C.3 above. Meanwhile, Defendants' vague time-period objection is insufficient because, as explained in Section III.C.2 above: (i) objections regarding the period beyond "the effective date" of the permits at issue and "Defendants' ownership or operation of the Terminal" are improperly vague, and (ii) Defendants' "conditional response" waives the time period objection.

---

[78] Exhibit B at 40.

Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

### n.   Request No. 52

**RFP No. 52:** All Documents related to the operation, status, and maintenance of wastewater collection and treatment systems, including component parts, both historical and current.

**RESPONSES TO RFP No. 52:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including beyond the period applicable to Plaintiffs CWA and RCRA claims. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control.[79]

**BASIS FOR RELIEF:** This Request seeks highly relevant documents related to operation and maintenance of stormwater control measures at the Terminal, which CLF has alleged is insufficient. Information concerning Shell's operation of the Terminal during the Default Time Period is relevant for the reasons described in Section III.C.3 above. Meanwhile, Defendants' vague time-period objection is insufficient because, as explained in Section III.C.2 above: (i) objections regarding the period beyond "the period applicable to Plaintiffs CWA and RCRA claims" are improperly vague, and (ii) Defendants' "conditional response" waives the time period objection.

Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of

---

[79] Exhibit B at 40-41.

boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

**o.**      **Request No. 59**

**RFP No. 59:** All Documents provided to or received from, and all Communications with, the National Response Center of the National Response System regarding any oil or chemical discharges into the environment from or at the Terminal.

**RESPONSES TO RFP No. 59:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that implicates security concerns that is not necessary to resolve the issues in this action, and information beyond the period applicable to Plaintiff's CWA and RCRA claims.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control.[80]

**BASIS FOR RELIEF:** This Request seeks highly relevant documents related to discharges of pollution into the environment from the Terminal. Information concerning Shell's operation of the Terminal during the Default Time Period is relevant for the reasons described in Section III.C.3 above. Meanwhile, Defendants' vague time-period objection is insufficient because, as explained in Section III.C.2 above: (i) objections regarding the period beyond "the period applicable to Plaintiffs CWA and RCRA claims" are improperly vague, and (ii) Defendants' "conditional response" waives the time period objection.

In addition, Defendants' objection about information implicating "security concerns that is not necessary to resolve the issues in this action" is so vague and boundless that CLF cannot properly evaluate the objection, including whether CLF disagrees with Defendants' definition of "not necessary" (likely the case given the Parties' disagreement over Defendants' various relevance objections) and whether marking any relevant documents as "Confidential" pursuant to the Protective Order (ECF No. 67) is sufficient to address Defendants' alleged security concerns.

---

[80] Exhibit B at 43-44.

Lastly, Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

###### D.      General Objections

CLF asks this Court to overrule Defendants' General Objections 1–7, 11–13, 15, and 16. As noted above, Defendants are required to state "with specificity *under each individual request* all grounds upon which the objecting party relies" or Defendants waive that ground for objection. LR Cv 34(b) (emphasis added). Local Rule 34 makes clear that this requirement "precludes the consideration of any generic general objections." *Id.* (emphasis added). Therefore, as explained below, Defendants' statement of generic general objections to preserve its objections are improper and should be overruled.

Defendants' Responses include a section entitled "General Objections and Limitations" containing 16 numbered paragraphs. Exhibit B at 2–5. Defendants' improper objections fall roughly into two categories: (i) generic objections purporting to apply to CLF's Requests "to the extent that" they seek certain types of information (*see id.* ¶¶ 1–7, 16); and (ii) objections to certain definitions in CLF's Requests (*see id.* ¶¶ 11–13, 15).[81] Defendants' Response then includes the following statement improperly purporting to apply their General Objections to each of CLF's Requests, whether or not Defendants made a specific objection to a certain Request:

> These General Objections are incorporated by reference into each of the individual Responses below. The following Responses are made subject to the foregoing preliminary statement and these General Objections. Defendants do not waive any General Objections in response to any specific Discovery Request propounded, and

---

[81] The "General Objections and Limitations" section also contains three paragraphs purporting to reserve certain rights. *See id.* ¶¶ 8–10. CLF does not seek to strike this third category of statements as they do not purport to have any independent legal effect. CLF also is not moving on General Objection 14.

any specific objection made by Defendants in no respect limits or modifies the General Objections stated herein.

Exhibit B at 5–6.

Defendants' objections are exactly the type of "generic general objection" that Local Rule Cv 34 prohibits. In the first category of objections, Defendants' purport to object to any Request "to the extent that" it seeks certain categories of information. For example, in paragraph 3 Defendants "object to the Requests as unduly burdensome to the extent they seek information or documents that cannot be located after a reasonable search of its records reasonably believed most likely to contain the responsive information." This objection gives CLF no information about what Requests it applies to or which records were searched or not searched. Similarly, in paragraph 4 Defendants object to "Requests to the extent that they call for information beyond the scope of discovery permitted under the Federal Rules of Civil Procedure" and states that "[n]umerous Requests seek information that is not relevant to the claims in this matter (e.g., entirely unrelated to the Terminal, issues beyond the CWA/RIPDES/RCRA claims, broad global warming/climate change issues, or time period at issue), and/or the relief sought by Plaintiff." While providing some additional information, an objection purporting to describe "[n]umerous requests" gives CLF no information with which it can formulate a response. Paragraphs 1, 2, 5–7, and 16 are similarly vague and imprecise.

Defendants' objections to definitions in CLF's Requests are similarly problematic. *See id.* For example, Defendants' object to CLF's definitions of "Defendants," "Shell," and "Shell's RIPDES Permit," but Defendants do not state (i) how they are limiting their search and production, or (ii) how the objection might impact any particular Request. *Id.* ¶¶ 11–13. Defendants do not

100

make specific objections based on these objections, and therefore, these objections are waived.[82] Meanwhile, Paragraph 15 objects to the default responsive timeframe included in CLF's Requests stating that the "timeframe is not relevant, overbroad, unduly burdensome, and not proportional in relation to the reasonable needs in this case for many of these Requests, as noted in the specific objections below." *Id.* ¶ 15. General Objection 15 does not (i) explain the basis for any of its objections to the time period, or (ii) state what, if any, documents Defendants intend to withhold based on the objection.

In some of their correspondence, Defendants have argued that the General Objections are permissible because they are reiterated in specific objections to certain Requests. *See* Exhibit G at 2 (arguing that Defendants' general objections are not improper because Defendants "provided specific objections throughout their responses to CLF's Requests"). But, this argument highlights the problem with General Objections. If Defendants have made similar specific objections where relevant, the General Objections serve no purpose. Where Defendants have not made specific objections to a Request, they have waived that objection. Defendants cannot rely on the General Objections to support a failure to search for or produce documents responsive to a Request. The General Objections serve no legitimate purpose and only inject uncertainty into CLF's review of Defendants' Responses.

For these reasons, the Court should overrule Defendants' General Objections numbers 1–7, 11-13, 15, and 16.

---

[82] Defendants do include the following objection in their Responses to Requests 13 and 14: "Defendants also object to this Request as vague, ambiguous and misleading because it seeks information about 'Shell' but defines that term to include all Defendants." However, Defendants do not develop or explain this objection.

