UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC. : : : | |
| v. : | C.A. No. 17-00396-WES |
| : | |
| SHELL OIL PRODUCTS US, et al. : | |

## MEMORANDUM AND ORDER

Pending before me for determination (28 U.S.C. § 636(b)(1)(A)) are Plaintiff's Motion to Compel Production of Documents Responsive to Plaintiff's First Set of Requests for Production to All Defendants, and Defendants' Cross-Motion for Protective Order Governing the Production and Exchange of Discovery. (ECF Nos. 72 and 78). A conference was held on June 3, 2022 and the parties thereafter filed Supplemental Memoranda. (ECF Nos. 90 and 92).

These Motions raise the issue of the appropriate scope and breadth of discovery in this citizen-suit enforcement action brought under the Clean Water Act ("CWA") and the Resource Conservation and Recovery Act ("RCRA"). Plaintiff's claims relate to Defendants' operations at the Providence Terminal, a bulk storage and fuel terminal. At the risk of over simplifying Plaintiff's Third Amended Complaint ("TAC"), the environmental claims fall into two basic buckets – (1) current operational/permit violations at the Terminal; and (2) violations based on failure to adapt the Terminal to prepare for and protect against the impacts of climate change. These impacts are summarized at paragraphs 126 through 246 of the TAC. The instant Discovery Motions implicate the relevance and proportionality parameters of Rule 26(b) and the good cause showing necessary for relief under Rule 26 (c).

Plaintiff's First Request for Production includes sixty-two Document Requests and it asserts that the substantial majority (forty-five) are in dispute. (ECF No. 72-2). Plaintiff posits that the "primary dispute between the Parties centers on the relevance of documents that do not expressly refer to Defendants' Terminal, including Shell corporate policies that set standards for the resilience of its infrastructure to severe weather risks and climate change, as well as analyses of pollution discharges from other Shell facilities during major storms, such as Superstorm Sandy." (ECF No. 72 at p. 4). It asserts, in part, that "documents concerning other Shell facilities, including generally applicable policies, and Shell's knowledge of climate change is relevant and discoverable." Id. at p. 6.

Defendants argue that Plaintiff's "worldwide" discovery requests are overbroad and disproportional to the needs of this case. They counter that Plaintiff misrepresents their position and that, during the meet and confer process, they have "repeatedly stated that they will produce documents related to the weather-risks alleged in the complaint and how those risks are assessed and addressed at the Terminal – including corporate level policies that apply to the Terminal and are related to the risks at issue – regardless of whether those documents 'expressly refer' to the Terminal." (ECF No. 79 at pp. 7-8). Defendants contend that Plaintiff's theory that there is centralized corporate management of these risks is incorrect, and that each asset, such as the Terminal, "determines how to manage weather-related risks based on asset-specific considerations." (ECF No. 92 at p. 3).

Defendants support their position, in part, with the Declaration of James Kent Yeates (East Coast Lead Facility Engineer) (ECF No. 79-9), and argue that a deposition would be a far more efficient discovery mechanism on these issues and propose to "provide a witness to answer [Plaintiff's] questions about how the Providence Terminal manages the precipitation and flooding

risks identified in [Plaintiff's] complaint, and who makes those decisions for the Terminal (in addition to the previously proposed topic of applicability of corporate policies to the Terminal)." (ECF No. 92 at p. 4). Plaintiff contends that it has "continuously asked for information that will allow it to better understand the Shell corporate structure throughout the Parties' discovery negotiations" and asserts that the Yeates Declaration "creates more questions than it answers." (ECF No. 90 at pp. 2-3).

This is a complex case, and the parties have presented polarized positions on the proper scope of discovery. Despite lengthy briefing, the Court is seemingly left to navigate this dispute in the fog. The one thing that is clear, however, is that Plaintiff seeks far-reaching discovery which, if allowed, would likely be very time consuming and expensive. Before potentially going down that path, the Court believes that a more measured approach is warranted. First, Defendants shall continue their rolling production of those documents they have agreed to produce, subject to their objections, including the "corporate level policies" described above and any documents referenced in, or supportive of, statements made in the Yeates Declaration. Second, Defendants shall produce Mr. Yeates for deposition regarding the contents of his Declaration and Mr. Yeates or an alternative designee for deposition regarding "how the Providence Terminal manages the precipitation and flooding risks identified in [Plaintiff's] complaint, and who makes those decisions for the Terminal ([including the] applicability of corporate policies to the Terminal)." (ECF No. 92 at p. 4). The parties shall confer in good faith as to a reasonable schedule for production of such documents and to conduct such deposition(s), and thereafter shall utilize the results of such discovery to continue to confer in good faith regarding the scope of document production. If there are remaining areas of dispute after exhausting that process, the parties shall request a discovery dispute conference with the Court before refiling the instant discovery motions.

-4-

**Conclusion**

For the foregoing reasons and with the directives set forth herein, Plaintiff's Motion to Compel (ECF No. 72) and Defendants' Cross-Motion for Protective Order (ECF No. 78) are both DENIED without prejudice.

 /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
July 21, 2022