**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., Plaintiff, <br><br> v. <br><br> SHELL OIL PRODUCTS US, SHELL OIL COMPANY, SHELL PETROLEUM, INC., SHELL TRADING (US) COMPANY, MOTIVA ENTERPRISES LLC, TRITON TERMINALING LLC, and EQUILON ENTERPRISES LLC, <br> *Defendants*. | C.A. No. 1:17-cv-00396-WES-LDA |

**PLAINTIFF CONSERVATION LAW FOUNDATION'S**
**[REDACTED] MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO COMPEL INTERROGATORY RESPONSES**

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. iii

LIST OF EXHIBITS ......................................................................................................... v

I.    INTRODUCTION ..................................................................................................... 1

II.   BACKGROUND AND SUMMARY OF THE ISSUES.......................................... 1

III.  APPLICABLE LEGAL STANDARDS ................................................................... 5

    A.  Motion to Compel ............................................................................................... 5

    B.  Incomplete or evasive RESPONSES TO interrogatoriES ................................. 6

IV.   CLF'S INTERROGATORIES SEEK INFORMATION RELEVANT TO
     DEFENDANTS' LIABILITY AS OPERATORS UNDER *BESTFOODS* ............................. 6

    A.  Interrogatory 20 ................................................................................................. 7

        1.  Interrogatory ................................................................................................. 7

        2.  Interrogatory 20 Seeks Information Relevant to Operator Liability............................ 8

        3.  Reasons Why Defendants' Answers are Inadequate ................................... 10

            i.    Parent Defendants responded that they have "no information" responsive to this
              Interrogatory when the record shows that they do................................... 10

            ii.   Defendants failed to identify each person with responsibility for environmental
              compliance at the Terminal..................................................................... 12

            iii.  Defendants did not identify supervisors who work for Parent Defendants. ........... 13

            iv.   Defendants' answers include improper qualifying language regarding employers
              and are inconsistent with past representations........................................ 13

            v.    Failure to Answer 20(f) and (g) regarding limitations on spending authority and
              related policies. .................................................................................. 15

    B.  Interrogatory 23 ................................................................................................. 15

        1.  Interrogatory ................................................................................................. 15

        2.  Interrogatory 23 Seeks Information Relevant to the Adequacy of Defendants' Search
            for Responsive Records. ............................................................................ 15

3.  Reasons Why Defendants' Answers are Inadequate ................................................. 16

    i.  Defendants do not state whether they searched for documents in Parent Defendants' possession, custody, or control; only that their search "would have encompassed" such documents. .............................................................................. 16

C.  Interrogatory 25 .................................................................................................................. 17

   1.  Interrogatory .............................................................................................................. 17

   2.  Interrogatory 25 Seeks Information Relevant to Operator Liability........................... 17

   3.  Reasons Why Defendants' Answers are Inadequate ................................................. 19

    i.  Defendants did not identify the reporting structure for any person listed in the Interrogatory. ........................................................................................................... 19

    ii.  Defendants' claim that various people have "no involvement" with the Terminal is belied by the number and substance of the records Defendants produced containing their names. ............................................................................................................. 19

D.  Interrogatory 26 .................................................................................................................. 21

   1.  Interrogatory .............................................................................................................. 21

   2.  Interrogatory 26 Seeks Information Relevant to Operator Liability........................... 21

   3.  Reasons Why Defendants' Answers are Inadequate ................................................. 22

    i.  With one exception, Defendants did not identify documents that define the relationship between or among Defendants. ............................................................ 22

E.  Interrogatory 27 .................................................................................................................. 23

   1.  Interrogatory .............................................................................................................. 23

   2.  Interrogatory 27 Seeks Information Relevant to Operator Liability........................... 23

   3.  Reasons why Reasons Why Defendants' Answer is Inadequate ................................ 25

    i.  Defendants' answer is incomplete or evasive because it does not identify any documents that describe the relationship between and amongst Defendants and Shell Pipeline Company LP. ..................................................................................... 25

V.  CONCLUSION.................................................................................................................... 26

## TABLE OF AUTHORITIES

*Cases*

*Atlanta Gas Light Co. v. UGI Utilities, Inc.*,
    463 F.3d 1201 (11th Cir. 2006) ............................................................... 8

*Autoridad de Carreteras y Transportacion v. Transcore Atl.*,
    319 F.R.D. 422 (D.P.R. 2016) ................................................................. 6

*Basic Mgmt. Inc. v. United States*,
    569 F. Supp. 2d 1106 (D. Nev. 2008) ..................................................... 8

*Big City Dynasty v. FP Holdings, L.P.*,
    336 F.R.D. 507 (D. Nev. 2020) ................................................... 5, 18, 22

*Briddell v. Saint Gobain Abrasives Inc.*,
    233 F.R.D. 57 (D. Mass. 2005) .............................................................. 17

*Conservation L. Found. Inc. v. Shell Oil Co.*,
    No. CV 17-00396-WES, 2020 WL 5775874 (D.R.I. Sept. 28, 2020) ....................................... 3

*Conservation L. Found., Inc. v. Shell Oil Prod. US*,
    No. CV 17-00396-WES, 2022 WL 2353065 (D.R.I. June 30, 2022) ............................. passim

*Fujifilm N. Am. Corp. v. M&R Printing Equip., Inc.*,
    No. 20-CV-492-LM, 2023 WL 3727578  (D.N.H. May 30, 2023) ........................................ 6

*Keefe v. LendUS, LLC*,
    No. 20-CV-195-JD, 2021 WL 3550036 (D.N.H. Aug. 11, 2021) ........................................... 5

*McNearney v. Washington Dep't of Corr.*,
    No. C11-5930 RBL/KLS, 2012 WL 3155099 (W.D. Wash. Aug. 2, 2012) ......................... 15

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.*,
    No. 14-CV-1296-JPS, 2017 WL 3130414 (E.D. Wis. July 24, 2017) ................................... 14

*Roy v. FedEx Ground Package Sys., Inc.*, No. 3:17-CV-30116-KAR,
    2023 WL 3587305, --- F. Supp. 3d --- (D. Mass. May 22, 2023) ............................................. 5

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ...................................................................... passim

*United States v. Kayser-Roth Corp.*,
    272 F.3d 89 (1st Cir. 2001) .......................................................... 6, 8, 22

iii

*United States v. Newmont USA Ltd.*,
  No. CV-05-020-JLQ, 2008 WL 4621566 (E.D. Wash. Oct. 17, 2008) .................................... 7

*United States v. Sterling Centrecorp, Ind.*,
  960 F. Supp. 2d 1025 (E.D. Cal. 2013)........................................................................... 6–7, 8


