UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

---

CONSERVATION LAW FOUNDATION, INC.,

    *Plaintiff*,

      v.

EQUILON ENTERPRISES LLC (d/b/a SHELL
OIL PRODUCTS US), SHELL OIL COMPANY,
SHELL PETROLEUM, INC.,
SHELL TRADING (US) COMPANY, MOTIVA
ENTERPRISES LLC, TRITON TERMINALING
LLC, and EQUILON ENTERPRISES LLC,

    *Defendants*.

C.A. No. 1:17-cv-00396-WES-PAS

---

**PLAINTIFF CONSERVATION LAW FOUNDATION'S
MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

## I.    INTRODUCTION

Pursuant to Rule 37 of the Federal Rules of Civil Procedure and D.R.I. Local Rule Cv 37, Plaintiff Conservation Law Foundation, Inc., ("CLF") moves for an order compelling Defendants to produce documents responsive to its Requests for Production of Documents ("RFPs").[1] Following multiple rounds of negotiation with Defendants and an informal conference with the Court, Plaintiff moves to compel only two sets of documents: (1) documents responsive to RFP 26 that involve modifications to Defendants' Sewaren terminal in the aftermath of Hurricane Sandy; and (2) the specific documents outlined in the Notice of the Deposition of Paul Verlaan.[2]

---

[1] Pursuant to D.R.I. Local Rule Cv 7(3), Plaintiff requests oral argument and anticipates a hearing would last less than one hour.

[2] Plaintiff files the instant Motion as of this date to ensure a ensure a timely submission but the parties nonetheless will continue to meet and confer subsequent to its filing.

## II.     BACKGROUND

Given the Court's request for brevity, Plaintiff will not brief the case-background that has been extensively briefed elsewhere (*see, e.g.* ECF 250), but will merely focus on the documents it seeks to compel. Following the informal conference with the Court on August 6, the parties met and conferred on outstanding issues on August 7. The parties are continuing to meet and confer but have not yet reached a resolution regarding RFP 26 and the documents found in the Notice of Deposition of Paul Verlaan.

### A.  Documents Responsive to RFP 26

RFP 26 seeks, in part, "*Documents sufficient to show and describe changes made to the engineering, design, or management of the Terminal or coastal facilities . . . to address any risks that contributed to the loss of containment event at the Sewaren terminal during Superstorm Sandy.*" A document dated November 19, 2013 authored by Ed Levine at the NOAA (attached hereto as Exhibit A) indicates Defendants raised the dikes at the Sewaren terminal following Hurricane Sandy.  *See* Ex. A at 4 ("Dikes have been increased.").

To date, Defendants have not produced any documents pertaining to the dikes being raised at the Sewaren terminal. In response to Plaintiff's request that Defendants' supplement their production to include all changes made at the Sewaren terminal in the wake of Hurricane Sandy, Defendants identified three previously produced documents. Each of the documents Defendants identified pertained to a sealant added to Sewaren tanks, but none address raising dikes or any other change made at Sewaren in the wake of Hurricane Sandy. Defendants' current position is they will search only the files of eight previously identified custodians for additional responsive documents – and nowhere else.

## B. Documents Requested in the Notice of Deposition of Paul Verlaan

Plaintiff requested the below documents in its Notice of Deposition of Paul Verlaan.[3]

Paul Verlaan testified repeatedly in his deposition these are readily available to Defendants

online *See* Deposition of Paul Verlaan (Mar. 20, 2025) Tr. 138:12–144:25; 177:16–181:3

(attached here to as Exhibit B).

1. "2011 work by Acclimatise on climate change and risk management" including:

     i. The "high-level analysis of physical climate change risks across Shell's portfolio" conducted by Acclimatise;

     ii. "Documents from the ENVID/HAZID workshop 17th of August 2010 to identify areas or operations that may be affected by climate change" that were the product of work conducted by Allicmatise;

     iii. The "Acclimatise Risk Assessment report";

     iv. The "Acclimatise Climate Change Adaptation Strategic Framework_2011.pdf" and "Acclimatize_Shell_Workstream1_Risk assess.docx";

     v. The "Additional information on the Acclimatise work" that at one point could be found on Shell's SharePoint site at https://eu001sp.shell.com/sites/AAFAA4981/Group%20CO2%20InfoBase/Forms/Allitems.aspx?RootFolder=%2fsites%2fAAFAA4981%2fGroup%20CO2%20InfoBase%2f06%2e%20%20CO2%20Strate%2f07%2e%20Adaptation%2fAcclimatise%20Del&FolderCTID=0x012000ADE5EC069573304492187DACE9C1FA23;

2. "2013–2015 work on climate change adaption" including:

     i. "Documentation" that "indicates that risks (e.g. flooding) for some assets were identified";

3. Documents on Shell's SharePoint site "under grouping '2013-2015 Climate Change Adaptation Work";

4. GOM Business Continuity - Coastal management"

---

[3] The documents listed in the Notice of Deposition of Paul Verlaan are also responsive to Plaintiffs' RFPs 10, 99, 108 and 121.

