**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> EQUILON ENTERPRISES LLC (d/b/a SHELL OIL PRODUCTS US), SHELL OIL COMPANY, SHELL PETROLEUM, INC., SHELL TRADING (US) COMPANY, MOTIVA ENTERPRISES LLC, and TRITON TERMINALING LLC, <br><br> Defendants. | **Case No. 1:17-cv-00396** |

**REPLY TO RESPONSE IN OPPOSITION TO
AMERICAN PETROLEUM INSTITUTE'S MOTION TO QUASH
THIRD-PARTY SUBPOENA**

**INTRODUCTION**

CLF's Opposition does not deny that its own position on what constitutes a "reasonable" burden on API was review and production of "[f]our to five thousand documents." *See* ECF No. 269-3 at 23. It does not deny that it took that position early in negotiations, when parties overstate their positions. It does not deny that it then worked for several months to arrive at a review database well below 4,000 documents. It does not deny that the final universe of 656-related communications reached with API was nearly two thousand documents above the top end of CLF's own "reasonable" figure. It does not deny that the searches it asked API to run on just six of its non-656-related requests resulted in *hundreds of thousands* of hits. And it does not deny that it now demands nothing short of full compliance with its subpoena, which will exceed all of the prior document hits combined. In short, it is now undisputed that the "full compliance" CLF demands is orders of magnitude greater than the burden CLF itself said was reasonable. That is enough to resolve this motion.

It is not surprising that CLF did not dispute any of the above, because it is all laid out in the parties' communications in black and white. What is more surprising are certain other things CLF's Opposition does not say. CLF does not even attempt to explain what circumstances, if any, suddenly led it to supposedly conclude that its 4,000-5,000 document position was too low—let alone why a burden of tens of thousands to hundreds of thousands of documents would now somehow be reasonable. It does not dispute API's conjecture that the reason for its sudden change in position stemmed from this Court's order granting CLF access to 656-related communications from the parties, rather than anything that suggested CLF's initial view of what a "reasonable burden" looked like had changed. And it offers no explanation whatsoever for its conduct over the course of the parties' negotiations. It instead throws a Hail Mary to the Court, asking it to modify the subpoena to something reasonable—precisely the work that CLF suddenly abandoned months

ago. *See* Opposition (ECF No. 272-1) at 10-11. But it gives the Court no guidance whatsoever on how to do that, nor any reason to think that something greater than its 4,000-5,000 document range is reasonable. It respectfully should not be rewarded with a modification that it abandoned seeking months ago, especially when API in the interim has taken on the initiative and expense of finally resolving the subpoena.

API's motion should respectfully be granted for those reasons. Below, API additionally responds to a handful of points in CLF's Opposition.

## ARGUMENT

### I.    The Subpoena is Facially Invalid.

The subpoena is facially invalid for the reasons stated in API's Motion. CLF's argument to the contrary is to cite a line of cases holding that electronic production allows a party to designate a place of compliance more than 100 miles from the subpoena recipient. *See* Opposition (272-1) at 7. That line of cases should be rejected in favor of the cases that have held that electronic production does not allow a party to rewrite Rule 45 and designate a physical place of compliance more than 100 miles from the recipient. *See* Motion (269-1) at 12-14. Indeed it's by now well-established that "a Rule 45 subpoena which fails to list a physical place of compliance—including those that list videoconferencing technology as the place of compliance for a deposition or that list an email address as the place of compliance for a document production—fail to comply with Federal Rule of Civil Procedure 45(a)(1)(A)(iii) and are facially void." *Devine v. Judson*, No. 4:24-CV-2911, 2025 WL 1908565, at *1–2 (S.D. Tex. July 10, 2025).[1] CLF tries to skirt that simply by

---

[1] *Citing Fed. Ins. Co. v. Tungsten Heavy Powder & Parts, Inc.*, 2022 WL 2820667, at *1, *7-8 (S.D. Cal. July 18, 2022) (holding that "[a] valid subpoena must list a specific place of compliance" which must "be a physical place subject to geographical limits and capable of being measured according to mileage," and rejecting the plaintiffs' argument that "there is no requirement to appear

listing a physical place of compliance and rendering it completely meaningless, by throwing the words "electronic means" onto it. Its subpoena is the functional equivalent of a subpoena that lists no physical place of compliance at all. CLF cannot rewrite the clear text of the rule.

