UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., : | |
| Plaintiff, : | |
| : | |
| v. : | C.A. No. 17-396-WES |
| : | |
| EQUILON ENTERPRISES LLC (d/b/a SHELL : | |
| OIL PRODUCTS US), et al., : | |
| Defendants. : | |

**MEMORANDUM AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO QUASH OF THIRD-PARTY
AMERICAN PETROLEUM INSTITUTE, INC.**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Filed by third-party American Petroleum Institute, Inc., ("API"), now pending before the Court is a motion to quash (ECF No. 269) a Fed. R. Civ P. 45 subpoena to produce documents served on API by Plaintiff, Conservation Law Foundation, Inc. ("CLF"). In seeking to quash the subpoena, API principally relies on two arguments: first, it contends that the subpoena is facially invalid because it requires electronic production at CLF's Providence, Rhode Island office, which is more than one hundred miles from API's headquarters in Washington, D.C., which API contends is contrary to Fed. R. Civ. P. 45(c)(2)(A); and second, the subpoena is overbroad and, despite API's attempt to negotiate the scope with CLF, remains unduly and unnecessarily burdensome for a third-party subpoena, in derogation of CLF's duty pursuant to Fed. R. Civ. P. 45(d)(1) "to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

**I.      Rule 45's One-Hundred-Mile Requirement**

For production of documents, Rule 45 requires in relevant part that a subpoena must specify the place of production, and that the place must be within one hundred miles of "where

the [producing] person . . . regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). This requirement is not only for the convenience of the producing person but also to allow that person to seek to quash or modify the subpoena in its local court in the first instance. See Fed. R. Civ. P. 45(d)(3) (motion to quash or modify subpoena may be filed in court for district of compliance). Rule 45 further provides that the district of the place of compliance may transfer the motion to quash or modify to the district that issued the subpoena only with consent or based on a finding of exceptional circumstances. Fed. R. Civ. P. 45(f).

Here the subpoena properly names a physical place (not an email link) for compliance by electronic means – CLF's office in Providence, Rhode Island. API asserts that this renders the subpoena invalid because the place of compliance must be within one hundred miles of its corporate headquarters in Washington, D.C., and that it sought to quash the subpoena in the court for that district, but its motion was denied because the place of compliance was in Rhode Island. CLF counters that API regularly transacts business in person within one hundred miles of Providence, Rhode Island, because it has a regional office in Boston, Massachusetts, which is less than one hundred miles from the place of compliance. API replies with a declaration conceding that it has such an office but averring that its Boston regional office is focused on state government relations and lobbying and is not generally involved in the creation of standards like the one (API 656) that is the principal target of the subpoena. ECF No. 269-8.

While API argues vigorously that this Court should not adopt the reasoning of cases holding that electronic production may be required anywhere, without regard to the one-hundred-mile limit,[1] it ignores the reality that CLF's subpoena calls for compliance at a specific place that

---

[1] Because the subpoena in issue complies with the one-hundred-mile requirement, there is no need for the Court to resolve this question of interpretation of Fed. R. Civ. P. 45, other than to note that other courts in this Circuit have suggested that they would adopt the proposition that electronic production may be required at a place beyond one hundred miles. See Planet Fitness International Franchise v. JEG-United, LLC, 602 F. Supp. 3d 258, 264 (D.N.H.

