# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

CONSERVATION LAW FOUNDATION, INC.,

    *Plaintiff*,

        v.

EQUILON ENTERPRISES LLC (d/b/a SHELL OIL PRODUCTS US), SHELL OIL COMPANY, SHELL PETROLEUM, INC., SHELL TRADING (US) COMPANY, MOTIVA ENTERPRISES LLC, and TRITON TERMINALING LLC,

    *Defendants*.

C.A. No. 1:17-cv-00396-WES-PAS

**PLAINTIFF CONSERVATION LAW FOUNDATION'S
<u>MOTION TO CHALLENGE DEFENDANTS' CONFIDENTIALITY DESIGNATIONS</u>**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii

EXHIBIT LIST ............................................................................................................................. iii

I. Introduction ........................................................................................................................ 1

II. Background ........................................................................................................................ 2

III. Legal Standard ................................................................................................................... 4

IV. Argument ........................................................................................................................... 5

    A. Conclusory Statements are Not Enough to Justify Confidential Designations ................... 5

    B. Confidential and Proprietary Information ............................................................................ 6

    C. Internal Policies and Procedures Are Not Inherently Confidential ..................................... 8

    D. Defendants Failed to Respond to CLF's October 10, 2025 De-Designation Request ......... 9

V. Conclusion ......................................................................................................................... 9

**EXHIBIT LIST**

| | |
|---|---|
| Exhibit A. | October 10 and 17, 2025 Emails Re De-Designation Request |
| Exhibit B. | October 10, 2025 Batch (Excel) |
| Exhibit C. | October 10, 2025 Batch (PDF) |
| Exhibit D. | Connecticut Case ECF 527 |
| Exhibit E. | Connecticut Case ECF 690 |
| Exhibit F. | Connecticut Case ECF 702 |

**I.     INTRODUCTION**

Plaintiff Conservation Law Foundation, Inc. ("CLF" or "Plaintiff") respectfully files this Motion to Challenge Defendants' Confidential Designations pursuant to the Protective Order entered by the Court on December 9, 2021. (*See* ECF 67, (the "Protective Order")). Defendants' confidential designations are inappropriate because Defendants made blanket designations of almost 98% of documents they have produced in this matter as confidential without providing any bases pursuant to any of the definitions in the protective order. Further, rather than provide responses to CLF's de-designation request within five business days as required under the protective order, Defendants have indicated they are actively reviewing the documents and would complete their review and provide their responses, and proposed times for a meet and confer at some point "early next week." In order to facilitate further discussion and narrowing on this issue, CLF asked whether Defendants would agree to extend both CLF's deadline to file the instant challenge as well as Defendants' deadline to provide their response to CLF's de-designation request. Defendants responded simply that they "will not agree to an extension to extend CLF's deadline to challenge confidentiality designations on documents produced before September 2025." "October 10 and 17, 2025 Emails Re De-Designation Request," attached as Exhibit A and "October 10, 2025 Batch," attached as Exhibit B, and also as Exhibit C in pdf format for the Court's ease.

CLF has filed two cases against Defendants Equilon Enterprises LLC d/b/a Shell Oil Products US, Shell Oil Company, Shell Petroleum, Inc., Shell Trading (US) Company, Triton Terminaling LLC, and Motiva Enterprises LLC ("Defendants") alleging failures to comply with the Clean Water Act ("CWA") and the Resource Conservation and Recovery Act ("RCRA"): the present case and a case in Connecticut District Court, *see Conservation L. Found., Inc. v. Shell Oil Co.*, No. 3:21-cv-000933-VDO (D. Conn. 2021) (the "Connecticut Case"). In each case, the Court

has entered a standing protective order that allows the Parties to freely designate discovery materials as confidential to protect confidential business information and an individual's legitimate expectation of privacy.[1]  While each protective order states that confidential material produced in one case may only be used for the case in which it was produced, the parties in both cases have stipulated to allowing discovery in one case to be used in the other, even if designated under one case's protective order (Connecticut Case ECF 527, attached as Exhibit D).  Defendants have designated almost 98% of the discovery they have produced in each case as confidential without any justification or substantiation, and they have provided no timely response to CLF's October 10, 2025 de-designation request to support the continued confidential designation of the documents it contains.  Exhibits B and C.  CLF therefore requests the Court grant its Motion to remove Defendants' confidential designations from the 500 documents in the attached October 10, 2025 Batch.

