# EXHIBIT F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, <br><br> *Defendants*. | Civil Action No. 3:21-cv-00933-VDO <br><br><br> September 24, 2025 |

**PLAINTIFF CONSERVATION LAW FOUNDATION'S
OPPOSITION TO DEFENDANTS' MOTION TO SEAL [ECF 690]**

**I.      INTRODUCTION**

Plaintiff Conservation Law Foundation, Inc. ("CLF" or "Plaintiff") respectfully files this Opposition to Defendants' Motion to Seal [ECF 690] associated with Defendants' Opposition to CLF's Motion for Leave to File Second Amended Complaint. Defendants' Motion to Seal ("Motion") concerns expert reports (Exs. A, C, E, and F) and expert deposition testimony (Exs. B and D). CLF asks the Court to deny Defendants' Motion to Seal as Defendants have not identified the information that is purportedly confidential and have not supported any claims to confidentiality. The expert report excerpts in Exhibits A, C, E, and F were designated confidential due to occasional references to Defendants' documents produced with confidentiality designations under the standing protective order ("SPO"). However, Defendants have not supported those designations with any specific information, and as demonstrated below, the information in those excerpts is not confidential and is consistent with, or far more general than, information already

1

available on the public docket in this case from documents Defendants agree are not confidential. The deposition transcripts in Exhibits B and D have not been designated confidential by any person or Party and the ten business days of blanket designation have run, thus, there is no basis to seal those transcripts.

## II. LEGAL STANDARD

As this Court has noted (ECF 221), courts in the Second Circuit follow a three-step process in determining whether to seal documents that have been placed before them. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006). First, the court determines whether the document is a "judicial document" to which a presumption of public access attaches. *Id.* at 119. Second, if the document is indeed a judicial document, the court determines the weight to be given to the presumption under the circumstances of the case. *Id.* Third, after determining the weight to be accorded to the presumption, the court "balance[s] the competing considerations against it." *Id.* at 120. Local Rule 5(a)(3) allows for a court to seal a document filed with the Court upon particularized findings demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored to serve those reasons. D. Conn. L. R. Civ. P. 5(a)(3). Unlike exhibits to discovery motions, which this Court has noted are only afforded a "presumption of access" of "modest weight" (ECF 221 at 4), exhibits to a motion to amend a pleading are given strong presumption of public access. *See Nycomed US, Inc. v. Glenmark Generics, Inc.*, No. 08-CV-5023 (CBA), 2010 WL 889799, at *4 (E.D.N.Y. Mar. 8, 2010) (ruling letter motions to amend a complaint and answer were afforded presumption of public access less than summary judgment papers, but "even if the disputed documents are not subject to the strongest possible presumption of public access . . . they do fall on the side of the common law continuum strongly favoring public access"); *see also Lugosch*, 435 F.3d at 121-23 (noting weight of presumption of access is governed by the nature of a motion not by the ultimate outcome of the motion).

### III. ARGUMENT

Defendants' Motion to Seal argues that the four expert report excerpts, Exhibits A, C, E, and F, should be sealed because "[e]ach of these expert reports have been designated as CONFIDENTIAL by the producing parties under the SPO, because the reports reference—and discuss in detail—Defendants' non-public, confidential, and commercially sensitive materials (many of which the Court has already ordered sealed in connection with other motion practice)." ECF 690 at 4. However, upon scrutiny of the excerpts, there simply is no reference to or information from confidentially designated documents that would cause any competitive harm to Defendants. Even if there were a potential for minimal exposure of some information not generally public, below CLF shows that the information is already public in other documents filed int his litigation, and that Defendants did not support their claim with any specificity and therefore Defendants have not met their burden to supply evidence for the Court's particularized findings. For these reasons, the Court should deny Defendants' Motion, unseal the expert report exhibits, and order the Opposition Brief unredacted. While Defendants claim the deposition transcripts in Exhibits B and D "reference confidential material," and the ten-business-day period to designate has not run (ECF 690 at 3, 7), the period to designate has now run with no person designating any section confidential. CLF believes the Parties' decisions to not designate the transcripts means there is no basis for sealing those exhibits or associated references in Defendants' Opposition Brief.