### E.    Miscellaneous Requests Where Defendants Refuse to Produce Relevant Documents (Request Nos. 4, 6, 7, 22, 31)

This section addresses Requests where the parties have a dispute concerning the scope of production that does not fit squarely with the other categories in this Motion.

#### a.    Request No. 4

**RFP No. 4:** Documents sufficient to show the management structure of the Terminal, including all individuals who hold supervisor and/or managerial roles.

**RESPONSE TO RFP No. 4:** Defendants object to this Request as vague and ambiguous because it fails to define what would be "sufficient to show" the requested information. Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control that identifies individuals with supervisory or managerial roles at the Providence Terminal related to the issues implicated by Plaintiff's CWA and RCRA claims.[83]

**BASIS FOR RELIEF:** Defendants are incorrect in their assertion they must only produce documents describing individuals with management responsibility "related to the issues implicated by Plaintiff's CWA and RCRA claims" and must produce the requested documents without limitation.

Defendants' proposed limitations are improper for the following two reasons. *First*, Defendants chose not to make a relevant specific objection in their Responses to First Set of RFPs; they have thus waived the right to limit their production. *Second*, the limitation Defendants assert is also improper because it is unreasonably vague. CLF would be unable to determine if Defendant's appropriately identified individuals with roles "related to the issues implicated" in CLF's Complaint because it would be unable to determine how Defendants were making such classifications. Defendants do not have the authority to unilaterally determine what issues have

---

[83] Exhibit B at 7-8.

been "implicated" by the Complaint and it is improper for them to attempt to do so. Therefore,

Defendants have failed to sufficiently support Defendants' refusal to produce Request No. 4.[84]

### b.    Request No. 6

**RFP No. 6:** All Documents related to corporate control of any activities at the Terminal, including policies governing Defendants' corporate interactions with each other and any parents or subsidiaries.

**RESPONSE TO RFP No. 6:** Defendants object to this Request as overbroad, vague, ambiguous, unduly burdensome and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief sought by Plaintiff, including policies wholly unrelated to the activities at issue in the case. Defendants also object to this Request to the extent it seeks information beyond the time period relevant to Plaintiff's claims. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control relating to the activities at the Providence Terminal by the parties to this case that have owned and/or operated the Terminal.[85]

**BASIS FOR RELIEF:** Defendants' corporate structure makes the documents requested highly

relevant to liability in this case. Defendants are all presently, or were previously, within a vertically

integrated corporate structure within Royal Dutch Shell. All Defendants are, or were, direct or

indirect subsidiaries of Royal Dutch Shell. Also, as CLF understands it, several of the Defendants

are, or were, subsidiaries of Defendant Shell Oil Company. Every level of this organization could

potentially exercise control over activities at the Terminal, and therefore, every level could

potentially be liable for Defendants' failures at the Terminal. CLF's request is valid under

corporate law. Federal environmental laws are concerned less with the niceties of state corporate

law and far more with "control" over the relevant acts or omissions. The Court recognized this

distinction in its ruling on the motion to dismiss when it explained that the touchstone for liability

under RCRA is "control over the Terminal and its waste disposal processes." See MTD Order at 6.

---

[84] Exhibit F at 3-4.
[85] Exhibit B at 8-9.

Additionally, the considerations are not dissimilar from the analysis in the recent ruling out of the Hague where the court rejected the same arguments by Royal Dutch Shell, stating:

> 'Due to the policy-setting influence RDS has over the companies in the Shell group, it bears the same responsibility for these business relations as for its own activities. The far-reaching control and influence of RDS over the Shell group means that [] RDS' reduction obligation must be an obligation of result for emissions connected to own activities of the Shell group.'

Exhibit N ¶ 4.4.23. Documents concerning control of actions at the Terminal, and/or similarly situated facilities and infrastructure, by related corporate entities are, accordingly, relevant and discoverable.

Defendants' objections and attempts to limit their production are improper. In addition to the improper general objections of overbreadth, vagueness, ambiguity, undue burden, and proportionality, Defendants object on relevance grounds, arguing the Request seeks documents not relevant to the CWA and RCRA claims. Defendants purport to limit their production to documents "relating to the activities at the Providence Terminal by the parties to this case that have owned and/or operated the Terminal." This objection and response are improper for several reasons.

*First*, Defendants' objection is hopelessly vague. Objections must be sufficiently specific to allow Plaintiffs to understand the nature of the objection. *See Brenford Envtl. Sys., L.P. v. Pipeliners of Puerto Rico, Inc.*, 269 F.R.D. 143, 147 (D.P.R. 2010). Defendants do not explain how the requested documents are not relevant to the claims. Defendants also do not explain how the requested policies are "wholly unrelated to the activities at issue," or give CLF any basis to evaluate what activities Defendants deem to be at issue or not at issue. Similarly, Defendants purport to limit their production to only the parties who have "owned and/or operated the Terminal," but Defendants do not identify which parties fall within this category. It is Defendants' burden to demonstrate overbreadth and burden, with specific information, and they have failed to

do so with their objections. *See* Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

*Second*, Defendants have waived any potential right to limit their production because Defendants did not make any relevant specific objection to this Request. Defendants purport to limit their production in two ways: (i) documents related to activities "by the parties," and (ii) only those parties that have "owned and/or operated the Terminal." But Defendants made no specific objection to information about activities by non-parties. Defendants also made no specific objection related to information about activities by Defendants who have not owned or operated the Terminal. Without a relevant, related specific objection, this purported limitation is improper.[86] Defendants undifferentiated relevance objection is not sufficient, as an objection is only preserved when it provides sufficient information to understand the basis of the objection. Generically stating that the information sought is not relevant cannot possibly preserve an objection to producing information from parties to an action. Documents governing these parties' corporate interactions, especially those with the other Defendants, are highly relevant.

Defendants' vague time-period objection also fails. The Default Time Period is appropriate for the reasons described in Section III.C.3 above. The time-period objection is also insufficient because, as explained in Section III.C.2: (i) objections regarding "the time period relevant to Plaintiff's claims" are improperly vague, and (ii) Defendants' "conditional response" waives the time period objection.

Therefore, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 6.

---

[86] Exhibit F at 4–5.

c.        **Request No. 7**

**RFP No. 7:** All contracts and related Documents, including relevant scope(s) of work, related to environmental monitoring, sampling, analysis, and/or assessment at the Terminal from 1985 to present.

**RESPONSE TO RFP No. 7:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff. Documents dating back to 1985 are irrelevant to Plaintiff's claims, which concern only alleged current violations of the CWA and RCRA, or ongoing violations limited to a five-year period. Also irrelevant are any documents related to environmental monitoring, sampling, analysis, and/or assessment at the Providence Terminal that do not involve compliance with the Terminal's RIPDES permit or its management of waste. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control relating to environmental monitoring, sampling, analysis, and/or assessment at the Terminal involving compliance with the Terminal's RIPDES permit or waste management during the period that a Defendant owned or operated the Terminal.[87]

**BASIS FOR RELIEF:** This Request seeks a limited set of documents concerning environmental monitoring and analysis by contractors at the Terminal. These documents are highly relevant to CLF's claims that (i) Defendants failed to disclose relevant information to RIDEM, and (ii) Defendants' failure to prepare the Terminal for climate change will result in discharge of toxic pollutants into the environment. Any environmental analysis or sampling could inform both the likelihood of prohibited releases and the nature of material that could be released. Defendants do not explain how any environmental assessment or sampling at the Terminal would not be relevant to these issues, and Defendants' purported limitation of its production to assessments "involving compliance with the Terminal's RIPDES permit or waste management" does not give CLF any information from which to assess the objection.