**Other Authorities**

Fed. R. Civ. P. 26 Advisory Committee's Notes (1983) ................................................... 5

**Rules**

Fed. R. Civ. P. 26(b)(1).................................................................................................... 5

Fed. R. Civ. P. 33(b)(1).................................................................................................... 14

Fed. R. Civ. P. 33(b)(3).................................................................................................... 6

Fed. R. Civ. P. 33(b)(5).................................................................................................... 14

Fed. R. Civ. P. 37(a) ........................................................................................................ 1

Fed. R. Civ. P. 37(a)(4).................................................................................................... 6

Fed. R. Civ. P. 37(c)(1).................................................................................................... 26

**Treatises**

8 Charles Alan Wright & Arthur R. Miller,
  Fed. Prac. & Proc. Civ. § 2008 ................................................................................... 6

## LIST OF EXHIBITS

Exhibit A.          Investment Management Guide (SOPUS_PVD00124924)*

Exhibit B.          Velasco Email (SOPUS_PVD00036781)*

Exhibit C.          Transcript of Deposition of James Kent Yeates from Conservation Law Foundation, Inc. v. Shell Oil Co.

Exhibit D.          Defendants' Supplemental Responses to Plaintiff's Second Set of Interrogatories

Exhibit E.          Transcript of Deposition of Brian Evans from Conservation Law Foundation, Inc. v. Shell Oil Co.

Exhibit F.          ████████████████████████ (SOPUS_PVD 00080882)*

Exhibit G.          Brian Evans email from May 24, 2019 (SOPUS_PVD00317316)

Exhibit H.          Shell Apr. 2017 Emails (SOPUS_PVD00392402)*

Exhibit I.          TRI Emails (SOPUS_PVD00092810)

Exhibit J.          Defendants' Responses to Plaintiff's Second Set of Interrogatories

Exhibit K.          Declaration of Roy Prather III (Oct. 3, 2023)

Exhibit L.          Defendants' R. 26(a)(1) Initial Disclosures (Nov. 9, 2020)

Exhibit M.          Prather Email (Feb. 7, 2023)

Exhibit N.          Transcript of Deposition of James Ledbetter from Conservation Law Foundation, Inc. v. Shell Oil Co.

Exhibit O.          ███████████████████████ (SOPUS_PVD00237310)*

Exhibit P.          █████████████████████████████████ (SOPUS_PVD00046759)*

Exhibit Q.          Prather Email (Apr. 4, 2023)

Exhibit R.          Prather Email (Sept. 28, 2022)

* Denotes documents either redacted or filed under seal in compliance with D.R.I. LR Gen 102(b) and this Court's Protective Order, ECF 66-1.

## I.    INTRODUCTION

Pursuant to Fed. R. Civ. P. 37(a), Plaintiff Conservation Law Foundation, Inc. ("CLF") seeks to compel answers to interrogatories on its "operator liability" claims against Defendants under the Clean Water Act and the Resource Conservation and Recovery Act ("RCRA"). As this Court has held, whether Defendants are liable as "operators" is a fact-specific inquiry under binding Supreme Court and First Circuit precedent. Even though CLF's operator claims are live, based on two decisions of this Court, Defendants have thwarted CLF's attempt to discover facts necessary to prove its claims by making improper merits-based discovery objections and by providing incomplete and evasive interrogatory answers. CLF therefore asks this Court to overrule Defendants' objections and order Defendants to provide complete and unevasive answers that comply with Rule 33.

## II.    BACKGROUND AND SUMMARY OF THE ISSUES

CLF filed this action to halt Defendants' longstanding and ongoing violations of the Clean Water Act and RCRA at their Providence, Rhode Island bulk fuel terminal (the "Terminal"). CLF alleges that Defendants have failed, among other things, to evaluate and address the current and reasonably foreseeable risks to the Terminal posed by severe weather, including risks associated with climate change, which threaten to flood the Terminal and release millions of gallons of petroleum and other pollutants into the nearby Providence River and Narragansett Bay. These risks are real and immediate as evidenced by, among other things, the December 2022 flooding at the Terminal documented in the pictures below.



SOPUS_PVD00405024



SOPUS_PVD00405022

While three Defendants, Triton Terminaling LLC ("Triton"), Equilon Enterprises LLC ("Equilon"), and Motiva Enterprises LLC ("Motiva") (which Defendants collectively label the "Owner/Operator Defendants"), admit they are potentially liable for these violations,[1] Defendants argue that Shell USA, Inc. ("Shell USA"), Shell Petroleum, Inc. ("Shell Petroleum"), and Shell Trading (US) Company ("STUSCO") (collectively, the "Parent Defendants") are not. Defendants first filed an extensive Motion to Dismiss, which the Court largely rejected, leaving CLF's claims largely intact. *Conservation L. Found., Inc. v. Shell Oil Prods. US*, No. CV 17-00396-WES, 2020 WL 5775874 (D.R.I. Sept. 28, 2020), ECF 55 ("*CLF I*"). Defendants then took a "second swipe" at the complaint in a Motion for Judgment on the Pleadings focused on CLF's operator liability claims against the Parent Defendants.[2] *Conservation L. Found., Inc. v. Shell Oil Prods. US*, No. CV 17-00396-WES, 2022 WL 2353065, *2 (D.R.I. June 30, 2022), ECF 89 ("*CLF II*"). Again, this Court rejected Defendants' arguments, holding that CLF "has adequately alleged facts to support an inference that the [Parent Defendants] exercised sufficient control to state a plausible claim for direct liability under the standard enunciated in [*United States v. Bestfoods*, 524 U.S. 51 (1998)]." *Id.* at *2.

With this Court's decisions in hand, including its acknowledgment that operator liability is a "fact-specific" inquiry, *id.*, CLF propounded several interrogatories calculated to discover facts about the Parent Defendants' participation in the management and control of the Terminal. Defendants responded with incomplete and evasive answers, framed by improper objections, that

---

[1] Defendants Equilon and Triton admit that Equilon operates the Providence Terminal and Triton holds the RIPDES Permit. Ans. to Third Amend. Compl. ("Ans."), ECF 57 ¶ 63. Equilon also admits that it is "an" operator of the Terminal. *Id.* ¶ 48. Triton admits it is the "current owner and operator of the Terminal." *Id.* Equilon and Triton further admit "current responsibility for the operation and maintenance of the Terminal, and for Permit compliance." *Id.* ¶ 63.

[2] CLF uses the phrase "Parent Defendants" because Defendants' term "Non-Owner/Operator" assumes a question of fact has been resolved, *i.e.*, that the Parent Defendants are not "operators."

appear designed to prevent CLF from discovering the very information necessary to prove operator liability. For example:

- Parent Defendants make the demonstrably false claim that they have "no information" about who has environmental responsibilities at the Terminal.