5. Documents in Shell's SharePoint site within what appears to be the "Coast Management Folder";

6. "Physical Impacts of climate change," which based on the Shell sharepoint url appears to be a powerpoint by Paul Verlaan with the title "Physical Impacts of Climate change Paul Verlaan_final.pptx";

7. "Enterprise Encyclopedia";

8. "CSO – Metocean – Climate Change Assessment and Adaptation – Tools and Standards," which appears to be available on Shell's SharePoint site;

9. The documents in the "project folder" titled "WaterRiskClimate_Tools_2019 project" on the "WRST SharePt site";

10. The files "Testportfolio 20201023 results .xlsx" and "20200130 Shell test portfoloio.pdf" within the "collaboration set 'WaterRiskClimate_Tools_2019 project' on the "WRST SharePt site";

11. "MR_Climate_Factsheet. VSOdocx.pdf" in a Shell SharePoint folder that may be titled "Collaboration Area WateRiskClimate Tools project";

12. The file "20200214 climate scores overview.pdf" in "WaterRiskClimateTools_2019-2020 project SharePt folder";

13. "CAtNet_7sites_test_portfolio_7Feb2020.pdf";

14. Documents identified in the Bibliography starting at pg. 45 excluding news reports and government publications, which the report states all sit in the same folder "on Water Risk Support Team SharePt Site";

15. "DCAF control point 324 - Metocean and Ice Reference Document: http://swwdcaftool.shell.com/DCAF/content/home.aspx." *See Metocean Design and Operating Considerations - Guideline for Inclusion of Climate Change Criteria in Metocean Criteria and Associated Adaptation*;

16. "[9] CC-STEER - Climate Change Screening Tool: Exposure, Evaluation and Risk, User Guide V1.1; 31 March 2015 (https://ccsteer-live.azurewebsites.net/Content/pdfs/CCSTEER%20User%20Guide%20V1.2.pdf)".;

17. "[10] CC-STEER - Climate Change Screening Tool: Exposure, Evaluation and Risk, Technical White Paper V2.0; 22 June 2016 (https://ccsteer-live.azurewebsites.net/Content/pdfs/CC-STEER_TechnicalWhitePaper_V2.0.pdf);

18. "[11] BADC Guidance on use of climate projections provided for CC-STEER - Guidance on use of climate projections provided for the CC-STEER Tool (https://ccsteer-

4

live.azurewebsites.net/Content/pdfs/Appendix_1_BADC_Input_DataGuidance_CC_Si m ulationsProvidedFor_CC-STEER_v6.pdf);

19. ACAL ID 1660 - Adverse Weather Risk Assessment and Operational Barriers Implementation", "Referenced Standard," which appears to be accessible at the following Shell SharePoint link: https://eu001-sp.shell.com/sites/AAAAB1732/Pages/Adverse-Weather-Risk-Assessment(AWRA)-and-Operational-BarriersImplementation.aspx?ControlMode=Edit&DisplayMode=Design.

Defendants maintain that these documents are either (1) not responsive, or (2) publicly available. These documents are clearly responsive, as outlined below. Except for three documents relating to CC-Steer (listed as numbers 16-18 in the list above), the documents do not appear to be publicly available.

## III.    LEGAL STANDARD

"The law is well settled. Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *In Spite Telecom LLC v. Rosciti Construction Co. LLC*, No. 22-cv-12089-IT, 2024 WL 4028294, at *5 (D. Mass. Sept. 3, 2024) (quotation marks omitted). "Relevance is broadly construed at the discovery stage." *Id.* (quoting *Cabi v. Boston Children's Hospital*, No. 15-cv-12306-DCJ, 2017 WL 8232179, at *2 (D. Mass. June 21, 2017). "What is relevant encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Guardiola v. Bayer Puerto Rico, Inc.*, No. 22-1167 (GMM) 2024 WL 637425, at *5 (D.P.R. Feb. 15, 2024) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see Roy v. FedEx Ground Package Sys., Inc.*, 675 F. Supp. 3d 140, 144 (D. Mass. May 22, 2023) ("At the discovery stage, relevance should be broadly construed, and information should be deemed discoverable if there is any possibility it might be relevant to the subject matter of the action.").

Parties seeking discovery may move for an order compelling production if a party fails to produce documents as requested under Federal Rule of Civil Procedure 34. Fed. R. Civ. P.

5

37(a)(3)(B)(iv). A party moving to compel discovery "bears the burden of making an initial showing that the requested [information is] relevant" to any party's claim or defense. *Keefe v. LendUS, LLC*, No. 20-CV-195-JD, 2021 WL 3550036, at \*1 (D.N.H. Aug. 11, 2021). Once the movant has shown that the requested information is relevant, "the opposing party bears the burden of showing that the requested [information] is improper." *Keefe*, 2021 WL 3550036, at \*1; *see Guardiola*, 2024 WL 637425, at \*5 (party resisting production bears the burden of establishing lack of relevancy or undue burden); *see also* 8 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2008 & nn. 31, 31.50 (3d ed. 2023) (collecting cases).