This Court should reject CLF's line of cases, and affirm a textual reading of the rule, for another reason: the textual reading is the only one that serves *both* of the purposes of Rule 45. Those purposes are to protect non-parties from (1) the burden of distant compliance, *and* (2) the burden of distant resolution of disputes. *See* Motion (ECF No. 269) at 13-14. Electronic production mitigates the burden of distant *production*, but not the burden of distant *resolution*, as this matter itself demonstrates. Not surprisingly, none of the cases cited by CLF address this second purpose of Rule 45—they justify their holdings only by noting that electronic production relieves a party of the burden of distant *production*.[2] They miss altogether the fact that their holdings will require distant resolution of any discovery disputes, and that "assur[ing]" "local resolution of disputes about subpoenas" is an express purpose of the rule. Fed. R. Civ. P. 45(f), Advisory Committee

---

physically when a deposition occurs virtually"); *Frobe v. UPMC St. Margaret*, 2021 WL 9628848, at *1 (W.D. Pa. July 13, 2021) (noting that the subpoena listed the place of compliance for the deposition as "Zoom Videoconferencing;" and concluding that "Zoom Videoconferencing is not a place" but rather "is a method of taking the deposition," such that the plaintiffs were required "to modify the subpoena to have the place of the deposition changed so it is taken at a location within 100 miles of [the non-party's] ... home or place of employment"); *CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 704–05, 710–11 (N.D. Tex. 2017) (concluding that "an email address does not qualify as a location or place where compliance is required under Rule 45, although the subpoenaing party and the subpoenaed person could agree to production by electronic means"; and holding that the place of compliance was the physical address listed on the subpoenas); *see also House v. Wayne USA Co., Ltd.*, 2024 WL 4334404, at *2 (E.D.N.Y. Sept. 27, 2024) (holding that the an email address or zoom link is not a sufficient "place of compliance" by which geographic location can be measured).

[2] *See Linet Americas, Inc. v. Hill-Rom Holdings, Inc.*, No. 21 C 6890, 2025 WL 889579 at *3. (N.D. Ill. Jan. 27, 2025); *Curtis v. Progressive N. Ins. Co.*, 17C1076, 2018 WL 2976432, *2 (W.D. Okla. June 13, 2018); *CresCom Bank v. Terry*, 269 F. Supp. 3d 708, 713 (D.S.C. 2017); *Elsom v. Global Life & Accident Ins. Co.*,17C407, 2018 WL 4092020, *2 (D. Or. Jan. 16, 2018); *Wahoo Int'l Inc. v. Phix Doctor, Inc.*, 13C1395, 2014 WL 3573400, *4 (S.D. Cal. July 18, 2014).

4924-9306-8909, v. 2

Notes, 2013 Amendment. They are poorly reasoned and should not be followed by this Court. Only by tethering the 100-mile limitation to the physical location designated on the subpoena can a court ensure that non-parties will not be forced to litigate these matters in distant courts. Parties need to know that they cannot manufacture jurisdiction over non-party discovery disputes simply by ignoring the clear text of Rule 45.

**II.      The Burden on API is Manifestly and Admittedly Undue.**

As explained, above, API offers nothing in response to the fact that the "full compliance" it demands exceeds its own view of what amount to a "reasonable" burden by several orders of magnitude. API separately responds here to three of the points CLF did choose to make, none of which are accurate.