is less than one hundred miles from API's Boston regional office. API does not dispute that this office is one at which it regularly transacts business in person; rather, it asks the Court to interpret the Rule's reference to a place where an entity "regularly transacts business in person" as strictly limited to the corporate headquarters. This argument ignores the plain language of the Rule. See Crews v. Tanpri Media & Arts Inc., No. CV-23-01236-PHX-JJT, 2024 WL 1976060, at *1 (D. Ariz. May 1, 2024) ("the place of an entity's compliance with the subpoenas must be within 100 miles of where (1) each entity is headquartered, **or** (2) . . . regularly transacts business in person") (emphasis added). This argument has been rejected in decisions that I find to be persuasive, including a decision in this Circuit. See Linet Americas, Inc. v. Hill-Rom Holdings, Inc., No. 21 C 6890, 2025 WL 889579, at *4-5 (N.D. Ill. Jan. 27, 2025) (where multi-national corporation's headquarter are more than one hundred miles from Chicago, but it has physical locations and subsidiaries within the one-hundred-mile limit, motion to quash based on geographic limits of Rule 45 denied); Trs. of Bos. Univ. v. Everlight Elecs. Co., Civil Action No. 12-cv-11935-PBS, 2014 WL 12792496, at *3 (D. Mass. Sept. 8, 2014) (despite its headquarters being in California, Apple may be compelled to comply with Rule 45 subpoena in Massachusetts because its two offices and four retail locations in Massachusetts constitute regular transaction of business in person). Further, when read carefully, many of the out-of-circuit decisions on which API relies for this argument actually hold that the subpoena recipient's business within one hundred miles of the place of compliance was so insubstantial that it did not constitute "regular[] transact[ion of] business in person." See Marshall Project, Inc. v. City of Cleveland, No. 24-

---

2022) ("several courts have found that, when it comes to documents that can be sent by mail or produced electronically, the 100-mile rule does not require a subpoena to be quashed"); Merch. Consulting Grp., Inc. v. Beckpat, LLC, Civil Action No. 17-11405-PBS, 2018 WL 4510269, at *1 n.5 (D. Mass. July 11, 2018), adopted, Civil Action No. 17-11405-PBS, ECF No. 59 (D. Mass. Aug. 1, 2018) (objection to Rule 45 subpoena based on one-hundred-mile rule might not "carry the day" for electronic production, listing cases).

MC-309 (VEC), 2024 WL 4589667, at *3 (S.D.N.Y. Oct. 28, 2024) (third-party headquartered in New York with six staffers who work remotely but live in Ohio does not regularly transact business in person in Ohio for purposes of Rule 45); Moore v. Pooches of Alrgo, Inc., Case No. 8:20-cv-2184-MSS-SPF, 2023 WL 2584466, at *2 & n.1 (M.D. Fla. Mar. 21, 2023) (subpoena's place of compliance is based only on reach of third-party's website; this is not a place where it regularly transacts business in person). Accordingly, the Court finds that API's Boston regional office, as described in its declaration (ECF No. 269-8), constitutes a place where it "regularly transacts business in person" for purposes of Rule 45(c)(2)(A). Because it is undisputed that the subpoena's place of compliance is within one hundred miles of that office, API's objection based on the one-hundred-mile requirement is overruled.

II.     **Undue Burden**[2]

CLF's subpoena contains thirty-five requests that appear broadly to be targeted on three topics: a proposed API standard called "API 656," which addresses storage tanks during uncontrolled environmental events; "Tank NATECH," which relates to "natural hazards triggering technological accidents" in petroleum storage tanks; and "CRVA," which relates to "climate risk vulnerability assessment." ECF No. 269-2. Of these three topics, the primary focus of the parties' meet and confer discussions has been on API 656. ECF Nos. 269-3 at 7. The Court's review of the thirty-five requests confirms API's claim that the requests are very

---

[2] The Court has placed little weight on API's overbreadth argument based on the Court's ruling that the API 656 documents are relevant and that the Shell Defendants must produce such of them as may be in their possession. That the subpoena to API might yield documents that overlap with documents already produced by a Shell entity is not a *per se* reason to treat the subpoena as unduly burdensome in the circumstances presented here. The argument will not be discussed further. Similarly, with no factual development regarding the degree of interest between Defendants and API with respect to the matter in issue in this case, the Court has also placed little weight on CLF's argument that API is an interested party that should bear a greater expense. See In re Exxon Valdez, 142 F.R.D. 380, 383-84 (D.D.C. 1992) (precedential value of Valdez case is matter of concern to petroleum industry that API represents and that API has substantial resources so it is well able to shoulder most of burden of subpoena compliance).

broad, likely duplicative and that full request-by-request compliance would impose a very significant undue burden.[3]

As a non-party, API has not attempted to argue relevancy or the lack of it. Rather, its approach has been to seek to cabin the burden of production by asking CLF to develop search modalities to create a manageable review set from which API could produce such documents as the search terms "hit" that are non-privileged, non-duplicative[4] and responsive. During meet and confer, the principal dispute between API and CLF has focused on how large a reasonable review set may be, with API arguing for a limit of 1,000 documents to review for responsiveness, privilege and duplication, while CLF argued that reviewing up to 5,000 documents is not unduly burdensome.