## II. BACKGROUND

### A. Rhode Island Case

The Court entered the stipulated protective order at ECF 67 and the protective order is located at ECF 66-1.  Pursuant to the process set forth in the protective order, CLF sent a spreadsheet to Defendants that listed 500 documents that CLF believes were improperly designated as confidential on October 10, 2025.  Exhibits A, B, and C. Defendants had five business days, until October 17, 2025, to respond to CLF's October 10, 2025 De-Designation Request pursuant to the protective order that states "The Designating Party must respond to the challenge, in writing, within five (5) business days of receipt of the written challenge." ECF 66-1 at 14.  Defendants failed to timely respond to CLF's October 10, 2025 de-designation request, even when reminded by CLF that their deadline to respond was October 17, 2025 and even when

---

[1] The protective order in the Connecticut Case was automatically entered by the court at Connecticut Case ECF 7 while the protective order in this case was negotiated and agreed between the Parties and entered by this Court at ECF 67 and on file at ECF 66-1.

2

given an opportunity for an extension of their deadline to provide a response. ("October 10 and 17, 2025 Emails Re De-Designation Request," attached as Exhibit A).

### B. Connecticut Case

This is not the first time CLF has challenged Defendants' improper blanket designations of documents as confidential. In the Connecticut Case, CLF met and conferred at length with Defendants regarding their improper confidentiality designations and has attempted twice to modify the standing protective order in the Connecticut Case to remedy the prejudice and gamesmanship worked by Defendants in improperly designating nearly every document produced as confidential without any justification. The court in the Connecticut Case has been informed of the parties' impasse on Defendants' improper designations since February of this year but has not yet allowed briefing on the issue. The Connecticut Case does not have a deadline by which parties must file challenges to each other's confidentiality designations, and the parties have not yet submitted any briefing on the issue in that case.

Further, on September 3, 2025, Defendants in the Connecticut Case filed a Motion to Seal some of CLF's expert reports and expert depositions, which were used in support of Defendants' Opposition to CLF's Motion for Leave to File Second Amended Complaint. (Connecticut Case ECF 690, attached as Exhibit E). Defendants' stated justification for sealing was that CLF's experts made significant and substantive citations to documents and/or information that is similarly marked confidential. In addition, the depositions of these experts then discussed the contents of those confidential reports in detail, including the confidential information and documents discussed therein. On September 24, 2025, CLF opposed this Motion to Seal because Defendants have not supported those designations with any specific information, the documents are available on the public docket in the Connecticut Case, and Defendants previously agreed that certain

3

documents were not confidential (Connecticut Case ECF 702, attached as Exhibit F). The court in the Connecticut Case has not yet ruled on this Motion to Seal or allowed briefing on the de-designation issue.

### III. LEGAL STANDARD

In *Roy v. FedEx Ground Package Sys., Inc.,* No. 3:17-cv-30116-KAR, 2024 WL 2025763, at * 2 (D. Mass. May 7, 2024), the court explained the legal standard for the right to access judicial documents in the First Circuit:

> "Courts have long recognized 'that public monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system.'" *United States v. Kravetz*, 706 F.3d 47, 52 (1st Cir. 2013) (quoting *In re Providence Journal*, 293 F.3d 1, 9 (1st Cir. 2002)). This public monitoring is assured by, among other things, a common law right of access to "judicial documents." *Id.* "When considering whether the common law right of access applies, the cases turn on whether the documents that are sought constitute 'judicial records.' Such records are those 'materials on which a court relies in determining the litigants' substantive rights.'" *Id*. at 54 (quoting *In re Providence Journal*, 293 F.3d at 9–10) . . . In other words, when documents are filed in connection with a substantive motion, a court cannot freely seal documents even if the court did not actually rely on those documents to rule on the motion. *See Tourangeau v. Nappi Distribs.*, No. 2:20-cv-00012-JAW, 2022 WL 768688, at *4 (D. Me. Mar. 14, 2022). "Just as the public has a right to know the evidence the Court relied on in adjudicating a motion before it, the public also has a right to know what evidence the Court *did not* rely upon in resolving the issue." *Id*. Thus, all documents filed in connection with a motion that determines the substantive rights of the parties "are subject to the presumption of public access." *Id*. at *5. "To seal filings related to nondiscovery pretrial motions . . . 'the party seeking to overcome the presumption of public access must demonstrate significant countervailing interests, like the existence of trade secrets in the documents or confidential business information.'" *Id.* (quoting *Bradford & Bigelow, Inc. v. Richardson,* 109 F. Supp. 3d 445, 448 (D. Mass. 2015)).

(citations omitted; internal quotation marks omitted). Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

4

Pursuant to Rule 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or [any] person [from whom discovery is sought] from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The party or person seeking a protective order, including an order limiting another party's right to disseminate information obtained in discovery, has the burden of demonstrating the existence of good cause. *Baker v. Liggett Grp., Inc.*, 132 F.R.D. 123, 125 (D. Mass. 1990) (citing *Anderson v. Cryovac, Inc.,* 805 F.2d 1, 7 (1st Cir. 1986)). "A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Baker,* 132 F.R.D. at 125 (quoting *Anderson,* 805 F.2d at 7).

Finally, the protective order entered in this case at ECF 66-1 states "A Party that elects to challenge a confidentiality designation may file and serve a motion that identifies the challenged material and sets forth in detail the basis for the challenge. The burden of persuasion in any such challenge shall be on the Designating Party." ECF 66-1 at 15.

IV.    **ARGUMENT**

   **A. Conclusory Statements are Not Enough to Justify Confidential Designations**

In the Connecticut case, Defendants have made conclusory statements as to why particular categories of documents are confidential, and in the instant case they have made no statements at all about why any document contained in the October 10, 2025 Batch should retain its improper confidential designation. "A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Anderson v. Cryovac, Inc*. 805 F.2d 1, 7 (1st Cir. 1986). Moreover, "broad and generic claims about confidentiality are insufficient to establish good cause for sealing." *Roy*, 2023 WL 4186291, at *4 (citing *Tourangeau*, 2022 WL 768688, at *8).

5

In CLF's lawsuit against Defendants in the Connecticut Case, the court recognized that "'conclusory statements that documents contain confidential business information are insufficient to justify sealing;'" and that a party seeking to overcome the presumption of access on confidentiality grounds "must make a particular and specific demonstration . . . that disclosure would result in an injury sufficiently serious to warrant protection.'" *Conservation L. Found., Inc. v. Shell Oil Co.,* No. 3:21-cv-00933, 2023 WL 5567614, at *3 (May 16, 2023) (quoting *Secs. & Exch. Comm'n v. Ripple Labs, Inc.*, No. 20-cv-10832 (AT), 2022 WL 17751466, at *2 (S.D.N.Y. Dec. 19, 2022). In this order, the court concluded that Defendants' "Design and Engineering Practice Specifications," or "DEPs," were not deemed confidential for sealing purposes because it was clear that the Defendants share them with "'other companies receiving technical advice and services from Shell FSI or another Shell Company,'" including "'[c]ontractors' and 'subcontractors.'" *Id.* at *3, *4.