### A. Exhibit A Only Refers to Public Documents or Information that Defendants Have Already Made Public

Exhibit A is page 40 of Dr. Wendi Goldsmith's Expert Report for CLF. Defendants claim that this excerpt contains detailed discussion of their "non-public, confidential, and commercially sensitive materials." ECF 690 at 4. The excerpt does not discuss Defendants' DEPs or any similar

3

document discussed in the Motion to Seal that could contain a competitive business interest. The only references to Defendants' documents are Defendants' SWPPP, which is already on the public docket (ECF 47-7), the ERAP, which is a similar compliance permit that is freely exchanged between industrial facilities and government entities and can be FOIA-ed by any member of the public.

The excerpt does contain a reference to 2021 correspondence between Defendants and their consultant Triton Environmental related to calculations of the secondary containment area at the Terminal. The report excerpt does not discuss any details of the exchange, and the fact of the retention and significant detail about it was already made public by Defendants in June 2023 when they filed the entire 30(b)(6) deposition transcript of Triton Environmental on the public docket. *See* ECF 248-21. In that deposition, the 2021 email exchange was used as an exhibit and the witness discussed the email exchange in much greater depth than was provided in the short reference in Dr. Goldsmith's report. *See* ECF 248-21 at 119-28. That deposition transcript includes block quotes from the email exchange in question stating "In February 2021, Triton performed a secondary containment evaluation at Shell's request and determined the southern tank storage area for tank number 1, number 2, and number 3 does not provide sufficient containment volume in accordance with U.S. EPA spill prevention, control, and countermeasure (SPCC) and stormwater pollution prevention plan (SWPPP) regulations." *Id.* at 125:4-11. The witness was asked if that analysis involved recommending proposals for fixing the secondary containment issue and the witness stated that was the purpose of the email and letter. *Id.* at 119. Therefore, the fact of retaining Triton and that Triton provided options for bringing the secondary containment area into compliance with the SWPPP regulations are facts that Defendants have put in the public, are all that is generally stated in the Goldsmith report excerpt, and Defendants cannot now claim any

4

additional reference compromises a confidential business interest. Defendants' Motion to Seal focuses on internal research papers and DEPs and does not describe any business competitive interest in the fact of retaining an environmental consultant.

Defendants claim the Court has already ruled that Dr. Goldsmith's report is confidential and should do the same in this instance without explaining the report excerpts have nothing in common. ECF 690 at 6. The Court previously considered a redacted version of pages 15 to 28 of Goldsmith's report, a section that deals intimately with the types of documents described in Defendants' Motion to Seal (ECF 690 at 4-6): Defendants' DEPs and other documents related to Defendants' standards and internal research on climate adaptation to consider and protect against the reasonably foreseeable risks of climate change. At issue in this Motion, is only page 40, which does not discuss or refer to any internal research documents related to climate change or the DEPs. It refers only to Defendnats' own environmental permits, which can be obtained under FOIA and are publicly on the docket in this case, and general references to facts about the Terminal and discussions Defendants have had with consultants related to the facts of the Terminal. Even if the Court were to find generally that such documents could be considered confidential, Defendants' Motion to Seal provides no affidavit or information on which the Court could find that the basic facts of the Terminal's secondary containment area are confidential when significant testimony by the same environmental consultant was placed on the public docket by Defendants two years ago. As such, Defendnats' claim to confidentiality is unsupported and the Court should deny the Motion to Seal as to Exhibit A.