---

[87] Exhibit B at 9.

Moreover, Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

Defendants' time-period objection should also be overruled. The nature and limited scope of information sought by RFP No. 7 justifies the request for information from 1985 to the present. Request No. 7 seeks to discover the environmental analyses that have been done at the Providence Terminal since Defendants took ownership. Meanwhile, Defendants' vague time-period objection insufficient because, as explained in Section III.C.2 above: (i) objections referring generally to a "five-year period" or to the period "Defendant owned or operated the Terminal" are improperly vague, and (ii) Defendants' "conditional response" waives the time period objection.

### d.    Request No. 22

**RFP No. 22:** All Documents related to changes in physical infrastructure at the Terminal.

**RESPONSE TO RFP No. 22:** Defendants object to this Request as vague, overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff. The expansively worded Request includes documents regarding physical infrastructure changes that bear no relation to Plaintiff's claims regarding alleged violations of the Terminal's RIPDES permit and of its obligations under RCRA. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control regarding physical infrastructure changes at the Providence Terminal related to compliance with the Terminal's RIPDES permit or its obligations under RCRA.[88]

**BASIS FOR RELIEF:** Defendants attempt to artificially limit discoverable information directly concerning the Providence Terminal's infrastructure by stating CLF seeks information not relevant to its claims. As an initial matter, Defendants' objection that the Request is overbroad and not

---

[88] Exhibit B at 24.

proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

Defendants admit, as they must, that the nature of the physical infrastructure at the Providence Terminal is central to CLF's claims of liability. However, Defendants now claim that not all changes to physical infrastructure are relevant either. Defendants provide no explanation of this assertion. The nature of the physical infrastructure at the Providence Terminal is central to CLF's claims of liability. Instead, they unilaterally assert the right to "limit their production of responsive documents"  to those documents that Defendants deem to be "specifically related to CLF's claims." Exhibit D at 6. The changes that Defendants have made to the physical infrastructure of the Providence Terminal over time, and what consideration—if any—Defendants have given to climate change risks are highly relevant to determine, for example, whether in light of climate change-induced risks, Defendants prepared their SWPPP in accordance with good engineering practices, TAC ¶¶ 288–93, addressed leaks and spills, Id. ¶¶ 307–11, and updated their SWPPP. Id. ¶¶ 313–16. CLF conferred regarding potential options to address any of Defendants' legitimate and sufficiently supported burden concerns; however, the Defendants did not have any specific limiting proposals nor any further explanation regarding the burden this Request supposedly places on them.[89]

Therefore, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce Request No. 22.

### e.    Request No. 31

**RFP No. 31:** All Communications with the State of Rhode Island or the City of Providence regarding the Terminal.

---

[89] Exhibit D at 6.

**RESPONSE TO RFP No. 31:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief sought by Plaintiff.

Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control related to the CWA and RCRA claims in this case.[90]

**BASIS FOR RELIEF:** Defendants' objection that the Request is overbroad and not proportional is improper without any supporting facts, as discussed above in Section III (discussing insufficiency of boilerplate and generic objections that lack specific supporting facts under FRCP and case law and resulting waiver of such objections).

Request No. 31 is relevant to CLF's claims because Defendants' communications with the State of Rhode Island and the City of Providence regarding the Terminal can shed light on Defendants' knowledge of climate change-induced risks, *see* Section III.A.1.a (Basis for Relief for Request No. 12) *supra*, and what measures Defendants have needed to take to comply with the Clean Water Act and RCRA, such as information on what the good engineering practices standard entails. Therefore, Defendants have failed to provide sufficient objections to support Defendants' refusal to produce relevant documents in response to Request No. 31.

## IV.   Conclusion

For the foregoing reasons, CLF asks the Court to:

1. Overrule Defendants' objections to producing documents unrelated to the Terminal and order Defendants to:

    a. Produce Documents responsive to Request Nos. 12, 13, 14, 15, 16, 17, 19, 20, 21, and 24;

---

[90] Exhibit B at 30.

      b.  Produce Documents responsive to Request Nos. 23, 25, 26, and 27 without limiting the production to documents related to the Terminal;

2. Hold that Defendants' conditional responses waived their objections to Request Nos. 8, 9, 10, 11, 30, 32, 36, 37, 39, 41, 53, and 57, and order Defendants to:

      a.  run the parties' agreed search terms by January 30, 2022;

      b.  produce Documents to CLF on a rolling basis, with productions every other week;

3. Hold that Defendants waived any objection to the time period of the following Requests by failing to make a specific objection and order Defendants to produce Documents responsive to those Requests without such objection: Request Nos. 2-4, 8-10, 22, 23, 25, 31, 32, 34-37, 43, 47, 48, 56-58, 62;

4. Overrule Defendants time period objection to the following Requests because the time period objections are insufficiently specific and order Defendants to produce Documents responsive to those Requests without such objection: Nos. 1, 5–7, 11, 12, 28–30, 33, 38–42, 44–46, 49–55, and 59;

5. Overrule Defendants' time period objection to the following Requests because they are followed by improper conditional responses and order Defendants to produce Documents responsive to those Requests without such objection: Nos. 1, 5–7, 11, 12, 28–30, 33, 38–42, 44–46, 49–55, and 59;

6. Hold that the time period for the following Requests is appropriate and overrule any of Defendants' objections to the time period and order Defendants to produce Documents responsive to those Requests without such objection: Nos. 1, 5–7, 11, 12, 28–30, 33, 38–42, 44–46, 49–55, and 59;

7. Overrule Defendants' objection that CLF's Requests are vague because they do not define "climate change," "greenhouse effect," and related terms, and order Defendants to produce Documents responsive to the following Requests without reference to the definitional objections: Request Nos. 10, 11, 23-25.

8. Overrule Defendants' General Objections 1–7, 11–13, 15, and 16 as improper under Local Rule Cv 34(b);

9. Strike from Defendants' Response to Request No. 4 the phrase "related to the issues implicated by Plaintiff's CWA and RCRA claims" and order Defendants to produce Documents responsive to Request No. 4 without such limitation;

10. Strike from Defendants' Response to Request No. 6 the phrase "by the parties to this case that have owned and/or operated the Terminal" and order Defendants to produce Documents responsive to Request No. 6 without such limitation;

11. Strike from Defendants' Response to Request No. 7 the phrase "involving compliance with the Terminal's RIPDES permit or waste management during the period that a Defendant owned or operated the Terminal" and order Defendants to produce Documents responsive to Request No. 7 without such limitation;

12. Strike from Defendants' Response to Request No. 22 the phrase "related to compliance with the Terminal's RIPDES permit or its obligations under RCRA" and order Defendants to produce Documents responsive to Request No. 22 without such limitation;

13. Strike from Defendants' Response to Request No. 31 the phrase "related to the CWA and RCRA claims in this case" and order Defendants to produce Documents responsive to Request No. 31 without such limitation; and

14. Overrule any objection that a Request is overbroad, burdensome, or not proportional where Defendants have not supported the objection with specific facts.