- Defendants refuse to describe the reporting structure for specific individuals including a now-retired "Environmental Advisor" who opposing counsel identified as having "lead responsibility" for environmental compliance at the Providence Terminal.

- Defendants refuse to identify documents defining the relationship between Parent Defendants and other Defendants because they claim the former do not "operate" the Terminal (the very merits issue in dispute).

- Defendants refuse to identify documents regarding the relationship between Defendants and Shell Pipeline Company LP from whose files Defendants produced most of the documents in this case and whose employees Defendants state have environmental responsibilities at the Terminal.

Answers to these questions are particularly important in this case. The Terminal's management structure does not fall neatly within a single corporate entity like Equilon or Triton. Instead, the Terminal is managed through a Shell group[3] "line of business" known as "Shell Downstream," and a sub-business within Shell Downstream called "Trading and Supply." Trading and Supply is not a corporation. Nevertheless, CLF understands it is involved in developing and enforcing policies, it is headed by an Executive Vice President (whose actual employer remains unknown to CLF), and its "employees" are in reality employed by various corporations within Shell group. The interrogatories at issue in this Motion seek facts regarding Defendants' participation and control over the Terminal, including through "Trading and Supply."

Ultimately, Defendants' answers and objections to CLF's interrogatories seek to accomplish what Defendants failed to achieve in their Motion to Dismiss and Motion for Judgment on the Pleadings. They seek to shield the Parent Defendants by withholding exactly the kinds of

---

[3] CLF uses the term "Shell Group" to mean Shell plc and its subsidiaries.

information necessary to prove CLF's "fact-specific" operator liability claims. *CLF II*, 2022 WL 2353065 at *2. Their objections largely take the form of "merits-based challenges presented in the guise of a relevance objection." *Big City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507, 511 (D. Nev. 2020). To the extent Defendants did provide answers, those answers are incomplete, evasive, or both, and represent an "unnecessary use of defensive weapons or evasive responses" that violate the spirit of the rules. Fed. R. Civ. P. 26 advisory committee's notes to 1983 amendment. Again, this Court should overrule Defendants' objections and order them to provide complete answers to CLF's operator liability interrogatories.

### III.    APPLICABLE LEGAL STANDARDS

#### A.    Motion to Compel

CLF is entitled to any information relevant to its claims or Defendants' defenses and proportional to the case's needs. Fed. R. Civ. P. 26(b)(1). A party moving to compel discovery "bears the burden of making an initial showing that the requested [information is] relevant, and if that showing is made, the opposing party bears the burden of showing that the requested [information] is improper." *Keefe v. LendUS, LLC*, No. 20-CV-195-JD, 2021 WL 3550036, at *1 (D.N.H. Aug. 11, 2021) (citations omitted). "At the discovery stage, relevance should be broadly construed, and information should be deemed discoverable if there is any possibility it might be relevant to the subject matter of the action." *Roy v. FedEx Ground Package Sys., Inc.*, —— F. Supp. 3d ——, No. 3:17-CV-30116-KAR, 2023 WL 3587305, at *1 (D. Mass. May 22, 2023) (internal citations and quotation marks omitted). Discovery rules "must be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Id.* (emphasis added). Once a movant has satisfied its initial burden, the opposing party "bears the burden of establishing lack of relevancy or undue burden." *Autoridad de Carreteras y Transportacion v. Transcore Atl.*, 319 F.R.D. 422, 427 (D.P.R. 2016);

*see also* 8 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2008 & nn. 31, 31.50 (3d ed. 2023) (collecting cases).

### B.    Incomplete or evasive RESPONSES TO interrogatoriES

"Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). If the party seeking discovery believes that the opposing party has failed to answer an interrogatory, that party may move for a court order compelling production under Rule 37(a)(3)(B)(iii). An evasive or incomplete disclosure, answer, or response must be treated as a failure to answer or respond. Fed. R. Civ. P. 37(a)(4). "The burden is on the party moving to compel discovery to show that the opposing party's answer is incomplete or evasive." *Fujifilm N. Am. Corp. v. M&R Printing Equip., Inc.*, 344 F.R.D. 68, 71 (D.N.H. 2023).

### IV.    CLF'S INTERROGATORIES SEEK INFORMATION RELEVANT TO DEFENDANTS' LIABILITY AS OPERATORS UNDER *BESTFOODS*

CLF has live operator liability claims against all Defendants in this case. *CLF II*, 2022 WL 2353065, at *2. "[A] corporate parent that actively participated in, and exercised control over, the operations of the facility itself may be held directly liable in its own right as an operator of the facility." *Bestfoods*, 524 U.S. at 55. Scenarios sufficient to establish direct liability include "when the parent operates the facility . . . alongside the subsidiary in some sort of joint venture" or when "an agent of the parent with no hat to wear but the parent's hat [] manage[s] or direct[s] activities at the facility." *United States v. Kayser-Roth Corp.*, 272 F.3d 89, 99–100 (1st Cir. 2001) (quoting *Bestfoods*, 524 U.S. at 71).

The degree of control a parent company exercises over a subsidiary is relevant to the *Bestfoods* analysis. *See, e.g.*, *Kayser-Roth*, 272 F.3d at 102 (parent company exercised "pervasive control" sufficient to find operator liability); *United States v. Sterling Centrecorp, Inc.*, 960 F. Supp. 2d 1025, 1050 (E.D. Cal. 2013) (parent company's "pervasive" management of the facility

and control over the subsidiary established a joint venture of the type recognized in *Bestfoods*).

Courts consider the "totality of circumstances" when determining operator liability claims and

therefore the range of relevant facts is broad. *Sterling Centrecorp*, 960 F. Supp. 2d at 1048–49.

"*Bestfoods* does not limit a court's scrutiny of parent activity to the parent's activity with respect

to environmental decisions." *Id.* at 1048. Evidence that a parent company "controlled many other

aspects" of a subsidiary "is relevant to [the] analysis of [a parent's] operator liability under

*Bestfoods*." *Id.* Such facts include "the closeness of the relationship" between the parent and

subsidiary, the parent's "general financial oversight" over the subsidiary, and the parent's

"monitoring of [the subsidiary's] performance." *Id.* at 1049 (citing *United States v. Newmont USA

Ltd.*, No. CV-05-020-JLQ, 2008 WL 4621566, at *50 (E.D. Wash. Oct. 17, 2008). These facts are

relevant to whether the parent's involvement in the management of a subsidiary departs from the

"accepted norms of corporate oversight." *Id.* (internal quotations omitted).