When objecting to any part of a document request, the objection must "state with specificity all grounds upon which the objecting party relies. Any ground not stated in an objection *shall be deemed waived*." D.R.I. Local Rule Cv 34(b) (emphasis added). "[T]he mere statement by a party that the interrogatory [or request for production] was overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection." *Guardiola*, 2024 WL 637425, at \*5 (quoting *Aponte-Navedo v. Nalco Chemical Co.*, 268 F.R.D. 31, 36 (D.P.R. 2010). Rather, "[t]he objecting party must show specifically how each interrogatory or request for production is not relevant or how each question is overly broad, burdensome or oppressive. . . . [G]eneralized objections to an opponent's discovery requests are insufficient." *Autoridad de Carreteras y Transportacion v. Transcore Atlantic, Inc.*, 319 F.R.D. 422, 427 (D.P.R. Dec. 2, 2016) (citations omitted; internal quotation marks omitted).

## IV.    ARGUMENT

### A.  The Court Should Compel Defendants to Produce Documents Responsive to RFP 26

The NOAA document, Ex. A, clearly indicates that Defendants raised the dikes at their Sewaren terminal following Hurricane Sandy. Documents pertaining to this are clearly within the scope of RFP 26 and directly relevant to the claims at issue in this lawsuit. Plaintiff's claims deal

in part with the fact that Defendants' Providence Terminal is ill-equipped to deal with future catastrophic hurricanes. Essentially, Plaintiff contends that a catastrophic hurricane could cause an oil spill in Providence like the Sewaren spill after Hurricane Sandy. Information on the dike height at Sewaren, and any modifications necessary to prevent future spills, directly relates to whether the Providence facility is adequately equipped to deal with the next Hurricane Sandy.

Defendants do not dispute they are in possession of documents relating to the raising of dikes at the Sewaren terminal. Rather, Defendants simply claim they have met their burden in producing responsive documents to RFP 26 by searching the eight previously identified custodians. Defendants point only to documents indicating that sealant was used on tanks at the Providence Terminal. However, if documents exist regarding the raising of dikes at Sewaren – or any other modification made at Sewaren in the wake of Hurricane Sandy – Defendants have an obligation to search for and produce them wherever they may be housed.

**B. The Court Should Compel Defendants to Produce the Documents Identified in Paul Verlaan's Notice of Deposition**

Plaintiff has clearly listed – including in many cases the title, date, and even link to where the document is in Defendants' files – the documents requested pursuant to Paul Verlaan's Notice of Deposition. Paul Verlaan has testified these documents are easily accessible to Defendants. *See* Deposition of Paul Verlaan (Mar. 20, 2025) Tr. 138:12-144:25; 177:16-181:3, Ex. B. Defendants have no colorable argument that producing these documents is burdensome.

Likewise, Defendants lack any colorable argument that these documents are not relevant. These documents clearly address climate change and its impacts on Shell assets. A sample of these documents includes titles such as "high-level analysis of physical climate change risks across Shell's portfolio," "Acclimatise Climate Change Adaptation Strategic Framework_2011.pdf," and "Physical Impacts of climate change."

7

Defendants claim many of these documents are publicly available, but Plaintiff knows of only three documents identified above that are publicly available. The rest appear to be housed in Defendants' SharePoint files and accessible only to Defendants.

Because this document request is narrow in scope and reasonably calculated to lead to the discovery of relevant evidence, Defendants have an obligation to search for these documents and produce them.

## V.   CONCLUSION

For the foregoing reasons, CLF respectfully requests that the Court grant Plaintiff's Motion and enter an order compelling Defendants to produce documents responsive to RFP 26 and the Notice of Deposition of Paul Verlaan.

Dated: August 8, 2025                    Respectfully submitted,

CONSERVATION LAW FOUNDATION, Inc., by its attorneys

*/s/ Vincent Greene*
Vincent Greene (RI 5971)
Motley Rice LLC
40 Westminster St., 5th Floor
Providence, RI 02903
(401) 457-7730
vgreene@motleyrice.com

Kenneth J. Rumelt
Christopher M. Kilian
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
Tel: (802) 622-3020
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org

Ridge Mazingo
28 Bridgeside Blvd.
Mount Pleasant, SC 29464

Tel: (843) 216-9620
Email: rmazingo@motleyrice.com

*Attorneys for Plaintiff*
*Conservation Law Foundation, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2025, the foregoing Motion to Compel was filed through the Court's electronic filing system ("ECF"), through which the document is available for viewing and downloading from the ECF system, and a copy of the filing will be sent electronically to all parties registered with the ECF system.

*/s/ Vincent Greene*
Vincent Greene (RI 5971)
Motley Rice LLC
40 Westminster St., 5th Floor
Providence, RI 02903
(401) 457-7730
vgreene@motleyrice.com