First, CLF maintains that API is required to separately show undue burden with respect to each individual request in the subpoena, and further that API has not specifically shown how compliance would be "catastrophic." *See* Opposition (ECF No. 272-1) at 8. Neither of those is true. The lone case that CLF cites for the former concerns whether "general objections" in a party's responses and objections to a set of document requests suffice, or whether instead an objection must be raised specifically in response to each request to which it applies. *Healthedge Software, Inc. v. Sharp Health Plan*, Civ. A. No. 19-cv-11020-ADB, 2021 WL 1821358, at *4 (D. Mass. May 6, 2021); ECF No. 272-1 at 8 (citing *Healthedge Software, Inc.*). It does not concern the ways that undue burden can be established on a motion to quash. And here, the parties have the benefit of something that is usually absent when a party tenders its responses and objections: hit counts for search terms (drafted by CLF, no less) for some of the requests. And as explained above, and as not disputed by CLF, the hit counts for the search terms of just *some* of CLF's requests dwarf the figure that CLF has said would amount to a reasonable burden. Those numbers are all that's needed to show that the full compliance CLF now demands would be "catastrophic."

4

CLF also suggests that API claimed in its motion to have knowledge of which 656-related documents the Defendants possess, and that this should matter in determining what an appropriate burden on API would be. *See* Opposition (ECF No. 272-1) at 10. That is a non-sequitur—the burden on API in reviewing any set of documents is the same whether or not API knows that the Defendants have those same documents. CLF's premise is also untrue: What API said is that CLF had been "authorized to obtain" from the parties the same conceptual universe of 656-related communications it seeks from API. *See* ECF No. 269-1 at 4, 15. API and its counsel have zero knowledge of which 656-related documents the Defendants retain. Neither undersigned counsel for API, nor their in-house contact at API, had **any** contact with the Defendants or their counsel about API's subpoena response during the entire course of negotiations or before API moved to quash it. API here defends its own interest in responding to the subpoena, which is why it has never tried to restrict review and production by subject matter, but instead has repeatedly told CLF it cares only about its burden. It has no tangible interest in the outcome of the underlying litigation.

Finally, it also does not help CLF that it has received only "125 documents" from the Defendants concerning 656-related communications. *See* Opposition (ECF No. 272-1) at 10. That simply suggests that a large portion of the 6,781 documents that API has uploaded to its review platform may turn out to be non-responsive (i.e., false hits), and therefore that the burden on API in conducting this review will even more greatly outweigh its value to CLF. Indeed, during negotiations, counsel for API surveyed a small cross-section of the uploaded documents to inform CLF's understanding of what the document set likely contained, and that review confirmed that the document set contains many unresponsive documents. But when counsel for API offered to get on a call with counsel for CLF to discuss the results of his review, CLF repeatedly ignored the

5

offer.[3] But again, even if it were true that all 6,781 of the uploaded documents were relevant, the number would still exceed CLF's own figure of what amounts to a "reasonable" burden here. And those documents are just a sliver of what it now demands.

## CONCLUSION

For the foregoing reasons, API respectfully asks this Court to quash the Subpoena.

Respectfully submitted,

*Attorneys for American Petroleum Institute, Inc.*

/s/ *Aaron L. Weisman*
Aaron L. Weisman (#4438)
PANNONE LOPES DEVEREAUX & O'GARA LLC
Northwoods Office Park
1301 Atwood Avenue, Suite 215N
Johnston, RI  02919
(401) 824-5100
(401) 824-5123 fax
aweisman@pldolaw.com

/s/ *Christopher C. Muha*
Christopher C. Muha (DC Bar #987116)
(*pro hac vice forthcoming*)
DILLON PLLC
1717 K Street, Suite 900
Washington, DC 20005
T: (202) 787-5851
cmuha@dillonpllc.com

DATED: September 29, 2025

---

[3] *See, e.g.*, ECF No. 269-4 at 2 (Muha email to Myers, June 10): "My survey of the attachments (which, again, I offered two emails ago to discuss on the phone with you) revealed that some of the hits have nothing to do with API 656. For example, the '656' picked up in some of the documents is a phone number or a line number in a document where each line is numbered."

4924-9306-8909, v. 2

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2025, the foregoing was filed through the Court's electronic filing system ("ECF"), by which means the document is available for viewing and downloading from the ECF system and a copy of the filing will be sent electronically to all parties registered with the ECF system.


*/s/ Aaron L. Weisman*

4924-9306-8909, v. 2