Ultimately, API and CLF reached impasse when the search terms (based on months of negotiation)[5] yielded a set of 929 emails with 6,781 attachments and 44 other documents.[6] API contends that it should not be required to review more than 1,000 of the attachments and, to avoid impasse, offered to resolve the dispute by reviewing all of the 929 emails and 44 documents, but limiting review of the 6,781 attachments to a total of 1,000, which CLF must

---

[3] For example, Requests 1 to 4, ask for every file and meeting record (including committee member lists) related to API 656 and Tank NATECH, while various requests focus from varying perspectives on communications related to API 656 and Tank NATECH. These requests are then duplicated by a broader set of requests (e.g., 27 to 35) asking for essentially the same material from varying perspectives and adding tank CRVA as a seemingly overlapping topic. Thus, the Court finds that literal request-by-request compliance would be exceedingly burdensome.

[4] The documents pertaining to meet and confer suggest that review may reveal that API's de-duplication procedure did not effectively eliminate all duplication.

[5] Given the laudably extensive meet and confer process that preceded the filing of this motion to quash, the Court is not considering any potential arguments based on missed deadlines or waiver of the right to argue a position more aggressive than a compromise proposed during meet and confer.

[6] The Court has drawn these numbers from the meet and confer emails. To the extent that this count is not accurate, API and CLF shall proceed based on the Court's intent, which is to focus on the set of documents and emails (with attachments) as identified when the negotiations reached impasse.

select in advance.[7] CLF rejected this compromise, arguing that API must review all of this material and leaving open whether it must also produce other documents related to other requests, as narrowed by meet and confer.

The Court finds that API's proposal is unduly parsimonious (particularly where the review process may quickly reveal that there are categories of false positives or duplicates that need not be reviewed, thus significantly reducing the burden). The Court also finds that CLF's proposed position[8] fails to comply with Rule 45's mandate that the requesting party must "avoid imposing undue burden," Fed. R. Civ. P. 45(d)(1), because it leaves API exposed to the burden and expense of reviewing over eight thousand documents with the open-ended possibility of more.

To break the stalemate, the Court orders that API and CLF must continue to meet and confer for up to fourteen days. If they are unable to reach a better compromise, they are ordered to proceed with the Court's default – that the motion to quash is denied to the extent that the subpoena is hereby modified to require API to produce all responsive, non-privileged, non-duplicative documents from the review set of 929 emails and 44 documents, provided that its review of the attachments may be limited to one half of them (a total of 3,391), which may be selected in advance by CLF or, if CLF declines to select in advance, by review of every other attached document, starting with the first one.[9] The deadline for production is thirty days following the end of the meet and confer period. Otherwise, the motion to quash is granted.

---

[7] Importantly, because API has not initiated a review of this set, it is unknown how many responsive, non-privileged, non-duplicative documents are in the set – for example, API notes that the search terms include character strings that might turn up entirely non-responsive documents because the search strings hit on telephone numbers.

[8] The Court notes that CLF's opposition to the motion to quash now asks the Court to enforce the subpoena with no modification or compromise.

[9] Unless altered by the meet and confer process, this Order to review 3,391 attachments applies even if API's review reveals that a swath of the review set may be removed because of false positives (for example, a search term that hit

### III. Conclusion

Based on the foregoing, the Court grants in part and denies in part the motion to quash (ECF No. 269) of third-party American Petroleum Institute, Inc.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
October 3, 2025

---

on a telephone number) or because of duplication that evaded the de-duplication process. While API may remove such documents from the review set (with notice to CLF), it must still review 3,391 of the attached documents, or all of the attachments if fewer than 3,391 remain after false positives/duplicative documents are removed.