### B. Confidential and Proprietary Information

In *Roy*, FedEx asserted that certain exhibits were "'confidential and proprietary'" and that the public disclosure of such information could irreparably harm FedEx. 2023 WL 4186291, at *4. The court disagreed, holding that the exhibits did not include the kind of information that is commonly protected from public exposure. *Id.* In rejecting FedEx's position, the court contrasted decisions protecting trade secrets, confidential research and development, financial data and other sensitive non-public data that, if disclosed to the public and competitors, would cause irreparable harm. *Id.* (citing "*Tyson Foods, Inc. v. Keystone Foods Holdings, Ltd.*, 1:19-cv-010125 (ALC), 2020 WL 5819864, at *2 (S.D.N.Y. Sept. 30, 2020) ('All of these documents fall[ ] into categories commonly sealed[:] those containing trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like . . . Non-public data of this nature is sensitive and potentially damaging if shared with competitors.') (first

and second alterations in original) (citations omitted); *In re Qualcomm Litig.,* Case No. 3:17-cv-0108-GPC-MDD, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (sealing 'licensing terms, royalties paid or owed under license agreements, financial terms, details of confidential licensing negotiations, and business strategies, along with those exhibits that contain the various confidential business agreements executed among the parties' in order to 'prevent competitors from gaining insight into the parties' business model and strategy.'); *OpenTV, Inc. v. Apple, Inc*., Case No. 14-cv-01622-HSG, 2015 WL 5714851, at *2 (N.D. Cal. Sept. 17, 2015) (finding good cause to seal the redacted portions of exhibits based on the plaintiff's claim that they contained 'information relating to [its] revenues, customers, and certain United States sales data, and that this information is highly confidential and nonpublic information, disclosure of which to the public or competitors would cause [Plaintiff] commercial, competitive, and irreparable harm.')" (internal quotation marks omitted)).

FedEx's assertions in that case were "speculative and [did] not explain how information in the exhibits about specific [Independent Service Providers or] ISPs and their drivers [would] damage FedEx, give an advantage to one ISP over another, or give FedEx's competitors an advantage in the package delivery industry." *Id.* (citing *In re Ortiz Romany*, No. 04-03074 (SEK), 2006 WL 3909778, at *3 (Bankr. D.P.R. June 16, 2006) ("conjecture, . . . without more, is not sufficient to warrant the protective order."). Further, FedEx had not explained how a particular document "would provide a financial or compet\itive advantage to FedEx's competitors" and did "not describe specific harm that will befall it if the exhibits remain on the public docket." *Id.* "It is well-established that broad and generic claims about confidentiality are insufficient to establish good cause for sealing." *Id.* (citing *Tourangeau v. Nappi Distribs*., No. 2:20-cv-00012-JAW, 2022 WL 768688, at *8 (D. Me. Mar. 14, 2022) ("a broad assertion that company documents contain

7

'non-public, confidential and proprietary business and financial information, which [defendant] seeks to prevent their competitors from acquiring' [was] insufficient to invoke the proprietary information exception to the presumption of public access" (citation omitted); *Smoothie King Franchises, Inc. v. Rock Island Venue, Inc.*, No. 20-1284-EFM, 2020 WL 13111623, at *1 (D. Kan. Oct. 21, 2020) (denying plaintiff's request to seal complaint and exhibits and rejecting its assertions that "its business materials, including operational manuals, training procedures, audits, and franchise agreements, constitute proprietary materials that should not be filed publicly" and that "public filing will harm its business and 'give competitors insight and a commercial advantage to compete against [it]'" and reasoning that, "beyond asserting that this harm will occur and its 'franchise system will be damaged,' plaintiff hasn't shown more than conclusory allegations to support these claims.")). The court also found that "FedEx's assertion that it did not share the information in the exhibits with anyone outside FedEx [did not] provide good cause for impoundment." *Id.* (citing *Salomon Smith Barney, Inc. v. HBO & Co.,* No. 98CIV8721 (LAK), 2001 WL 225040, at *3 (S.D.N.Y. Mar. 7, 2001) ("But implicit in the notion of 'confidential business information' is something beyond the mere fact that the particular datum has not previously been made available to the public. If that were the criterion, the question whether the executive dining room serves bottled or tap water would be subject to confidential treatment whenever that fact was not previously a matter of public record. What is required is some showing that the disclosure of the information in question would cause some harm, either to the disclosing party or to someone else.").