### B. Exhibit B Has Not Been Designated Confidential

Exhibit B is the entire 292-page deposition testimony of CLF's Expert Wendi Goldsmith. Defendants' Motion to Seal itself concedes that their filing disregards Local Civil Rule 5(f)(2) because "Defendants' consider it necessary to provide the full context of the testimony referenced

5

so the Court can evaluate the parties' characterization of the same." ECF 690 at 2 n1. Defendants cite to a ruling in *Maynard v. Stonington Community Center* for support of the proposition that a party may disregard the local rule when the entire transcript is needed to give full consideration of an issue. *Id.* However, the ruling in *Maynard* related to questions about whether counsel had badgered and bullyed a pro se litigant across the entire deposition. *Maynard v. Stonington Community Ctr.*, No. 3:15cv483(RNC), 2016 WL 28699740, at *1 n1 (D. Conn. May 17, 2016). That ruling is easily distinguishable from this situation where Defendants' Opposition brief cites to the Goldsmith Deposition transcript only at one place for a single sentence: "Notably, she also did not provide any substantive opinions about the Coastal Management Act during her deposition." ECF 689 at 4. Since Defendants are merely pointing out that they decided not to ask Dr. Goldsmith a single question about the Coastal Management Act, the transcript is hardly evidence of what Dr. Goldsmith's report says about the Coastal Management Act, much less what CLF's complaint states. However, because Defendants' have now made regular practice of filing entire deposition transcripts on the record in willful disregard for the local rules, the Court and CLF must evaluate these improper filings for their confidentiality and make determinations on a line by line basis for testimony that has no relevance to the motion practice and is not cited or quoted in Defendants' Motion.

In this instance, no person or Party has designated a single line of Dr. Goldsmith's deposition as confidential. Dr. Goldsmith's deposition occurred on August 20, 2025 and CLF received the transcript on September 2. Under the SPO, the Parties have ten business days after receiving the transcript to serve confidentiality designations, for CLF that period ran on September 16. Defendants do not state in their Motion the day they received the transcript, but since their filing occurred on September 3, they clearly received the transcript before that date and thus their

6

period to make confidentiality designations has also run. In the absence of any designations of this transcript, the Court should deny the Motion as to Exhibit B.

### C. Exhibit C Does Not Reference Any Confidential Documents or Information

Exhibit C is a single page of Bruno Pigott's rebuttal expert report for CLF. Defendants Motion to Seal claims that this excerpt and the others "reference—and discuss in detail—Defendants' non-public, confidential, and commercially sensitive materials." ECF 690 at 4. This is not correct, this single page of the report does not contain any reference to, or description of, Defendants' documents produced in the case. Furthermore, this page of the Pigott report contains only one reference to another expert report in the case, that of Defendants' Expert Susan Bodine. That reference is a general reference to an opinion of Ms. Bodine's that does not describe any document or practice of Defendants nor any of Defendants' documents, but instead only refers to Ms. Bodine's opinion as to what a certain Clean Water Act phrase means. Defendants only cite this one-page exhibit for the proposition that this expert "did not discuss the Coastal Management Act in sufficient detail." ECF 689 at 11. Notably, Defendants did not redact their description of Mr. Pigott's report and the description does not involve any reference or discussion of Defendants' documents. Because the Pigott Report excerpt does not reference or discuss any of Defendants' materials the Court should deny the motion to seal as to Exhibit C.

### D. Exhibit D Has Not Been Designated Confidential

Exhibit D is a four-page excerpt from the rough transcript of the deposition of CLF's expert Bruno Pigott. Defendants' Motion to Seal only addresses this exhibit in passing by stating that the excerpt "reference[s] confidential material, including their respective confidential reports." ECF 690 at 7. This is inaccurate, the deposition transcript excerpt consists only of Defendants' counsel asking questions about what is not in the report and the expert confirming those things are not in the report. The transcript contains no description or information about Defendants' documents or

7

any facts about the Terminal. In Defendants' Opposition Brief, the only reference to Exhibit D is in footnote 1, which Defendants' redacted from their public brief, but only because the transcript was within the ten business days for designation. CLF received the deposition transcript of Mr. Pigott on September 9 and has not received a designation from Defendants and CLF has not designated the transcript confidential. The Court should deny Defendants' Motion to Seal as to Exhibit D as there is no claim or substantiation in Defendants' Motion to Seal as to any confidential business information or other basis for sealing.