## **HEARING REQUESTED**

CLF requests oral argument on this motion and estimates that it will take approximately 90 mins.


DATED: January 4, 2022                    Respectfully submitted,

                                          CONSERVATION LAW FOUNDATION, INC., by its attorneys

                                          /s/ James Crowley
                                          James Crowley, Esq.
                                          RI Bar # 9405
                                          Conservation Law Foundation
                                          235 Promenade Street
                                          Suite 560, Mailbox 28
                                          Providence, RI 02908
                                          (401) 228-1905
                                          Fax (401) 351-1130
                                          jcrowely@clf.org

                                          Christopher M. Kilian, Esq.*
                                          Conservation Law Foundation
                                          15 East State Street, Suite 4
                                          Montpelier, VT 05602
                                          (802) 223-5992 x4015
                                          ckilian@clf.org

                                          Alexandra St. Pierre, Esq.*
                                          Ian Coghill, Esq.*
                                          Conservation Law Foundation
                                          62 Summer Street
                                          Boston, MA 02110
                                          (617) 850-1732
                                          Fax (617) 350-4030
                                          aestpierre@clf.org
                                          icoghill@clf.org

Allan Kanner, Esq.*
Elizabeth B. Petersen, Esq.*
Allison S. Brouk, Esq.*
Kanner & Whiteley, LLC
701 Camp Street
New Orleans, LA 70130
(504) 524-5777
a.kanner@kanner-law.com
e.petersen@kanner-law.com
a.brouk@kanner-law.com

*Admitted Pro Hac Vice

## FED. R. CIV. P. 37(A)(1) CERTIFICATION

As described above in Section II, CLF has in good faith conferred with Defendants regarding the discovery sought in this motion in an effort to obtain it without court action.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2022, the foregoing Motion to Compel Production of Documents Responsive to Plaintiff's First Set of Requests for Production to All Defendants was filed through the Court's electronic filing system ("ECF"), through which the document is available for viewing and downloading from the ECF system, and a copy of the filing will be sent electronically to all parties registered with the ECF system.

*/s/ James Crowley*_____
James Crowley

**APPENDIX 1 – INDEX OF EXHIBITS FILED WITH THIS MOTION**

| Exhibits | Reference |
|---|---|
| A | CLF First Set of Requests for Production to All Defendants |
| B | Defendants' Response to CLF's First Set of Requests for Production |
| C | Letter from Prather to Peterson, dated August 9, 2021 |
| D | Letter from Coghill to Prather, dated August 18, 2021 |
| E | Email Chain Between CLF and Defendants, dated August 25, 2021 |
| F | Letter from Coghill to Prather, dated September 10, 2021 |
| G | Letter from Prather to Coghill, dated September 23, 2021 |
| H | Email Chain Between CLF and Defendants, dated September 29, 2021 |
| I | Letter from Prather to Coghill, dated September 29, 2021 |
| J | Letter from Coghill to Prather, dated October 1, 2021 |
| K | Email Chain Between CLF and Defendants, dated November 3, 2021 |
| L | Email Chain Between CLF and Defendants, dated November 15, 2021 |
| M | CDP Report 2020 Excerpt |
| N | Rechtbank Den Haag [The District Court of The Hague], 26 May, 2021, Rechtspraak.nl, ECLI:NL:RBDHA:2021:5339 (Neth.), *available at* https://uitspraken.rechtspraak.nl/inziendocument?id=ECLI:NL:RBDHA:2021:5339 |
| O | CDP Report 2018 Excerpt |
| P | CDP Report 2019 Excerpt |
| Q | Email Chain Between CLF and Defendants, dated September 16, 2021 |

**APPENDIX 2 – CHART OF REQUESTS AND RELATED DISPUTES**

**APPENDIX 2 - CHART OF REQUESTS AND RELATED DISPUTES**

| Req # | Request Language | Specific Objections | Response | Shell's Know. No Prod (III.A.1) | Shell's Know. Limit to Terminal (III.A.2) | Misc Disputes (III.B) | Search Terms (III.C.2) | "Climate Change" Definition | Waived Time Obj. (III.D.1) | "Period relevant" obj | 5-Year Obj. | Own/Op Period Obj. | Period Appl. Obj. | Eff. Date Obj. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | All document or record retention policies applicable to the operations and remediation efforts at the Terminal from 1985 through present. | **OBJECTION:** Defendants object to this Request as overbroad and unduly burdensome to the extent it seeks document or record retention policies beyond the period relevant to Plaintiff's claims, which concern alleged current violations of the CWA and RCRA, and/or ongoing violations that are limited to a five-year period. Further, the effort to locate and produce policies from 1985, *i.e* ., a period of over 35 years, is not proportional in relation to the reasonable needs of the case. | **RESPONSE:** Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control that have been in place during the time a Defendant owned, operated, or controlled the Terminal. | | | | | | | Y | Y | | | |
| 2 | Documents sufficient to show Defendants' corporate structure (including all parent companies and subsidiary companies) and relationships between the Defendants, including but not limited to organizational charts. | **OBJECTION:** Defendants object to this Request as overbroad, irrelevant, and not proportional in relation to the reasonable needs of the case because Plaintiff's claims relate to the CWA and RCRA compliance at the Terminal, and Shell Oil Company, Shell Petroleum, Inc., and Shell Trading (US) Company have not owned, operated, or controlled the Terminal. Defendants further object to this Request as vague and ambiguous because it fails to define what would be "sufficient to show" the requested information. | **RESPONSE:** Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control. | | | | | | Y | | | | | |
| 3 | Documents sufficient to show ownership (including but not limited to deeds and title) of the Terminal, including Documents concerning the transfer of ownership of the Terminal at all times during which Defendants or their subsidiaries had any ownership interest. | **OBJECTION:** Defendants object to this Request as vague and ambiguous because it fails to define what would be "sufficient to show" the requested information. Defendants further object to the extent the Request seeks information that is publicly available and therefore equally available to Plaintiff. | **RESPONSE:** Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control. | | | | | | Y | | | | | |
| 4 | Documents sufficient to show the management structure of the Terminal, including all individuals who hold supervisor and/or managerial roles. | **OBJECTION:** Defendants object to this Request as vague and ambiguous because it fails to define what would be "sufficient to show" the requested information. | **RESPONSE:** Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control that identifies individuals with supervisory or managerial roles at the Providence Terminal related to the issues implicated by Plaintiff's CWA and RCRA claims. | | | Y | | | Y | | | | | |
| 5 | Documents sufficient to show the operators of the Terminal. | **OBJECTION:** Defendants object to this Request as vague and ambiguous because it fails to define what would be "sufficient to show" the requested information. Defendants also object this this Request to the extent it seeks information beyond the time period relevant to Plaintiff's claims. | **RESPONSE:** Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control that identify the Terminal's operators. | | | | | | | Y | | | | |
| 6 | All Documents related to corporate control of any activities at the Terminal, including policies governing Defendants' corporate interactions with each other and any parents or subsidiaries. | **OBJECTION:** Defendants object to this Request as overbroad, vague, ambiguous, unduly burdensome and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief sought by Plaintiff, including policies wholly unrelated to the activities at issue in the case. Defendants also object this this Request to the extent it seeks information beyond the time period relevant to Plaintiff's claims. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | **RESPONSE:** Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control relating to the activities at the Providence Terminal by the parties to this case that have owned and/or operated the Terminal. | | | Y | | | | Y | | | | |