CLF's interrogatories are well within the bounds of what courts have found relevant to the

operator liability analysis.

### A. Interrogatory 20

#### 1. Interrogatory

Identify each person since January 1, 2008 who has had any responsibility for ensuring

compliance with Shell's RIPDES Permit, the Clean Water Act, or RCRA at the Terminal. For each

person identify or describe: (a) their employer, (b) dates of employment, (c) job title, (d) job duties,

(e) their supervisor(s), (f) any limitations on their authority to authorize expenditures of company

funds without additional management approval; and (g) any policies, procedures, manuals,

guidance, forms, or practices that document the limitations in Your answer to (f), above.

**2. Interrogatory 20 Seeks Information Relevant to Operator Liability.**

Interrogatory 20 seeks information fundamental to the *Bestfoods* analysis: (1) who are the relevant actors; (2) on behalf of what company are they acting; and (3) what are the relationships with a parent company through which the parent may exercise control. Without this basic information a court could not evaluate whether a "parent operates the facility . . . alongside the subsidiary in some sort of joint venture" or whether "an agent of the parent with no hat to wear but the parent's hat [] manage[s] or direct[s] activities at the facility." *Kayser-Roth*, 272 F.3d at 99–100 (quoting *Bestfoods*, 524 U.S. at 71).

Defendants object to the relevancy of Interrogatory 20(f) and (g) regarding spending authorities and related policies. Budgetary and financial aspects of the parent-subsidiary relationship are relevant to operator liability, however, because a parent's control may come through the power of the purse. Indeed, courts have considered a parent's funding of environmental controls, *Sterling Centrecorp*, 906 F. Supp. 2d at 1049 (citing *Basic Mgmt. Inc. v. United States*, 569 F. Supp. 2d 1106, 1116 (D. Nev. 2008)) and a "parent's non-environmental management of [the] facility," including approving salaries and "management contract[s] between the parent and subsidiary. . . ." *Id.* (citing *Atlanta Gas Light Co. v. UGI Utils., Inc.*, 463 F.3d 1201, 1205–7 (11th Cir. 2006)). Evaluating these facts can help determine, among other things, whether the relationship between the parent and subsidiary exceeds actions typically associated with a parent's investor status. *Id.* at 1050 (citing *Bestfoods*, 524 U.S. at 72).

Not only are these questions relevant to operator liability, but Defendants' own documents show that ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████. *See* Shell Inv. Mgmt. Guide, Ex. A. First, ████████████████ ████████████████     ████████████████████████████████████

██████████████████████████████████████████████████ *See id.* at 4; Velasco

Email, Ex. B at 1 (showing screenshot of ████████████████████████████████████

████████).



Screenshot of ██████████████████████████████████████

SOPUS_PVD00036781 (redaction by Defendants)

Second, Shell's Investment Management Guide applies to ████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████." Shell Inv. Mgmt. Guide,

Ex. A at 24. Within Trading and Supply, "████████████████████████████████

████████████████████████████████, *id.* at 12, and the projects must comply with

Shell's proscriptive engineering standards. Dep. Tr. of James Kent Yeates from Conservation L.

Found., Inc. v. Shell Oil Co., Nos. 1:17-cv-00396 (D.R.I.), 3:21-cv-00933 (D. Conn.), Ex.

C 156:1–7 (compliance with certain Shell Design Engineering Manuals are mandatory for "capital

projects" to "manage asset integrity . . . ."). Thus, CLF is entitled to discovery regarding spending

authorities and related policies as they address the three fundamental *Bestfoods* analysis questions

listed above.

### 3. Reasons Why Defendants' Answers are Inadequate

#### i. Parent Defendants responded that they have "no information" responsive to this Interrogatory when the record shows that they do.

The Parent Defendants did not answer Interrogatory 20, claiming instead that they have "no information" responsive to it. Their answer is incomplete, evasive, or simply incorrect.

First, the facts in this case demonstrate that the Parent Defendants have information responsive to this Interrogatory through their employees. Equilon, Triton, and Motiva identify Brian Evans as the former Distribution Operations Manager for the Terminal. Suppl. Resps. 2d. Interrogs., Ex. D at 5. Mr. Evans testified that he reported to the "General Manager of Distribution Operations for the Americas" who was employed by Parent Defendant STUSCO. Dep. Tr. of Brian Evans, *Conservation L. Found., Inc. v. Shell Oil Co.*, No. 3:21-cv-00933 (D. Conn.), Ex. E 42:25–43:8. Thus, at a minimum, STUSCO should have information about Mr. Evans's environmental responsibilities because one of its employees supervised him.

A past employee of STUSCO, Patrick English, also had information about people with environmental responsibilities at the Terminal. In fact, Mr. English delegated authority regarding environmental matters at the Terminal to ███████████████████████████████████ ████████████████████████." Responsible Official Delegation Letter, Ex. F.[4] Specifically, he delegated authority to the above positions "██████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████." *Id.*[5] Again, STUSCO should have information regarding people with environmental responsibilities at the

---

[4] The Responsible Official Delegation letter refers to Mr. English as "████████████████████████████████ ████████████████████████████████████████████████" Ex. F at 1. ████████████████████████████ ████████████████████. Moreover, Mr. English's email ████████████████████████████████████████ ████████████████. *See* Evans Email (May 24, 2019), Ex. G at 1 ████████████████████████████

[5] Those positions were held by individuals employed by SPLC. Suppl. Resps. 2d Interrog., Ex. D.

Terminal since one of its employees was responsible for and in fact delegated authority over environmental matters at the Terminal.

Internal correspondence also shows that Parent Defendants Shell USA (f/k/a Shell Oil Company) and Shell Petroleum have relevant information about the Terminal's environmental compliance, including information about individuals with environmental responsibilities. Heidi Nelson was (and possibly still is) the " ███████████████████████████████████ ███████████████████████████████████████████████████████ " *See* Shell Apr. 2017 Email, Ex. H at 2. Her email address indicates ███████████████████ ███████████████████████████████████. *See id.* at 1 (███████████████████). She met ████████████████████████████████████████████████ ████████████████████████████████████████████████████████. *Id.*

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████. *See id.* For example, Shell plc states in filings to the U.S. Securities and Exchange Commission ("SEC") that its "climate-related risk management process follows the approach set out by the Shell Control Framework, ensuring that it is integrated in the overall risk management process of the [Shell] Group." Shell plc, Annual Report (Form 2-F) (Mar. 10, 2022) at 87.[6] That approach was used to evaluate physical risks at Shell-operated ventures that are "highly exposed to storm surge and wave-induced inundation" and resulted in infrastructure changes involving

---

[6] Available at: https://www.sec.gov/ix?doc=/Archives/edgar/data/0001306965/000130696522000012/shel-20211231 htm

"relocation of assets and raising all equipment as per metocean [meteorology and oceanography experts' recommendations." *Id.*

Ms. Bothwell ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████. TRI Emails, Ex. I (██████████████████████████████). In the same email chain, Ms. Bothwell █████████████████████████████████████

████████████████████" *Id.* (emphasis in original).  Defendant Shell Petroleum should also have information about individuals with environmental responsibilities at the Terminal like Ms. Bothwell ███████████████████████████████████████████████████

█████████.