### C. Internal Policies and Procedures Are Not Inherently Confidential

In the motion to seal context, courts have agreed to seal business records that might provide an advantage to competitors. *Tourangeau v. Nappi Distribs.*, No. 2:20-cv-00012-JAW, 2022 WL

8

768688, at *6 (D. Me. Mar. 14, 2022) (citing *In re Gitto Glob. Corp.,* 422 F.3d 1, 6 (1st Cir. 2005)). "However, courts are generally unwilling to seal business information where the parties fail to explain why the specific, urgent need for confidentiality overrides the public's right of access, or where the business records are outdated or limited in scope." *Id.* at *7. Further, "documents containing a company's internal policies and procedures are not inherently confidential." *Bolich v. Nelnet Servicing, LLC*, No: 8:21-cv-886-CEH-AEP, 2022 WL 17551824, at *2 (M.D. Fla. Dec. 9, 2022); *see also BMO Harris Bank, N.A. v. Richert Funding, LLC*, No. 1:15-cv-3886-AT, 2018 WL 6709545, at *1 (N.D. Ga. Jan. 5, 2018) ("'calling a document confidential does not make it so in the eyes of the court'" (citation omitted)). To hold otherwise would defeat the public's right to access court records. *See Ward v. EZCORP, Inc.*, No: 6:15-cv-474-Orl-22DAB, 2016 WL 7666133, at *1 (M.D. Fla. Feb. 29, 2016).

### D. Defendants Failed to Respond to CLF's October 10, 2025 De-Designation Request

In failing to provide a response within five business days as required under the protective order, Defendants cannot begin to approach meeting their heavy burden to justify the continued blanket confidential designation of the documents contained in the October 10, 2025 Batch. Further, by rejecting CLF's offer to extend their deadline to provide a response, Defendants have shown that no further meet and confers or extensions will aid them in meeting their burden. Because Defendants are and will continue to be unable to meet their burden to justify these documents' confidential designations, the Court should grant CLF's Motion and remove the confidential designations from all 500 documents listed in the October 10, 2025 Batch.

### V. CONCLUSION

For the foregoing reasons, CLF asks the Court to grant the relief requested in its Motion.

9

DATED: October 17, 2025                    Respectfully submitted,

CONSERVATION LAW FOUNDATION, Inc.,
by its attorneys

*/s/ Chance Raymond*
Chance Raymond*
Chance the Lawyer, LLC
650 Poydras Street
Suite 1400 PMB #2574
New Orleans, LA 70130
(832) 671-6381
chancethelawyer@gmail.com

Christopher M. Kilian, Esq.*
Kenneth J. Rumelt, Esq.*
Anna Tadio*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
(802) 223-5992 x4015
(802) 622-3020
(802) 779-4621
ckilian@clf.org
krumelt@clf.org
atadio@clf.org

James Crowley, Esq. (RI Bar # 9405)
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
(401) 228-1905
jcrowley@clf.org

Ana McMonigle*
Conservation Law Foundation, Inc.
195 Church Street
Mezzanine Level, Suite B
New Haven, CT 06510
(203) 298-7692
amcmonigle@clf.org

Vincent L. Greene (RI Bar # 5971)
Motley Rice LLC
40 Westminster Street, 5th Floor
Providence, RI 02903
(401) 457-7730
vgreene@motleyrice.com

Michael Pendell*
Motley Rice LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
(860) 218-2722
mpendell@motleyrice.com

Ridge Mazingo*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
(843) 216-9620
rmazingo@motleyrice.com

*Attorneys for Plaintiff*
*\*Admitted Pro Hac Vice*