### E. Exhibit E Does Not Reference Any Confidential Documents or Information That Defendants Have Not Already Made Public

Exhibit E is a four page excerpt of Defendants' expert report of Mr. Battles. The excerpt is designated confidential by Defendants, however, the excerpt contains no quotes or descriptions of Defendants' confidentially designated documents. The excerpt primarily discusses the draft General Permit for discharge of industrial stormwater and associated Connecticut state law. The excerpt contains a few sentences that reference the Terminal's Facility Response Plan, Business Continuity Plan, and a 2021 elevation survey, however, the descriptions of those documents are limited to what general contents they have, at the level of detail that could be gleaned from a table of contents. *See* ECF 696 at 4-5. Even if these references could be designated confidential, Defendants have already stated these documents are not confidential or put the information on the public docket.

In February 2023, Defendants stated that the Business Continuity Plan does not contain confidential information except for the personal information of employees in the appendices. ECF 174 at 8 ("The Business Continuity Plan is a confidential document because it contains personal information that is considered to be company-internal and persons named in the document would have an expectation of privacy. See Ex. A, ¶ 14. However, this personal information is limited to

8

the appendices. The remainder of the document includes a general process that is not detailed enough to be considered commercially valuable or competitively sensitive "). The reference to the BCP in the Battles Report does not mention the personal information in appendices and therefore this passage is not confidential.

The passage referencing the FRP stands only for the proposition that the facility has an FRP. In June 2023, Defendants put the entire transcripts from the 30(b)(6) depositions of Triton Environmental and Witt O'Brien's on the public docket (ECF Nos. 248-21 and 248-22), both of which contain testimony about the Facility Response Plan and the 2021 elevation survey. The Witt O'Brien Deposition Transcript at 144-45, 150-51, 178-79, and 184-90 contains descriptions of the FRP, its content, development, and relationship to other permitting documents. *See* ECF 248-22. These passages provide more detail about the existence and contents of the FRP than the reference in the Battles report, and Defendants did not redact that information or otherwise even attempt to file that information under seal.

The Battles report reference to the survey work was only for the proposition of whether the site is at an elevation above or below the coastal jurisdiction line for Connecticut. The Triton Environmental 30(b)(6) deposition references the surveying work done by Godfrey Hoffman on pages 116-18 and 123. *See* ECF 248-21. The descriptions of the site otherwise in this report are all at a level of detail that is far more general than what is already described in the Complaint in this case or in the facility's SWPPP and SPCC, which are already on the public docket. *See* ECF 47-7 and 47-8.

All told there are not any business confidential facts or information in the report, and no business competitor would learn anything about the Terminal or Defendants' operations that could have any competitive value. Defendants' Motion to Seal states that this report and all of the others

9

excerpted discuss Defendants' commercially sensitive materials in detail (ECF 690 at 4), however, there simply are not any such discussions in the excerpt. Defendants certainly have not described with any particularity what about the references are confidential in their Motion to Seal. Even if the few references to facts about the terminal or documents were redacted from this expert, those redactions would merely be to cover up information that is already described in vastly more detail in the other public filings in this case. The Court should deny the motion to seal as to Exhibit E.

  F. **Exhibit F Does Not Reference Any Confidential Documents or Information That Defendants Have Not Already Made Public**