APPENDIX 2 - CHART OF REQUESTS AND RELATED DISPUTES

| Req # | Request Language | Specific Objections | Response | Shell's Know. No Prod (III.A.1) | Shell's Know. Limit to Terminal (III.A.2) | Misc Disputes (III.B) | Search Terms (III.C.2) | "Climate Change" Definition | Waived Time Obj. (III.D.1) | "Period relevant" obj | 5-Year Obj. | Own/Op Period Obj. | Period Appl. Obj. | Eff. Date Obj. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7 | All contracts and related Documents, including relevant scope(s) of work, related to environmental monitoring, sampling, analysis, and/or assessment at the Terminal from 1985 to present. | **OBJECTION:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff. Documents dating back to 1985 are irrelevant to Plaintiff's claims, which concern only alleged current violations of the CWA and RCRA, or ongoing violations limited to a five-year period. Also irrelevant are any documents related to environmental monitoring, sampling, analysis, and/or assessment at the Providence Terminal that do not involve compliance with the Terminal's RIPDES permit or its management of waste. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | **RESPONSE:** Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control relating to environmental monitoring, sampling, analysis, and/or assessment at the Terminal involving compliance with the Terminal's RIPDES permit or waste management during the period that a Defendant owned or operated the Terminal. | | | Y | | | | | Y | | | |
| 8 | All Documents related to the Terminal that utilize any of the following terms: climate change; climate effect; global warming; greenhouse gas(es); and greenhouse effect. | **OBJECTION:** Defendants object to this Request as vague, overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including claims regarding alleged long-term risks that have been dismissed from this case. Defendants further object to this Request because it seeks documents protected by the attorney- client privilege and the attorney work-product doctrine. | **RESPONSE:** Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms that remain to be negotiated and agreed upon by the parties. | | | | Y | | Y | | | | | |
| 9 | All Documents related to the Terminal that utilize any of the following terms: climate risk; climate resilience; environmental risk; severe weather; extreme weather; extreme precipitation; flooding; inundation; extreme wind; sea level rise; and hurricane(s). | **OBJECTION:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including claims regarding alleged long-term risks that have been dismissed from this case. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | **RESPONSE:** Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms to be negotiated and agreed upon by the parties. | | | | Y | | Y | | | | | |
| 10 | All Documents related to Defendants addressing or adapting to climate change and/or the greenhouse effect, both at the Terminal and generally, including but not limited to documents concerning: policies and procedures related or applicable to the Terminal's physical infrastructure (including but not limited to buildings, pipelines, and berms); engineering, design and management of facilities and infrastructure; investment and financial management; interactions with industry trade groups; interactions with regulatory and other governmental agencies (including but not limited to the U.S. Department of Energy, the U.S. Environmental Protection Agency or any other Federal agency); interactions with any other governmental entity (including the United States Congress or members thereof); and  corporate policy, management, or decision-making. | **OBJECTION:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff. Further, the phrase "and generally" is vague and overbroad and seeks information unrelated to the Terminal. Defendants also specifically object to subparts (c) and (d) as irrelevant because Defendants' financial information and their interactions with industry trade groups bear no relation to the Terminal's alleged non-compliance with the terms of its RIPDES permit or RCRA, the bases for Plaintiff's claims and requested relief. Defendants further object to this Request as vague and ambiguous because the terms "climate change" and "greenhouse effect" are undefined. Defendants also object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work- product doctrine. | **RESPONSE:** Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms that remain to be negotiated and agreed upon by the parties. | | | ? | Y | Y | Y | | | | | |

APPENDIX 2 - CHART OF REQUESTS AND RELATED DISPUTES

| Req # | Request Language | Specific Objections | Response | Shell's Know. No Prod (III.A.1) | Shell's Know. Limit to Terminal (III.A.2) | Misc Disputes (III.B) | Search Terms (III.C.2) | "Climate Change" Definition | Waived Time Obj. (III.D.1) | "Period relevant" obj | 5-Year Obj. | Own/Op Period Obj. | Period Appl. Obj. | Eff. Date Obj. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 | All Documents concerning risks to the Terminal's physical infrastructure from climate change, flooding, sea level rise, and/or severe weather. | **OBJECTION:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including the time period where a Defendant owned or operated the Terminal. Defendants further object to this Request to the extent it seeks information regarding alleged long-term risks that have been dismissed from the claims in this case. Defendants also object to this Request as vague, overbroad and ambiguous because the term "climate change" is undefined. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | **RESPONSE:** Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control based upon the document search terms that remain to be negotiated and agreed upon by the parties. | | | | Y | Y | | | | Y | | |
| 12 | All Documents related to Shell's participation in the research and creation of the following reports and articles, including communications and shared research with U.S. government agencies and industry trade groups: [list omitted] | **OBJECTION:** Defendants object to this Request as overbroad, unduly burdensome, oppressive, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including claims regarding alleged long-term risks that have been dismissed from this case. The Request seeks documents that are wholly unrelated to Plaintiff's claims, which are limited to alleged current or ongoing violations (for a period of up to five years) of the Terminal's RIPDES permit and its obligations under RCRA. Defendants also object to this Request as vague, ambiguous and misleading because it seeks information about "Shell" but defines that term to include all Defendants. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | | Y | | | | | | | | Y | | |
| 13 | All Documents related to the creation of the following Shell webpages: [list omitted] | **OBJECTION:** Defendants object to this Request as overbroad, unduly burdensome, oppressive, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff. The Request seeks documents that are wholly unrelated to Plaintiff's claims, which are limited to alleged current or ongoing violations of the Terminal's RIPDES permit and its obligations under RCRA. Defendants also object to this Request as vague, ambiguous and misleading because it seeks information about "Shell" but defines that term to include all Defendants. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | | Y | | | | | | | | | | |