Finally, all Defendants (including the Parent Defendants) answered Interrogatory 25 with information responsive to Interrogatory 20. *See infra*, Section IV.C. Each Parent Defendant identified Mr. Evans as having environmental responsibilities at the Terminal in response to Interrogatory 25. Their answer to Interrogatory 25 is consistent with the evidence above showing they did have information responsive to Interrogatory 20. Thus, the Parent Defendants' claim that they have "no information" responsive to Interrogatory 20 is incomplete, evasive, or incorrect.

      **ii.    Defendants failed to identify each person with responsibility for environmental compliance at the Terminal.**

Defendants' answer fails to identify (at least) two people with responsibility for environmental compliance at the Terminal. Defendants did not identify Jennifer Bothwell in response to Interrogatory 20. However, in response to Interrogatory 25, Defendants state Ms. Bothwell was "responsible for supporting the Terminal's activities to comply with local, state, and federal environmental laws and regulations." Resps. 2d Interrogs., Ex. J at 16. Moreover, Defendants' counsel supplied a declaration during the Parties' meet and confer describing Ms.

Bothwell as having "lead responsibility" for environmental compliance at the Providence
Terminal. Prather Decl., Ex. K ¶ 3. Ms. Bothwell's position is now filled by Theresa Geijer. Resps.
2d Interrogs., Ex. J at 17. In response to Interrogatory 25, Defendants state that Ms. Geijer "was
[or is] responsible for supporting the Terminal's activities to comply with local, state, and federal
environmental laws and regulations." *Id.* at 15–17. Yet again, Defendants did not identify either
person (or their supervisors) in response to this Interrogatory. Thus, Defendants' answer to
Interrogatory 20 is inadequate.

      **iii.    Defendants did not identify supervisors who work for Parent
Defendants.**

      Equilon, Triton, and Motiva identified Brian Evans and DeAnne Lewis as employees of
Shell Pipeline Company LP [SPLC] who have held the position of Distribution Operations
Manager at the Terminal, the highest-level position identified as having environmental
responsibilities at the Terminal. *See* Resps. 2d Interrogs., Ex. J at 9. While these Defendants
identified the supervisors for people lower down the chain of command, each of whom works for
SPLC, they did not identify Mr. Evans or Ms. Lewis's supervisors. Mr. Evans testified that he was
supervised by employees of Parent Defendant STUSCO. *See supra,* Section IV.A.3.i. The same
may be true for Ms. Lewis. Defendants must identify each person who has had responsibilities for
environmental compliance at the Terminal and their ultimate chain of command within the Shell
Group.

      **iv.    Defendants' answers include improper qualifying language regarding
employers and are inconsistent with past representations.**

      Defendants' responses that identify individuals' employers are inconsistent with past
representations in this litigation regarding an important witness, Michael Sullivan. Mr. Sullivan
has been the "Facilities Manager" for the Terminal since 2008. Suppl. Resps. 2d Interrog., Ex. D
at 4–5. In this position, he is "ultimately accountable for operational and management decision-

making authority" for environmental compliance and is "in charge of" other aspects of the Terminal relevant to this case. *Id.* at 4. Moreover, Mr. Sullivan is also deeply involved in *all* Defendants' discovery responses. He was among the first two people interviewed by opposing counsel to identify documents responsive to CLF's discovery requests. Prather Decl., Ex. K ¶ 3. Mr. Sullivan has also verified *each* Defendants interrogatory responses. *See* Suppl. Resps. 2d Interrog., Ex. D at 11; Resps. 2d Interrogs., Ex. J at 22.[7] Defendants' initial disclosures identified Michael Sullivan as an employee of Defendant Equilon d/b/a Shell Oil Products US. Defs.' R. 26(a)(1) Initial Disclosures, Ex. L at 2.  Approximately two years later, counsel represented that Mr. Sullivan worked for SPLC since "around 2019" and was employed by SOPC Southeast Inc. from 2017 to around 2019. Prather Email (Feb. 7, 2023), Ex. M at 2.[8] Defendants Equilon, Triton, and Motiva Enterprises later stated Mr. Sullivan was employed by Motiva Company (not Defendant Motiva Enterprises) "from 2008 to around 2017" and has been employed by SPLC from "around 2017 to the present." Resps. 2d Interrogs., Ex. J at 5. Defendants inconsistently describe Mr. Sullivan's employment history, and in their interrogatory response state ambiguously that it "appears" Mr. Sullivan was employed by Motiva Company and SPLC during certain years. Thus, their answer to Interrogatory 20 is incomplete or evasive. *See Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, No. 14-CV-1296-JPS, 2017 WL 3130414, at *1–2 (E.D. Wis. July 24, 2017) (requiring party responding to interrogatory to delete qualifying language from response or provide a precise answer).

---

[7] By signing each Defendants' interrogatory answers, Mr. Sullivan is acting as each Defendant's agent. Fed. R. Civ. P. 33(b)(1), (5).

[8] CLF subpoenaed SOPC Southeast Inc. based on this representation.

**v.    Failure to Answer 20(f) and (g) regarding limitations on spending authority and related policies.**

Defendants did not answer Interrogatory 20(f) or (g) regarding limitations on spending authority and related policies, stating that "authority to authorize expenditures is irrelevant to authority to make decisions regarding compliance with the Terminal's CWA permit and/or RCRA and irrelevant to Plaintiff's claims regarding alleged current and/ or ongoing violations of RCRA." Velasco Email, Ex. B at 7. As discussed in Section IV.A.2, *supra*, authority to authorize expenditures is directly relevant to operator liability under *Bestfoods*.

**B.    Interrogatory 23**

**1.    Interrogatory**

Did You search for records in the possession, custody, or control of Defendants Shell Oil Company, Shell Petroleum, Inc., and Shell Trading (US) Company in response to CLF's First Set of Requests for Production of Documents to All Defendants? If Your answer is yes, identify the location of the records searched and the custodian of the documents.