  Exhibit F contains two separate pages from the expert report of CLF's expert Dr. Robert Nairn. Page 50 of the report contains a description of a calculation of flow through a pipe at the Terminal and a description of national standards for ingress and egress during storm events. Page 68 contains descriptions of calculations of stone sizes of riprap needed for different flow rates based on storm events described under different governmental methods and a description of the impact of waves on berm stability in general. Defendants' Motion to Seal states that this report and all of the others excerpted discuss Defendants' commercially sensitive materials in detail (ECF 690 at 4), however, Defendants have not explained what aspect of this report includes business confidential information. The minimal description of pipe diameters from the RPMS calculations were previously placed at issue in this litigation, see ECF 186, 187, and 189. Defendants addressed the confidentiality of these documents in May 2023, where they stated that the documents did not need to be sealed as they did not contain business confidential information, and should only be sealed insofar as they make public "information about physical characteristics of the facility or tanks where oil (a combustible substances) is stored." ECF 239 at 9-11. The description in Dr. Nairn's report is not as to pipe dimensions for oil storage tanks or pipes but rather for stormwater and therefore does not have any of the alleged security concerns of the information of the oil

storage infrastructure.

The Court's prior ruling on the security concerns was based on detailed calculations of the entire secondary containment area, which is based on the volume of the oil tanks themselves, the information in the Nairn Report is only as to the diameter of one stormwater pipe and does not include any information from which the oil storage tank volumes could be determined. Even if some information could be gleaned, it is not any more specific than the extensive site information that is already part of the public record. The facility's SWPPP already states the exact capacity in gallons of each tank at the facility, ECF 47-7 at 9-11, and the facility's SPCC includes additional information on the tank heights and diameters, ECF 47-8 at 55-58, and the facility's SPCC describes details of the stormwater drainage systems including diameters and flow rates of various pipes in that system, ECF 47-8 at 38-39. Furthermore, the secondary containment calculations that Defendants claimed could pose a security risk are contained within the SPCC, which has been on the public docket for years. *See* ECF 47-8 at 63-64.

The excerpt of Dr. Nairn's expert report does not expose information that is not already public and the Court should deny the Motion to Seal as to Exhibit F.

## IV. CONCLUSION

For the foregoing reasons, CLF asks the Court to deny Defendants' Motion to Seal (ECF 690) as to each exhibit and order Defendants' Opposition Brief unredacted.

Dated: September 24, 2025

Respectfully submitted,

CONSERVATION LAW
FOUNDATION, Inc., by its attorneys

*/s/ James Y. Meinert*
James Y. Meinert (ct31637)
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110

11

Tel: (617) 850-1744
E-mail: jmeinert@clf.org

Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Anna M. Tadio (phv208827)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
Tel: (802) 622-3020
Tel: (802) 622-3009
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org
E-mail: atadio@clf.org

Ana McMonigle (ct31370)
Conservation Law Foundation, Inc.
195 Church Street
Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
E-mail: amcmonigle@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
Email: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street
Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: (832) 671-6381
E-mail: chancethelawyer@gmail.com

Linda Singer (phv208339)*
Elizabeth Smith (phv208361)*
Mimi Liu (phv208839)*
Devin Williams (phv208833)*
Motley Rice LLC
401 9th St. NW, Suite 630

Washington, DC 20004
Tel: (202) 386-9626
Tel: (202) 386-9627
Tel: (202) 386-9628
Tel: (202) 386-9625
E-mail: lsinger@motleyrice.com
E-mail: esmith@motleyrice.com
E-mail: mliu@motleyrice.com
E-mail: dwilliams@motleyrice.com

Michael Pendell (ct27656)
Motley Rice LLC
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 218-2722
E-mail: mpendell@motleyrice.com

Ridge Mazingo (phv208402)*
Shalom Jacks (phv208834)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9620
Tel: (843) 216-9013
E-mail: rmazingo@motleyrice.com
E-mail: sjacks@motleyrice.com

Vincent Greene (phv208487)*
Motley Rice LLC
40 Westminster St., 5th Floor
Providence, RI 02903 US
Tel: (401) 457-7730
E-mail: vgreene@motleyrice.com

David K. Mears (ct208829)
Tarrant, Gillies, & Shems LLP
44 East State Street
Montpelier, CT 05602
Tel: (802) 223-1112
E-mail: david@tarrantgillies.com

*Attorneys for Plaintiff*

*Conservation Law Foundation, Inc.*
*\*Admitted as Visiting Attorney*