APPENDIX 2 - CHART OF REQUESTS AND RELATED DISPUTES

| Req # | Request Language | Specific Objections | Response | Shell's Know. No Prod (III.A.1) | Shell's Know. Limit to Terminal (III.A.2) | Misc Disputes (III.B) | Search Terms (III.C.2) | "Climate Change" Definition | Waived Time Obj. (III.D.1) | "Period relevant" obj | 5-Year Obj. | Own/Op Period Obj. | Period Appl. Obj. | Eff. Date Obj. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 14 | All Documents related to the following speeches and interviews, including communications, research, and supporting documents to aid in the development of statements made by Shell and its agents: [list omitted] | **OBJECTION:** Defendants object to this Request as overbroad, unduly burdensome, oppressive, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff. The Request seeks documents that are wholly unrelated to Plaintiff's claims, which are limited to alleged violations of the Terminal's RIPDES permit and its obligations under RCRA. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | | | Y | | | | | | | | | |
| 15 | All Documents related to Shell's submissions to the Climate Disclosure Project, including original responses and official reports. | **OBJECTION:** Defendants object to this Request as overbroad, unduly burdensome, oppressive, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff. The Request seeks documents that are wholly unrelated to Plaintiff's claims, which are limited to alleged violations of the Terminal's RIPDES permit and its obligations under RCRA. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | | | Y | | | | | | | | | |
| 16 | All Documents related to Defendants' interactions with the United Nations Intergovernmental Panel on Climate Change (IPCC), including but not limited to contributions to Assessment Reports, Special Reports, other reports, and working groups. | **OBJECTION:** Defendants object to this Request as overbroad, unduly burdensome, oppressive, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff. The Request seeks documents that are wholly unrelated to Plaintiff's claims, which are limited to alleged violations of the Terminal's RIPDES permit and its obligations under RCRA. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | | | Y | | | | | | | | | |
| 17 | All Documents related to the work of Shell's Metocean Team and any Metocean Advisors. | **OBJECTION:** Defendants object to this Request as overbroad, unduly burdensome, oppressive, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff. The Request seeks documents that are wholly unrelated to Plaintiff's claims, which pertain only to the design and operation of the Providence Terminal. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work- product doctrine. | **RESPONSE:** Subject to the foregoing general and specific objections, Motiva responds that it does not possess any documents responsive to this Request because it seeks, as best as Defendants can discern, information about non-Motiva entities (i.e. "Shell") that are not in Motiva's custody, possession or control. Subject to the foregoing general and specific objections, the other Defendants respond that after reasonable investigation, the other Defendants have determined that the Metocean team has not done any work involving the Providence Terminal and therefore, there are no such documents. | | | Y | | | | | | | | | |

APPENDIX 2 - CHART OF REQUESTS AND RELATED DISPUTES

| Req # | Request Language | Specific Objections | Response | Shell's Know. No Prod (III.A.1) | Shell's Know. Limit to Terminal (III.A.2) | Misc Disputes (III.B) | Search Terms (III.C.2) | "Climate Change" Definition | Waived Time Obj. (III.D.1) | "Period relevant" obj | 5-Year Obj. | Own/Op Period Obj. | Period Appl. Obj. | Eff. Date Obj. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 19 | A copy of Shell's 1991 video titled "Climate of Concern," and any associated Documents. | **OBJECTION:** Defendants object to this Request as overbroad, unduly burdensome, oppressive, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff. The Request seeks documents that are wholly unrelated to Plaintiff's claims, which are limited to alleged violations of the Terminal's RIPDES permit and its obligations under RCRA. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | **RESPONSE:** Subject to the foregoing general and specific objections, Motiva responds that it does not possess any documents responsive to this Request because it seeks, as best as Defendants can discern, information about non-Motiva entities (i.e. "Shell") that are not in Motiva's custody, possession or control. The other Defendants respond that Plaintiff can find the referenced video from a publicly available source (see https://www.youtube.com/watch?v=0VOWi8oVXmo (last visited August 13, 2021)). The other Defendants further respond that they will not search for the documents sought by this Request related to the referenced video, which have no connection to the Providence Terminal's compliance with its RIPDES permit or RCRA, i.e., the alleged bases for Plaintiff's claims and requested relief. | Y | | | | | | | | | | |
| 20 | All Shell sustainability reports and associated Documents. | **OBJECTION:** Defendants object to this Request as vague, ambiguous, overbroad and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff. The Request seeks documents that are wholly unrelated to Plaintiff's claims, which are limited to alleged violations of the Terminal's RIPDES permit and its obligations under RCRA. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | | Y | | | | | | | | | | |
| 21 | All Documents and research related to Shell's recommendation that the United States not withdraw from the Paris Agreement addressing climate change. | **OBJECTION:** Defendants object to this Request as overbroad, unduly burdensome, oppressive, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff. The Request seeks documents that are wholly unrelated to Plaintiff's claims, which are limited to alleged violations of the Terminal's RIPDES permit and its obligations under RCRA. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | | Y | | | | | | | | | | |

APPENDIX 2 - CHART OF REQUESTS AND RELATED DISPUTES

| Req # | Request Language | Specific Objections | Response | Shell's Know. No Prod (III.A.1) | Shell's Know. Limit to Terminal (III.A.2) | Misc Disputes (III.B) | Search Terms (III.C.2) | "Climate Change" Definition | Waived Time Obj. (III.D.1) | "Period relevant" obj | 5-Year Obj. | Own/Op Period Obj. | Period Appl. Obj. | Eff. Date Obj. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 22 | All Documents related to changes in physical infrastructure at the Terminal. | **OBJECTION:** Defendants object to this Request as vague, overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff. The expansively worded Request includes documents regarding physical infrastructure changes that bear no relation to Plaintiff's claims regarding alleged violations of the Terminal's RIPDES permit and of its obligations under RCRA. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | RESPONSE: Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control regarding physical infrastructure changes at the Providence Terminal related to compliance with the Terminal's RIPDES permit or its obligations under RCRA. | | | Y | | | Y | | | | | |
| 23 | All Documents related to Shell's consideration of climate change in its design and engineering of terminals, refineries, and other infrastructure. | **OBJECTION:** Defendants object to this Request as vague, ambiguous, overbroad, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including information wholly unrelated to the Providence Terminal. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. Defendants also object to this Request as vague and ambiguous because the term "climate change" is undefined. | RESPONSE: Subject to the foregoing general and specific objections, Motiva responds that it does not possess any documents responsive to this Request because it seeks, as best as Defendants can discern, information about non-Motiva entities (i.e. "Shell") that are not in Motiva's custody, possession or control. Subject to the foregoing general and specific objections the other Defendants will produce responsive, non-privileged documents in their possession, custody, and control related to the Providence Terminal using the document search terms that remain to be negotiated and agreed upon by the parties. | | Y | | Y | Y | Y | | | | | |
| 24 | All Documents related to Shell's consideration of climate change in investment and spending decisions. | **OBJECTION:** Defendants object to this entire Request vague, ambiguous, and vexatious because it seeks documents wholly unrelated to the Providence Terminal. Defendants further object to this Request as unduly burdensome and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including information wholly unrelated to the Providence Terminal. Defendants also object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. Defendants also object to this Request as vague and ambiguous because the term "climate change" is undefined. | | Y | | | | Y | | | | | |