**2.    Interrogatory 23 Seeks Information Relevant to the Adequacy of Defendants' Search for Responsive Records.**

Interrogatory 23 seeks relevant information because it "is calculated to lead to the discovery of admissible evidence as it seeks to discover whether Defendant[s] ha[ve] made a reasonable and thorough search for responsive electronic records that may yield admissible evidence." *McNearney v. Wash. Dep't of Corrs.*, No. C11-5930 RBL/KLS, 2012 WL 3155099, at *6 (W.D. Wash. Aug. 2, 2012). CLF issued Interrogatory 23 based on the paucity of documents that Defendants produced in this case from Parent Defendants' files (to the extent any were produced). Thus, Interrogatory 23 seeks an answer to a simple question: did Defendants search the Parent Defendants' files for responsive records? And if so, where are those documents located?

### 3. Reasons Why Defendants' Answers are Inadequate

#### i. Defendants do not state whether they searched for documents in Parent Defendants' possession, custody, or control; only that their search "would have encompassed" such documents.

Defendants' answer is incomplete or evasive because it does not state whether they searched for documents in the possession, custody, or control of the Parent Defendants. They state "searches were conducted" of certain custodians and that those searches "would have encompassed" documents in the possession, custody, or control of the Parent Defendants. However, none of these custodians were employed by a Parent Defendant (or any Defendant for that matter). Resps. 2d Interrogs., Ex. J at 6.[9] Defendants also indicate the documents produced from the identified custodians' files were not "necessarily" in the possession, custody, or control of the Parent Defendants and that, apparently, it is "impossible to know" whether the documents were within their possession, custody, or control. *Id.* at 8. These qualifications render their answer incomplete and evasive. Defendants must state specifically, unequivocally, and without qualifying language whether they searched the Parent Defendants' files for responsive documents and, if so, where those files are located.

Defendants rely on a declaration from a Shell USA, Inc. eDiscovery Analyst, Clyde Early Williams, to support their response. Resps. 2d Interrogs., Ex. J at 12. However, their reliance on Mr. Williams' declaration is misplaced. His statement addresses the apparent "logistical[] difficult[y]" of searching across various software platforms within the Shell Group. Williams Decl., ECF 79-10 ¶ 8. But Mr. Williams does *not* state it is "impossible" to determine whether a document is within the possession, custody, or control of a Parent Defendant as Defendants claim.

---

[9] Defendants indicated that they searched the custodial files of employees of non-parties including Shell Pipeline Company LP, Shell Canada Limited, two contractors for Shell Pipeline Company LP, Shell Italia Oil Product Srl, Shell Downstream Inc., and Shell Downstream Services International B.V.  Resps. 2d Interrogs., Ex. J at 7–8.

*See id.* Indeed, his declaration suggests the opposite is true: "Defendants (and their employees) do not have access to the documents of all the entities that fall within CLF's definition of 'Defendants.'" *Id.* ¶ 7. If a Defendant cannot access another Defendant's files it means they maintain separate files. To the extent that Defendants' record-keeping practices make it difficult to know whether documents were in a particular Defendants' possession, custody, or control, that difficulty is of the Defendants' own making. *Cf. Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. 57, 61 (D. Mass. 2005) ("Courts have been loathe to reward (and possibly encourage) poor record keeping by shielding companies with inefficient recording methods from discovery."). Defendants must provide complete and unevasive answers to Interrogatory 23.

### C.    Interrogatory 25

#### 1.    Interrogatory

To the extent not already included in Your response to Interrogatory No. 26 [sic], describe the job titles, job duties, and reporting structure for: Bibian Amaya-Ramirez, Kyle Baker, Todd Barr, Jennifer Bothwell, Claudio Covini, Patrick English, Brian Evans, Theresa Geijer, Glenn Hardcastle, Ed Henke, James Ledbetter, Ramon Martinez, Jason Pace, Michael Sullivan, and James Kent Yeates.

#### 2.    Interrogatory 25 Seeks Information Relevant to Operator Liability

Interrogatory 25 seeks information about "the job titles, job duties, and reporting structure" for fifteen individuals that CLF identified from Defendants' document productions. This information is relevant for the same reasons discussed above regarding Interrogatory 20. Complete and unevasive answers would identify people and corporate entities that participate in, manage, direct, or conduct activities at the Terminal. In addition, information on reporting structures is relevant to understanding which Shell Group entities participate in the Terminal's management

through Trade and Supply, including the development, implementation, and enforcement of top-down policies.

As an example, Defendants identify James Ledbetter in response to Interrogatory 25. They list his title as "HSE Regional Manager" and indicate that he supervises the "Environmental Coordinator" for the Terminal, a position with "lead responsibility" for environmental compliance at the Terminal. Resps. 2d Interrogs., Ex. J at 17; Prather Decl., Ex. K ¶ 3. Identifying the people in Mr. Ledbetter's chain of command, including their employer, is relevant to operator liability since those people likely have knowledge of, or responsibilities for implementing, controlling policies through Mr. Ledbetter and his supervision of Environmental Coordinators at the Terminal.[10]

Defendants object that information about reporting structures is not relevant "except to the extent that the supervisor may have authority to exercise operational and management decision-making authority" and to the extent the Interrogatory refers to "people who have no involvement or relation to the issues in this litigation. . . ." Resps. 2d Interrogs., Ex. J at 15–16. Even assuming *arguendo* Defendants' framing of relevance is correct (it is not), whether a supervisor has decision-making authority or has some involvement or relation to the issues in this litigation is a question of fact. Defendants cannot avoid identifying a potential witness's chain of command based on their self-serving conclusions about those people's authority. Defendants' objection is an example of a "merits-based challenge presented in the guise of a relevance objection." *See Big City Dynasty*, 336 F.R.D. at 511.

---

[10] Mr. Ledbetter does not know which corporations employed the people above him in his chain of command. Dep. Tr. of James Ledbetter from *Conservation L. Found. v. Shell Oil Co.*, No. 3:21-cv-00933 (D. Conn.), Ex. N 55:12–58:5. Even if he did know, those statements may not be binding on Defendants since Mr. Ledbetter "believe[s]" he is employed by "Shell Pipeline, SPLC." *Id.* 28:6–15.

Defendants' relevance objection is also misplaced. As noted at the beginning of Section IV, above, courts consider a wide range of information when analyzing operator liability claims and the analysis is "fact-specific." *CLF II*, 2022 WL 2353065 at *2. The reporting structure for each person listed in Interrogatory 25 is necessary to understand which companies are participating in the operations of the Terminal and how they are exerting control, including through supervision and top-down policies.