**APPENDIX 2 - CHART OF REQUESTS AND RELATED DISPUTES**

| Req # | Request Language | Specific Objections | Response | Shell's Know. No Prod (III.A.1) | Shell's Know. Limit to Terminal (III.A.2) | Misc Disputes (III.B) | Search Terms (III.C.2) | "Climate Change" Definition | Waived Time Obj. (III.D.1) | "Period relevant" obj | 5-Year Obj. | Own/Op Period Obj. | Period Appl. Obj. | Eff. Date Obj. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 25 | All Documents related to the study of climate change and/or weather-related risks created, used, or relied on by Defendants, including but not limited to any Documents relating to: the incidence, frequency, and magnitude of flooding or inundation from extreme weather events, sea level rise, or other events induced by climate change; the environmental and public health impacts of climate change and events that have been or may be caused by climate change in areas surrounding the Terminal; and monitoring, study, evaluation, or preparation for climate change impacts on the Terminal. | **OBJECTION:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including information wholly unrelated to the Providence Terminal. Defendants further object to this Request as vague and ambiguous because the terms "climate change" "climate change impacts" "other events induced by climate change" and "weather-related risks" are undefined. Defendants also object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | **RESPONSE:** Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control relating to the Providence Terminal using the document search terms that remain to be negotiated and agreed upon by the parties. | | Y | | | Y | Y | | | | | |
| 26 | All Documents related to the effects of Hurricane/Superstorm Sandy on Defendants' infrastructure and on Defendants' engineering, design, and management of terminals, refineries, and other infrastructure. | **OBJECTION:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including information wholly unrelated to the Providence Terminal. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine | **RESPONSE:** Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control relating to the Providence Terminal using the document search terms that remain to be negotiated and agreed upon by the parties. | | Y | | Y | | | | | | | |
| 27 | All Documents related to the effects of Hurricane Ike on Defendants' infrastructure and on Defendants' engineering, design, and management of terminals, refineries, and other infrastructure. | **OBJECTION:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including information wholly unrelated to the Providence Terminal. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | **RESPONSE:** Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control relating to the Providence Terminal using the document search terms that remain to be negotiated and agreed upon by the parties. | | Y | | Y | | | | | | | |
| 28 | All Clean Water Act permits, permit applications, and technical filings for the Terminal, including but not limited to: National Pollution Discharge Elimination System ("NPDES") permits and related Documents; Stormwater Pollution and Prevention Plans and related Documents; and Spill Prevention, Control and Countermeasures Plans and related Documents. | **OBJECTION:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including documents outside the period a Defendant owned or operated the Providence Terminal. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | **RESPONSE:** Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control. | | | | | | | | | Y | | |

APPENDIX 2 - CHART OF REQUESTS AND RELATED DISPUTES

| Req # | Request Language | Specific Objections | Response | Shell's Know. No Prod (III.A.1) | Shell's Know. Limit to Terminal (III.A.2) | Misc Disputes (III.B) | Search Terms (III.C.2) | "Climate Change" Definition | Waived Time Obj. (III.D.1) | "Period relevant" obj | 5-Year Obj. | Own/Op Period Obj. | Period Appl. Obj. | Eff. Date Obj. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 | All Documents related to emergency planning and spill response at the Terminal, including but not limited to: Facility Response Plans ("FRP") and related Documents; Emergency Response Action Plans and related Documents; Documents describing related policies and practices; and Documents regarding contacts or communications, including attendance at meetings, with governmental agencies and officials responsible for emergency planning and preparedness related to Rhode Island, Narragansett Bay, Providence, or surrounding areas. | OBJECTION: Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief sought by Plaintiff, including critical infrastructure information that implicates security concerns that is not necessary to resolve the issues in this action, and information beyond the periods of Defendants' ownership or operation of the Terminal. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | RESPONSE: Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms that remain to be negotiated and agreed upon by the parties. | | | | Y | | | | | | Y | |
| 31 | All Communications with the State of Rhode Island or the City of Providence regarding the Terminal. | OBJECTION: Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief sought by Plaintiff. | RESPONSE: Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control related to the CWA and RCRA claims in this case. | | | | Y | | Y | | | | | |
| 32 | All engineering diagrams, drawings, and/or site plans related to the Terminal, including but not limited to past physical infrastructure upgrades, current physical infrastructure projects, and planned physical infrastructure changes. | OBJECTION: Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including critical infrastructure information that implicates security concerns that is not necessary to resolve the issues in this action. | RESPONSE: Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms that remain to be negotiated and agreed upon by the parties. | | | | Y | | Y | | | | | |
| 33 | All Discharge Monitoring Reports for the Terminal, along with all related monitoring data, lab analyses, and Communications. | OBJECTION: Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks documents not relevant to the period applicable to Plaintiff's claims or relief sought, including beyond the effective date of the CWA RIPDES permits alleged to be violated. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | RESPONSE: Subject to the foregoing general and specific objections, Defendants will produce responsive, and non-privileged documents in their possession, custody, and control. | | | | | | | | | | Y | Y |
| 34 | Documents sufficient to show all locations where hazardous waste is generated, transported, and/or stored at the Terminal. | OBJECTION: Defendants object to this Request as vague and ambiguous because it fails to define what would be "sufficient to show" the requested information. | RESPONSE: Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control that identify or describe where hazardous waste is generated, transported, and/or stored at the Terminal. | | | | | | Y | | | | | |
| 35 | All Documents related to analyses of potential pollution from the Terminal. | OBJECTION: Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief sought by Plaintiff. Defendants further object to this Request as vague and ambiguous because the term "pollution" is undefined. Defendants also object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | RESPONSE: Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control. | | | | | | Y | | | | | |

**APPENDIX 2 - CHART OF REQUESTS AND RELATED DISPUTES**

| Req # | Request Language | Specific Objections | Response | Shell's Know. No Prod (III.A.1) | Shell's Know. Limit to Terminal (III.A.2) | Misc Disputes (III.B) | Search Terms (III.C.2) | "Climate Change" Definition | Waived Time Obj. (III.D.1) | "Period relevant" obj | 5-Year Obj. | Own/Op Period Obj. | Period Appl. Obj. | Eff. Date Obj. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 36 | All Documents regarding potential for flooding at the Terminal. | **OBJECTION:** Defendants object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | **RESPONSE:** Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms that remain to be negotiated and agreed upon by the parties. | | | | Y | | Y | | | | | |
| 37 | All analyses of the Terminal's infrastructure, including but not limited to buildings, berms, and pipelines. | **OBJECTION:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief sought by Plaintiff. | **RESPONSE:** Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms that remain to be negotiated and agreed upon by the parties. | | | | Y | | Y | | | | | |
| 38 | All Documents related to Defendants' stormwater monitoring policies and practices at the Terminal. | **OBJECTION:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks documents not relevant to the period applicable to Plaintiff's claims or relief sought, including beyond the effective date of the CWA RIPDES permits alleged to be violated and the periods of Defendants' operation or ownership of the Terminal. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | **RESPONSE:** Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control. | | | | | | | | | Y | Y | Y |
| 39 | All Communications related to stormwater monitoring policies and practices at the Terminal. | **OBJECTION:** Defendants object to this Request as overbroad and unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including beyond the period applicable to the CWA and RCRA claims at issue and/or the effective date of the CWA RIPDES permits alleged to be violated. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | **RESPONSE:** Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms that remain to be negotiated and agreed upon by the parties. | | | | Y | | | | | | Y | Y |
| 40 | All Documents related to stormwater pumping, inspection, and discharge at the Terminal. | **OBJECTION:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including beyond the period applicable to the CWA and RCRA claims at issue and/or the effective date of the CWA RIPDES permits alleged to be violated. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | **RESPONSE:** Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control. | | | | | | | | | | Y | Y |
| 41 | All Documents related to Defendants' policies and practices regarding Terminal employee training, and employee supervision and monitoring. | **OBJECTION:** Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief sought, including beyond the effective date of the CWA RIPDES permits alleged to be violated and the periods of Defendants' operation or ownership of the Terminal. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | **RESPONSE:** Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms that remain to be negotiated and agreed upon by the parties. | | | | Y | | | | | Y | | Y |