### 3. Reasons Why Defendants' Answers are Inadequate

#### i. Defendants did not identify the reporting structure for any person listed in the Interrogatory.

Defendants did not identify the reporting structure for any person listed in the Interrogatory. Instead, Defendants interpreted "reporting structure" to mean "supervisor of the identified individual" even though these terms are not synonymous. *See* Resps. 2d Interrogs., Ex. J at 15–18. Even under their limited self-serving definition, Defendants did not identify any supervisors except to note that Mr. Ledbetter supervises the Environmental Coordinator for the Terminal. *Id.* at 17. Thus, for example, Defendants did not identify Mr. Ledbetter's supervisor (who likely works for a Parent Defendant) or Brian Evans' supervisor, who works for Parent Defendant STUSCO. *See supra,* Section IV.A.3.i.

#### ii. Defendants' claim that various people have "no involvement" with the Terminal is belied by the number and substance of the records Defendants produced containing their names.

Defendants claim that various people identified in Interrogatory 25 have "no involvement" at the Terminal: Bibian Amaya-Ramirez, Claudio Covini, Patrick English. *Id.* Even if that were the standard for relevance (it is not), these individuals are involved at the Terminal.

Ms. Amaya-Ramirez authored ████████████████████████████████████

████████████████████████████████████████████████, Ex. O. The

19



." *Id.* at 2.

" *Id.* at

7–8. Thus, Ms. Amaya-Ramirez has knowledge directly relevant to the claims in this case,

. Defendants' claim that she has "no involvement or relation to the issues raised in this litigation" is incorrect and Defendants must describe her reporting structure.

Mr. Covini was the                  of

, Ex. P at 1. The       "

'" *Id.* at 3. Likewise,

" *Id.*

Thus, Mr. Covini is likely one of the people ultimately responsible for developing top-down policies within Trading and Supply that govern the issues presented in this case.

As discussed in Section IV(A)(3)(i), above, Patrick English was ███████████████

███████████████████████████████████████████████████

███████████████████████. ████████████████████, Ex. F. Thus, he has direct involvement with the Terminal on matters relevant to this case, including his employer's potential liability as an operator.

Defendants' claim of "no involvement" at the Terminal is also belied by the volume of records they produced in this case in which these individuals were named. Running the following searches to identify such demonstrates these individuals have knowledge of and participate in matters relevant to this case. A search for "Bibian" yielded 1,851 documents, a search for "Covini" yielded 751 documents, and a search for "English, Patrick" yields 381 documents. Defendants' response to Interrogatory 25 is therefore incomplete and evasive.

### D.     Interrogatory 26

#### 1.     Interrogatory

Identify any bylaws, articles of incorporation, contracts, memorandums of understanding, or agreements of any kind that define the relationship between and amongst the Defendants, including any limitations on a Defendant's authority without approval from any other Defendant.

#### 2.     Interrogatory 26 Seeks Information Relevant to Operator Liability

Interrogatory 26 seeks information regarding the relationship between the Defendants, including one Defendant's ability to control another Defendant's actions by withholding authorization to act. Complete and unevasive answers to this Interrogatory are crucial to the *Bestfoods* analysis on the issue of corporate control. *See CLF II*, 2022 WL 2353065 at *2 (corporate control is a "fact-specific" issue under *Bestfoods*).

Further, as noted above, the Terminal is managed through Shell's "Trading and Supply" management structure, which is populated by agents of various Shell Group companies. This

Interrogatory seeks to elicit the legal relationships between Defendants vis-à-vis Trading and Supply (or any other management structure). Such information is relevant to whether a Parent Defendant "operates the facility . . . alongside the subsidiary in some sort of joint venture" or "an agent of the parent with no hat to wear but the parent's hat [] manage[s] or direct[s] activities at the facility." *Kayser-Roth*, 272 F.3d at 99–100 (quoting *Bestfoods*, 524 U.S. at 71). For example, Defendant STUSCO does not have a parent-subsidiary relationship with either Equilon or Triton. *See* Suppl. Resps. 2d Interrog., Ex. D (indicating only that STUSCO is a wholly owned indirect subsidiary of Defendant Shell Petroleum Inc.). Nevertheless, its agents are in the chain of command regarding environmental responsibilities at the Terminal. *See supra,* Section IV.3.iii.

Defendants object to the Interrogatory claiming that "[d]ocuments concerning the relationship between and amongst entities that do not own or ***operate*** the Terminal are not relevant to this litigation." Resps. 2d Interrogs., Ex. J at 18 (emphasis added). However, their objection is nonsensical. First, it is circular and this Court has decided to the contrary. The *Bestfoods* analysis, not Defendants, determines whether a parent corporation is an "operator." Second, to the extent Defendants escape the orbit of their faulty logic, they are raising an improper merits argument disguised as a relevance objection. *See Big City Dynasty*, 336 F.R.D. at 511. Defendants cannot short-circuit CLF's operator liability claims by unilaterally deciding the disputed issue of fact.

### 3.  Reasons Why Defendants' Answers are Inadequate

#### i.  With one exception, Defendants did not identify documents that define the relationship between or among Defendants.

Defendants identified one agreement that defines the relationship between Defendants Equilon and Triton: the April 2017 Master Terminaling Services Agreement. Suppl. Resps. 2d Interrog., Ex. D at 9. They did not identify any other documents or agreements that define the relationship between the other Defendants, nor did they state whether any such documents exist or

ever existed. Instead, Defendants identified a diagram created by Shell attorneys in response to a request for production in a different case. Suppl. Resps. 2d Interrog., Ex. D at 7–8. The diagram is not responsive because it does not "define" any relationships and does not include Defendant STUSCO.[11] Defendants' answer to Interrogatory 26 is therefore incomplete or evasive.

Defendants must either identify additional documents in response to Interrogatory 26, or state specifically and unequivocally that there are no "bylaws, articles of incorporation, contracts, memorandums of understanding, or agreements of any kind" (beyond the one document identified thus far) that define the relationship between and amongst the large, sophisticated, and interdependent corporations that are Defendants in this case.

### E.    Interrogatory 27

#### 1.    Interrogatory

Identify any bylaws, articles of incorporation, contracts, or other agreements that describe the relationship between and amongst the Defendants and Shell Pipeline Company LLP [*sic*].[12]

#### 2.    Interrogatory 27 Seeks Information Relevant to Operator Liability.

Interrogatory 27 seeks information about the nature of the relationship between the Defendants and SPLC. It is relevant to operator liability because SPLC is deeply involved with environmental compliance at the Terminal. Each person Defendants identified as having "authority to make operational and management decisions regarding compliance with the CWA, including the Terminal's CWA permit, and/or RCRA" since 2017, have worked for SPLC. Suppl. Resps. 2d Interrog., Ex. D at  3. Of the twenty-five custodians whose records were searched for documents

---

[11] Defendants produced a similar diagram in the New Haven matter that includes Defendant STUSCO even though STUSCO is not a Defendant in that case. SOPUS_NHVN00242869. However, Defendants have not agreed to produce that diagram for use in this case.