APPENDIX 2 - CHART OF REQUESTS AND RELATED DISPUTES

| Req # | Request Language | Specific Objections | Response | Shell's Know. No Prod (III.A.1) | Shell's Know. Limit to Terminal (III.A.2) | Misc Disputes (III.B) | Search Terms (III.C.2) | "Climate Change" Definition | Waived Time Obj. (III.D.1) | "Period relevant" obj | 5-Year Obj. | Own/Op Period Obj. | Period Appl. Obj. | Eff. Date Obj. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 42 | All Documents related to policies, procedures, and training for the corporate official responsible for the certification under 40 C.F.R. § 122.22. | OBJECTION: Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including information outside of Defendants' periods of ownership or operation of the Terminal. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | RESPONSE: Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control. | | | | | | | | | Y | | |
| 43 | All Documents related to compliance with the certification requirements under 40 C.F.R. § 122.22. | OBJECTION: Defendants object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | RESPONSE: Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control. | | | | | | Y | | | | | |
| 44 | All Documents regarding Terminal employee training related to discharge monitoring, including but not limited to manuals, handbooks, or presentations. | OBJECTION: Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including information outside of Defendants' periods of ownership or operation of the Terminal. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | RESPONSE: Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control. | | | | | | | | | Y | | |
| 45 | All Documents regarding Terminal employee training related to emergency preparedness, including but not limited to manuals, handbooks, or presentations. | OBJECTION: Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief sought by Plaintiff, including information beyond the period applicable to Plaintiff's claims, and critical infrastructure information that implicates security concerns that is not necessary to resolve the issues in this action. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | RESPONSE: Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control. | | | | | | | | | | Y | |
| 46 | All Documents regarding Terminal employee training related to water testing following weather events, floods, or inundations, including but not limited to manuals, handbooks, or presentations. | OBJECTION: Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief sought by Plaintiff, including information beyond the period applicable to Plaintiff's claims. Defendants also object to the extent this Request seeks information from non-parties. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | RESPONSE: Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control. | | | | | | | | | | Y | |

APPENDIX 2 - CHART OF REQUESTS AND RELATED DISPUTES

| Req # | Request Language | Specific Objections | Response | Shell's Know. No Prod (III.A.1) | Shell's Know. Limit to Terminal (III.A.2) | Misc Disputes (III.B) | Search Terms (III.C.2) | "Climate Change" Definition | Waived Time Obj. (III.D.1) | "Period relevant" obj | 5-Year Obj. | Own/Op Period Obj. | Period Appl. Obj. | Eff. Date Obj. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 47 | All Documents related to Terminal inspections performed by, or on behalf of, Defendants on the days leading up to, during, and after storms, floods, inundation, and/or weather events. | OBJECTION: Defendants object to this Request as vague, overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief sought by Plaintiff. Defendants also object to the extent this Request seeks information from non- parties. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | RESPONSE: Subject to the foregoing general and specific objections, Defendants will produce all responsive, non-privileged documents in their possession, custody, and control. | | | | | | Y | | | | | |
| 48 | All Documents related to any maintenance or repairs performed on the Terminal infrastructure following a storm event, inundation, or flooding, including but not limited to maintenance logs and Documents identifying when such maintenance occurred and by whom it was undertaken. | OBJECTION: Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief sought by Plaintiff. Defendants also object to the extent this Request seeks information from non-parties. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | RESPONSE: Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control. | | | | | | Y | | | | | |
| 49 | All Documents related to the containment of leaks and spills at the Terminal, including related practices, policies, and procedures. | OBJECTION: Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the CWA and RCRA claims in this matter and/or the relief sought by Plaintiff, including beyond the periods of Defendants' operation or control of the Terminal. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | RESPONSE: Subject to the foregoing general and specific objections, Defendants will produce all responsive, non-privileged documents in their possession, custody, and control. | | | | | | | | | Y | | |
| 50 | All Documents related to implementation of the best management practices referenced in any stormwater pollution prevention plans for the Terminal. | OBJECTION: Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including beyond the effective date of the CWA RIPDES permit(s) alleged to be violated. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | RESPONSE: Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control. | | | | | | | | | | | Y |
| 51 | Documents sufficient to show Defendants' practices, policies, and procedures relating to maintenance of oil/water separators and stormwater ponds at the Terminal. | OBJECTION: Defendants object to this Request as vague and ambiguous because it fails to define what would be "sufficient to show" the requested information. Defendants further object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including beyond the effective date of the CWA RIPDES permit(s) alleged to be violated, and the periods of Defendants' ownership or operation of the Terminal. | RESPONSE: Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control that identify or describe the practices, policies, and procedures at the Providence Terminal relating to the maintenance of oil/water separators and stormwater ponds. | | | | | | | | | Y | | Y |

**APPENDIX 2 - CHART OF REQUESTS AND RELATED DISPUTES**

| Req # | Request Language | Specific Objections | Response | Shell's Know. No Prod (III.A.1) | Shell's Know. Limit to Terminal (III.A.2) | Misc Disputes (III.B) | Search Terms (III.C.2) | "Climate Change" Definition | Waived Time Obj. (III.D.1) | "Period relevant" obj | 5-Year Obj. | Own/Op Period Obj. | Period Appl. Obj. | Eff. Date Obj. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 52 | All Documents related to the operation, status, and maintenance of wastewater collection and treatment systems, including component parts, both historical and current. | **OBJECTION**: Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including beyond the period applicable to Plaintiff's CWA and RCRA claims. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | **RESPONSE**: Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control. | | | | | | | | | | Y | |
| 53 | All Documents related to facility management at the Terminal, including but not limited to pump operation, facility operation, and timed flows. | **OBJECTION**: Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including beyond the time period applicable to Plaintiff's CWA and RCRA claims, Defendants' periods of ownership or operation of the Terminal, and critical infrastructure information that implicates security concerns that is not necessary to resolve the issues in this action. | **RESPONSE**: Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms that remain to be negotiated and agreed upon by the parties. | | | | Y | | | | | Y | Y | |
| 56 | All Documents regarding the presence of chemicals in soil and groundwater at the Terminal. | **OBJECTION**: Defendants object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | **RESPONSE**: Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control. | | | | | | Y | | | | | |
| 57 | All Documents regarding contamination at the Terminal. | **OBJECTION**: Defendants object to this Request as vague and ambiguous because the term "contamination" undefined. Defendants further object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | **RESPONSE**: Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control using the document search terms that remain to be negotiated and agreed upon by the parties. | | | | Y | | Y | | | | | |
| 58 | All Documents regarding soil and groundwater remediation at the Terminal. | **OBJECTION**: Defendants object to this Request because it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine. | **RESPONSE**: Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control. | | | | | | Y | | | | | |
| 59 | All Documents provided to or received from, and all Communications with, the National Response Center of the National Response System regarding any oil or chemical discharges into the environment from or at the Terminal. | **OBJECTION**: Defendants object to this Request as overbroad, unduly burdensome, and not proportional in relation to the reasonable needs of the case because it seeks information that implicates security concerns that is not necessary to resolve the issues in this action, and information beyond the period applicable to Plaintiff's CWA and RCRA claims. | **RESPONSE**: Subject to the foregoing general and specific objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control. | | | | | | | | | | Y | |
| 62 | All Documents Defendants relied on in preparing, or referred to in its answers to, Plaintiff's Interrogatories. | | **RESPONSE**: Subject to the foregoing general objections, Defendants will produce responsive, non-privileged documents in their possession, custody, and control. | | | | | | Y | | | | | |