[12] CLF clarified, and Defendants acknowledged, that the Interrogatory contained a scrivener's error. The Interrogatory should have read "Shell Pipeline Company LP" not "LLP."

responsive to CLF's First Request for Production of Documents, Defendants identified seventeen as employees of SPLC, and another two as SPLC contractors. *Id.* at 7–8 (as discussed above, Defendants did not search the custodial files of their own employees). In addition, Defendants relied on SPLC employees to verify their interrogatory answers and to answer questions about managing relevant risks and applicable corporate policies at the Terminal. Michael Sullivan, who certified Defendants' Interrogatory Responses, is employed by SPLC. *Id.* at 7. So too is James Kent Yeates, whom Defendants offered as an authority on environmental compliance at the Terminal. ECF 92 at 4.[13] The relationship between Defendants and SPLC is therefore relevant. CLF is trying to discover facts regarding Defendants' relationship to SPLC at the Terminal.

The Non-Motiva Defendants state "there does not appear to be a formal written agreement" between Triton and Equilon, the self-described owner/operators of the Terminal, and SPLC "regarding the Terminal's operations." Suppl. Resps. 2d Interrog., Ex. D at 10. However, Defendants' counsel represents that at least one SPLC employee, Michael Sullivan, works for the Terminal under a contract that is apparently similar to "documents reflecting services provided by [SPLC] to various terminal operators." Prather Email (Apr. 4, 2023), Ex. Q at 1 (citing SOPUS_PVD00101169, a "Service Level Agreement" between SPLC and Equilon).

Despite the substantial role SPLC agents have at the Terminal and in this litigation, and despite having already produced an agreement between SPLC and a Defendant governing other terminals, Defendants claim that "documents concerning [SPLC] are irrelevant to the claims in this litigation" because it "is not the owner at the Terminal, the Terminal CWA permittee, the Terminal operator, or a named defendant in this case." Resps. 2d Interrogs., Ex. J at 20. Defendants

---

[13] At Defendants' suggestion, this Court required CLF to depose Mr. Yeates to attempt to narrow the scope of CLF's first set of discovery requests. ECF 94 at 3. However, Defendants would not agree to bind Mr. Yeates' testimony to any of the Defendants. Prather Email (Sept. 28, 2022), Ex. R at 1 (noting that Kent Yeates would appear for deposition "in his personal capacity").

do not explain how their objection is consistent with their past practices, including by producing thousands of documents from SPLC document custodians and referencing an agreement Equilon and SPLC regarding other terminals.

### 3.  Reasons why Reasons Why Defendants' Answer is Inadequate

#### i.  Defendants' answer is incomplete or evasive because it does not identify any documents that describe the relationship between and amongst Defendants and Shell Pipeline Company LP.

The Non-Motiva Defendants' answer includes a *description* of the ownership interest between SPLC and Defendant Equilon. However, Interrogatory 27 asks Defendants to identify documents, not provide a description. In addition, the Non-Motiva Defendants' answer is couched in qualifying language and vague terms that render it incomplete or evasive. For example, Defendants do not explain what they mean by "any agreement . . . regarding or otherwise governing the Terminal's operations *at issue in this case*." Suppl. Resps. 2d Interrogs., Ex. D at 10 (emphasis added). As discussed below, Defendants have unilaterally applied their view of what is relevant to the issues in this case generally and to operator liability in particular. Thus, the Defendants' statement that they are "unaware" of any such agreement governing operations "at issue in this case" is vague and evasive.

The Non-Motiva Defendants' answer is also inadequate because, as described above, Defendants apparently did not search any of their own files. Thus, to the extent they are not withholding information based on a crabbed reading of the Interrogatory, their (incorrect) view of what is relevant to this case, or some other reason, they may not have located responsive information because they were not looking in the right place. For example, Defendants appear to have produced the "Service Level Agreement" between SPLC and Equilon for other Terminals from the custodial file of Brian Evans, the former District Operations Manager employed by SPLC

who has environmental responsibilities at the Terminal. While Mr. Evans may not have responsive information, a legal department within Shell Group certainly may.

## V.     CONCLUSION

For the foregoing reasons, CLF asks the Court to overrule Defendants' Objections to Interrogatories 20, 23, and 25–27 and enter an Order compelling Defendants to respond to these Interrogatories completely, unevasively, unambiguously, and without qualifying language. Further, if applicable, where a Defendant responds stating that their prior answer was complete, or that it has no responsive information, then the Court should Order the Defendant to describe the steps undertaken to generate that response. CLF further requests this Court enter a briefing schedule on whether Defendants are required, under Rule 37, to pay CLF's reasonable expenses, including attorneys' fees, in litigating this and the prior motion to compel on the same topics, and what other sanctions may be appropriate. Fed. R. Civ. P. 37(c)(1).

Dated: November 2, 2023              Respectfully submitted,

                                     CONSERVATION LAW FOUNDATION,
                                     Inc., by its attorneys

                                     */s/ Kenneth J. Rumelt*
                                     Kenneth J. Rumelt, Esq.*
                                     Christopher M. Kilian, Esq.*
                                     Conservation Law Foundation, Inc.
                                     15 East State Street, Suite 4
                                     Montpelier, VT 05602
                                     (802) 622-3020
                                     (802) 223-5992 x4015
                                     krumelt@clf.org
                                     ckilian@clf.org

James Crowley, Esq.
RI Bar # 9405
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
(401) 228-1905
jcrowely@clf.org

Alexandra M. Jordan, Esq.*
Conservation Law Foundation, Inc.
62 Summer Street
Boston, MA 02110
(617) 850-1732
ajordan@clf.org
aestpierre@clf.org

Allan Kanner, Esq.*
Kanner & Whiteley, LLC
701 Camp Street
New Orleans, LA 70130
(504) 524-5777
a.kanner@kanner-law.com

*Attorneys for Plaintiff*
*Admitted Pro Hac Vice*

## FED. R. CIV. P. 37(A)(1) CERTIFICATION

CLF has in good faith conferred with Defendants regarding the discovery sought in this
motion in an effort to obtain it without court action.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2023, the foregoing Motion to Compel Interrogatory Responses was filed through the Court's electronic filing system ("ECF"), through which the document is available for viewing and downloading from the ECF system, and a copy of the filing will be sent electronically to all parties registered with the ECF system.

*/s/ Kenneth J. Rumelt*

Kenneth J. Rumelt