UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Conservation Law Foundation, Inc., <br><br>                         Plaintiff,<br><br>v.<br><br>Equilon Enterprises LLC d/b/a Shell Oil Products US,<br>Shell Oil Company,<br>Shell Petroleum, Inc.,<br>Shell Trading (US) Company,<br>Motiva Enterprises LLC, and<br>Triton Terminaling LLC<br><br>                         Defendants. | Case. No. 1:17-cv-00396-WES-PAS<br><br>October 31, 2025 |

**DEFENDANTS' OPPOSITION TO CONSERVATION LAW FOUNDATIONS' MOTION FOR DISCOVERY TO CHALLENGE CONFIDENTIALITY DESIGNATIONS**
**(ECF NO. 283)**

Defendants Equilon Enterprises LLC d/b/a Shell Oil Products US, Shell Oil Company, Shell Petroleum, Inc., Shell Trading (US) Company, Motiva Enterprises LLC, and Triton Terminaling LLC (collectively, "Defendants") oppose Plaintiff Conservation Law Foundation's ("CLF's") Motion (ECF No. 283) to Challenge Defendants' Confidentiality Designations.

### I.    INTRODUCTION

CLF's motion to de-designate Confidential documents misstates the legal standard of the issue before the Court and is representative of CLF's persistent weaponization of discovery and relentless strategy of engaging in motion practice to force the publication and open access to Defendants' Confidential documents and information in an effort to raise money from donors. *See* CT ECF No. 508 (Defendants' Response to CLF Motion to modify SPO and related order denying motion). CLF's own conduct further confirms that its de-designation efforts are driven by publicity and fundraising, not by any legitimate need for judicial transparency. In a prior communication to its donor base, CLF touted its review of confidentially designated documents produced by

1

Defendants and explicitly linked the potential public release of those materials to a fundraising appeal, posing the question, "What are they hiding?" and claiming that "Shell is fighting to conceal" documents the public "has a right to know." *Id*. By tying its solicitation of donations to the disclosure of Defendants' internal materials, CLF revealed that its true objective is to weaponize confidential discovery for extrajudicial purposes. Such conduct is fundamentally inconsistent with the Standing Protective Order's ("SPO") clear requirement that Designated Material be used solely for purposes of this litigation. Moreover, where a party signals its intent to exploit confidentially produced materials for public relations or fundraising campaigns, as CLF has done, the risk of misuse and competitive harm to the producing party is substantially magnified.

Both parties are certainly well aware of the lengthy record in this Court and in the Connecticut Litigation on the issue of judicial sealing and have recent experience with challenges to confidentiality designations pursuant to a protective order in the Connecticut Litigation. Despite the distinct applicable procedures and governing law, CLF's motion applies the wrong legal standard, asserting a purported right to public access. The documents at issue in CLF's last-minute confidentiality de-designation motion are *not judicial records*. The materials CLF seeks to de-designate are non-public discovery materials governed by the SPO and Rule 26(c), not any public-access doctrine.

CLF also failed to follow the procedural requirements under the SPO. The substance and timing of CLF's request to de-designate the cited documents, sent to Defendants 7 days before CLF's deadline to file a motion with the Court for documents produced before September 15, 2025 under the joint amendment to the scheduling order (ECF No. 228), is particularly problematic. Before October 10, 2025, CLF had not challenged Defendants' designations on

2

discovery documents in this case even though Defendants have produced documents on a rolling basis since August 13, 2021, and no dispositive motions have been filed by Defendants in this case yet. In fact, 99% of the challenged documents were produced before June 2025; 66% were produced before November 2024, and 58% before February 2023. CLF has had nearly all of the documents currently at issue for several months and the majority of these documents for years.

CLF's October 10, 2025 de-designation request relies solely on alleged over-designation and does not "explain the basis in writing for its belief the confidentiality designation was not proper." *See* ECF No. 66-1 at 14. Furthermore, under the provision of the SPO, "The Designating Party *shall* be permitted reasonable extensions of time to respond..." *Id. at* 15 (*emphasis added*). Unfortunately, due to CLF's gamesmanship, Defendants were not, and could not, be afforded even the request for a few additional days to complete review, without agreeing to yet another extension of the scheduling order in an 8-year-old case plagued by discovery disputes.

For these reasons, and as further explained below, the Court should deny CLF's motion in its entirety.

## II. BACKGROUND

This motion represents the latest chapter in CLF's ongoing campaign to relitigate confidentiality issues that are already pending before Judge Farrish in the Connecticut Litigation. The present dispute involves a subset of documents designated as Confidential that fall squarely within the same categories of materials that CLF has challenged in the Connecticut Litigation. After multiple rounds of meet and confers and extensive email correspondence between the parties, the parties in the Connecticut Litigation reached an impasse on those issues, which remain under consideration by Judge Farrish.

Remarkably, CLF's motion here includes documents that it previously agreed to remove from its de-designation list in the Connecticut Litigation. *See* CT ECF No. 283 Ex A. Having voluntarily withdrawn those challenges months ago, CLF now seeks to resurrect them in this forum as part of yet another broad-based attack on Defendants' confidentiality designations. This approach is not only inconsistent with CLF's prior representations to the Connecticut Court but also underscores the cumulative nature of its tactics.

As detailed in the Joint Status Report filed in the Connecticut Litigation on March 3, 2025 (CT ECF No. 539), the parties conducted meet and confers on February 11, 12, 13, and 25, 2025, regarding CLF's challenge to approximately 1,492 documents. Defendants have already agreed to de-designate 579 documents, and an additional 114 documents were de-designated from consultant productions. CLF withdrew its challenges to another 106 documents, and Defendants continue to evaluate 41 additional documents for potential de-designation or redaction. In total, 693 of the 1,492 documents originally contested have already been de-designated, nearly half of the set at issue.

The remaining 652 documents fall into five categories currently before Judge Farrish for resolution:

- Internal Reports and Memoranda
- Business Communications
- Drafts
- Industry Group, Association, and Cross-Business Forum Materials
- Security Documents

The parties jointly advised the Connecticut Court that they had reached an impasse and requested the Court's guidance on next steps, including whether exemplar documents should be

4

reviewed in camera or submitted under seal with briefing. CLF has urged a public briefing process to reargue general principles of business confidentiality, while Defendants have maintained that in camera review, consistent with the governing SPO and the Court's prior guidance (CT ECF No. 517), is the appropriate mechanism. That issue remains pending before Judge Farrish, and no ruling has been issued.

The burden has been significant. Defendants' billing analysis shows that counsel and litigation support staff have already spent over 300 hours addressing CLF's serial confidentiality challenges, including repeated document-by-document reviews, analyses, and meet and confers. This total represents the equivalent of more than seven weeks of a full-time attorney's work devoted solely to these issues. Those hours do not include additional time expended addressing CLF's multiple motions to seal and unseal documents or preparing supporting declarations in connection with those motions.

During the parties' February 25, 2025 meet and confer, Defendants explained that any declaration supporting the confidentiality designations currently being disputed would contain similar language to declarations already filed in the case, including the declarations of Brian Evans (ECF No. 174, 343), Matthew Penny (ECF No. 234), Michael Sullivan (ECF No. 239), and Lynn S. Borgmeier (ECF No. 360). Nevertheless, CLF insisted that these existing declarations were insufficient and demanded that Defendants prepare and file additional declarations, further compounding the burden on Defendants without advancing resolution of the underlying dispute.

As Defendants explained in their October 17, 2025 written response to CLF's request to de-designate documents, Defendants were in the process of reviewing the documents challenged by CLF to categorize based upon prior agreements. *See* ECF No. 283 Exhibit A.

The chart below reflects Defendants' categorization of the documents, grouping the challenged documents into the same categories defined by both parties in the dispute pending before Judge Farrish.

**TABLE A: DEFENDANTS CATEGORIZATION OF DISPUTED DOCUMENTS**

| Category | # of Disputed Docs | Confidential Nature of Material |
|---|---|---|
| Internal Reports and Memoranda | 245 | These documents are non-public and reflect company and facility-specific information (including facilities outside of the US and established scope of discovery) relating to Defendants internal business processes and risk management strategies including:<br><br>• Policies, audits, performance reviews and risk assessments and compliance analysis<br>• Technical parameters and site-specific characteristics, beyond the scope of what is publicly available<br>• Sensitive operational approaches and engineering analysis<br>• Project development requests, budgets and financial forecasts<br>• Resiliency analysis and assessments, as well as work with consultants concerning non-public business activities |
| Business Communications | 125 | These documents reflect Defendants' confidential communications, including communications with consultants and contractors, concerning non-public business activities, processes, strategies and initiatives. |
| Drafts | 30 | Draft reports, responses, presentations, reviews, letters and other materials that reflect Defendants' strategies, analyses and assessments of environmental and compliance issues and concern internal processes relating to non-public business activities. |
| Industry Groups, Associations, Cross Business Forums | 0 | N/A |
| Security | 0 | N/A |
| Technical Issue Slipsheets | 5 | These documents are files with technical issues that could not be remediated. No information was produced to CLF and Defendants do not have any producible information with respect to these records. |
| Withdrawn by CLF in CT matter | 16 | On February 25, 2025 CLF withdrew their confidentiality de-designation request with respect to Defendants' Design and Engineering Practices ("DEPs"), including 13 of the 16 documents at issue in CLF's confidentiality challenge in this matter. |

| Category | # of Disputed Docs | Confidential Nature of Material |
|---|---|---|
| Defendants Agree to De-Designate | 76 | Defendants have completed review and analysis of the challenged documents and agree to de-designate as not confidential. |

### III.  LEGAL STANDARD

Protective orders serve an essential function in managing complex litigation and safeguarding sensitive business information. Under Federal Rule of Civil Procedure 26(c)(1), a court may, for good cause shown, issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by requiring that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G); *See Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1114 (3d. Cir. 1986) (defendants [are] entitled to protection from the disclosure of matters which are truly secret, where disclosure thereof will affect the operation of their business, but not their potential liability. Formulae, marketing strategy, and other matters whose disclosure would affect defendants with their respective competitors or in conjunction with the day-to-day operation of their business are entitled to protection).

Any party seeking to challenge the confidentiality designation bears the initial burden of raising the issue with respect to certain, specified documents. *See Cipollone v. Liggett Group, Inc. et al.*, 795 F.2d 1108, 1123 (3d. Cir. 1986). (ECF No. 67 at 15) (A Party that elects to challenge a confidentiality designation may file and serve a motion that identifies the challenged material and *sets forth in detail* the basis for the challenge) (emphasis added).

The party seeking to maintain a confidentiality designation then bears the burden of showing that the information qualifies for protection under the governing SPO and Rule 26(c). *See, e.g., In re Zyprexa Litig.,* 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007).

Once that showing is made, the challenging party must demonstrate, with specific examples, those documents where the designation is unwarranted or that disclosure is necessary despite the asserted confidentiality. *See*, e.g., *Cipollone v. Liggett Group, Inc. et al.* (3d. Cir. 1986), at 1122.

Courts routinely afford substantial deference to protective orders under Fed. R. Civ. P. 26(c), including stipulated orders entered in good faith by the parties because they promote cooperation and efficiency in complex litigation by assuring parties that confidential information disclosed during discovery will not be misused. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984) (trial court has 'substantial latitude' to manage confidentiality); *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532-33 (1st Cir. 1993) ("effective discovery … is achieved by affording relatively generous protection"); *In re Alexander Grant & Co.,* 820, F.2d 352, 356-57 (11th Cir. 1987) ("…when the parties consent to an umbrella order restricting access to sensitive information in order to encourage maximum participation in the discovery process, conserve judicial resources and prevent the abuses of annoyance, oppression and embarrassment, a district court may find good cause and issue a protective order pursuant to Rule 26(c)."). When discovery disputes arise, such as those over confidentiality designations, courts emphasize proportionality and efficiency, and may deny challenges that are abusive to the discovery process, including matters of delay, expense and damages to reputation and privacy. *See* Fed. R. Civ. P. 26(b)(1), 26(c)(1)*; Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34–36 (1984); *see also Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213–14 & n.4 (9th Cir. 2002) (clarifying that the 'good cause' standard of Rule 26(c) differs from the 'compelling reasons' standard applied to the sealing of dispositive materials, and that the focus of Rule 26(c) is on protecting the discovery process, not on restricting public access to judicial records).

Accordingly, a party seeking de-designation must do more than assert generalized dissatisfaction with another court's process or demand repetitive litigation of the same issues in multiple jurisdictions. The proper inquiry is whether good cause continues to exist for the designations under the SPO and Rule 26(c), not whether the challenging party can impose additional burden through duplicative motion practice.

## IV.  ARGUMENT

### A.  CLF Failed to Meet Its Obligations Under the SPO

CLF's motion fails at the threshold because it rests on nothing more than a sweeping generalization rather than any document-specific showing. In its October 10 correspondence initiating this latest challenge, CLF stated only that "these designations are facially improper based on the fact that Defendants have designated over 98% of the documents produced in this litigation as confidential." ECF No. 283 Ex A. That assertion is not a legal standard, a factual showing, or even a cognizable basis for relief. The SPO does not impose any numerical cap on confidentiality designations, nor does Rule 26(c) require that a producing party limit designations to some arbitrary percentage. In large-scale litigation involving proprietary operational data, internal analyses, and third-party consultant materials, it is neither unusual nor improper for the majority of discovery materials to be designated confidential. CLF's reliance on an aggregate percentage underscores that its challenge is not grounded in substance but in rhetoric, designed to manufacture a dispute where none exists.

### B.  None of the Law Cited in CLF's Motion is Relevant to the Issue Before the Court

CLF's motion is an exercise in misdirection. Its argument section is wholly divorced from the issue presented to the Court. This is because the current question before the Court does not involve whether to permit Defendants to seal documents filed in connection with a

9

dispositive motion or even a discovery dispute. Instead, the issue presented to the Court concerns the propriety of Defendants' designation of documents produced in discovery.

A close examination of the cases cited by CLF reveals that none squarely pertain to the issue before the Court: whether Defendants properly designated documents under the SPO. Instead, the bulk of these cases address the public's right to access "judicial documents," or documents filed by a party in connection with a motion, particularly one addressing the merits of the dispute. *See Roy v. FedEx Ground Package Sys., Inc.*, 2024 U.S. Dist. LEXIS 82896, at *4-6 (D. Mass. May 7, 2024) (concerning exhibits filed in connection with briefing surrounding class certification); *Roy v. FedEx Ground Package Sys., Inc.*, 2023 U.S. Dist. LEXIS 109460, at *6-10 (D. Mass. June 26, 2023) (addressing whether to permit filing documents under seal in connection with a motion to compel); *In re Qualcomm Litig.*, 2017 U.S. Dist. LEXIS 185481, at *7-9 (S.D. Cal. Nov. 8, 2017) (concerning whether to permit filing of certain documents under seal in connection with a motion to dismiss); *OpenTV, Inc. v. Apple, Inc.*, 2015 U.S. Dist. LEXIS 124533, at *4-5 (N.D. Cal. Sept. 17, 2015) (concerning whether to permit filing of certain documents under seal in connection with a motion to stay); *Smoothie King Franchises, Inc. v. Rock Island Venue, Inc.*, 2020 U.S. Dist. LEXIS 262787, *2-3 (D. Kan. Oct. 21, 2020) (concerning whether to permit filing certain exhibits from the Complaint under seal); *Tourangeau v. Nappi Distribs.,* 2022 U.S. Dist. LEXIS 44690, at *3-7 (D. Me. Mar. 14, 2022) (assessing the propriety of filing certain summary judgment exhibits under seal); *Bolich v. Nelnet Servicing, LLC*, 2022 U.S. Dist. LEXIS 222489, *2-5 (M.D. Fla. Dec. 9, 2022) (same). In each of these cases, the dispute involved documents presented by the parties in connection with the resolution of a motion, usually one that had the possibility of resolving the rights of the parties, where the public interest in access to "judicial documents" (sometimes referred to as "judicial

records" is the strongest. *See United States v. Kravetz*, 706 F.3d 47, 54 (1st Cir. 2013) (distinguishing between "materials on which a court relies in determining the litigants substantive rights," such as in connection with a dispositive motion, and "those that 'relate[] merely to the judges role in management of the trial' and therefore 'play no role in the adjudication process.'"). Instead, there is no tradition of public access to discovery materials. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32-36 (1984).

Indeed, many of the cases cited by CLF acknowledge this principle. *Kravetz*, 706 F.3d at 54 (acknowledging that there is no right of public interest to discovery materials); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7(1st Cir. 1986) (same); *Bradford & Bigelow, Inc. v. Richardson*, 109 F. Supp. 3d 445, 447 (D. Mass. 2015) (same); *Tourangeau,* 2022 U.S. Dist. LEXIS 44690, at *14 (same). Stated differently, these cases stand "for the principle, among others, that neither the constitutional right of public access nor 'the common law presumption' of public access 'encompass[es] discovery materials." *Koppel v. Moses,* 2022 U.S. Dist. LEXIS 252155 (D. Mass. Nov. 10, 2022) (*quoting Anderson*, 805 F.3d at 13). This line of cases is therefore wholly irrelevant to the issue presented to the Court.

### C. The Discovery Materials Produced by Defendants and Challenged by CLF Are Properly Confidential

The lone issue to be decided by CLF's motion is whether Defendants properly designated documents under the SPO. The answer is that the SPO provides the Designating Party with reasonable extensions to complete review, and in this instance, the documents remaining documents are properly designated. Among the materials are documents that Defendants maintain as trade secrets. Under Rhode Island law, a trade secret is anything that "derives independent economic value…from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its

11

disclosure or use…and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Clifford McFarland Read & Lundy, Inc. v. Brier*, C.A. No. 96-1007, 1998 R.I. Super. LEXIS 68, at *11 (Super. Ct. May 13, 1998) (quoting R.I.G.L § 6-41-1(D)). As discussed in more detail below, these materials satisfy both of these requirements.

Additionally, "proprietary business information," another category under the SPO, has been recognized by courts to include "internal analyses, business strategies, or customer negotiations." *See Vellali v. Yale Univ.*, 2021 U.S. Dist. LEXIS 192334, at *4 (D. Conn. Sep. 30, 2021). The documents in question clearly fall within this definition because they provide critical operational insights into Defendants' internal operations, which warrant protection.

Further, the Court has already granted sealing of the same or closely related categories of materials in this and the Connecticut Litigation. *See e.g.,* CT ECF No. 221; CT ECF No. 288, and CT ECF No. 656.

The declarations previously submitted in the Connecticut Litigation explain that Defendants internal technical and proprietary business information comprises confidential assessments and processes developed from unique internal expertise. *See e.g.,* CT ECF No. 629-1, Penny Decl.; CT ECF No. 630, Jaramillo Decl.; CT ECF No. 174-1, Ex. A to Defendants' Response to CLF's Motion to Seal; CT ECF No. 174, Feb. 3, 2023 Declaration of Brian Evans; CT ECF No. 239-1, Ex. A to Defendants' Response to CLF's Motion to Seal; CT ECF No. 239, May 30, 2023 Declaration of Michael Sullivan. Public disclosure would cause competitive harm in two distinct ways: enabling competitors to copy Defendants' business practices and operations without compensation and disclosing proprietary content and know-how with direct financial and competitive consequences. *Id.*

### D. CLF's Claim That Defendants "Failed to Respond" to Its October 10 Request Is Factually False and Legally Unsupported

CLF's contention that Defendants "failed to respond" to its October 10, 2025 de-designation request is demonstrably incorrect. The record shows that Defendants responded promptly, substantively, and in good faith, within one week after CLF's email, identifying documents that CLF itself had previously withdrawn from the nearly identical challenge in the Connecticut Litigation, and confirming that Defendants were actively reviewing the remaining materials.

On October 10, 2025, CLF sent an email attaching a spreadsheet of approximately 500 documents and stating, without any document-specific analysis, that "these designations are facially improper based on the fact that Defendants have designated over 98% of the documents produced in this litigation as confidential." ECF No. 283 Ex. A at 4. That generalized assertion is not a valid challenge under the SPO. The SPO requires that a party identify documents and "explain in writing the basis for its belief that the confidentiality designation was not proper" and engage in a meaningful, good-faith dialogue to narrow any genuine disputes, not issue blanket numerical challenges divorced from substance. ECF 66-1 at 14.

Nevertheless, Defendants took CLF's request seriously. On October 17, 2025, counsel for Defendants responded in writing, advising CLF that the team was "actively reviewing the documents." ECF No. 283 Ex. A at 3. Defendants' email specifically identified thirteen (13) documents that CLF had previously included in a prior confidentiality challenge in the Connecticut Litigation but later withdrew after discussion between the parties. *Id.* Defendants provided the bates numbers for those documents, requested that CLF withdraw its duplicative challenge in Rhode Island for the same reasons, and noted that many of the remaining documents appeared to fall into categories currently pending before Judge Farrish in Connecticut. *Id.*

Defendants also stated that they would complete their review, categorize the materials, and propose times for a meet and confer the following week. *Id.*

That same day, rather than respond to the substance of Defendants' email or address the duplication with the Connecticut Litigation, CLF filed the motion at issue in this Court alleging that Defendants "failed to respond" and "cannot meet their burden." CLF's characterization of the record is simply wrong. Defendants not only responded within the timeframe contemplated by the SPO but did so with a detailed and reasoned communication reflecting active engagement.

Moreover, CLF's October 10 email did not provide any substantive basis requiring a document-by-document defense within five business days. A challenge premised solely on aggregate percentages, asserting that Defendants' designations are "facially improper" because they exceed 98% of production, is neither contemplated by Rule 26(c) nor sufficient to trigger an obligation to prepare individualized justifications across hundreds of documents. Defendants' reasoned response and ongoing review fully satisfied their obligations under the SPO and the Federal Rules.

In short, CLF's "failure to respond" argument is a manufactured narrative, contradicted by the written record and inconsistent with the plain language and purpose of the SPO. Defendants acted diligently and in good faith. CLF's mischaracterization of those communications, while simultaneously reasserting challenges it previously withdrew in Connecticut, further underscores the duplicative nature of this motion and is yet another attempt by CLF to take a "second bite at the apple" in this forum.

### E. CLF's Motion is an End-Run Around the Connecticut Court

As this Court is well aware, the dispute between these parties spans two related matters, one pending before this Court and the Connecticut Litigation. CLF's motion challenges whether Defendants properly designated certain materials produced by them in discovery as Confidential

14

under the SPO in *this case*. *See* ECF No. 283 at 2-4. Yet this dispute is not unique. CLF acknowledges that this precise issue is pending in the Connecticut Litigation, that it has been pending there for more than six months, and that the court has not ruled on the dispute or permitted further briefing on it. *See* ECF No. 283 at 6-7. Further, CLF acknowledges that certain documents have been filed in the Connecticut Litigation that are the subject of a pending motion to seal, which CLF has opposed. *Id.*

But apparently unsatisfied with the Court's response in the Connecticut Litigation, CLF now brings this dispute here, without any support for its position other than a desire to see Defendants' documents publicly available and the supposition that Defendants have over-designated documents as confidential.

## V.  CONCLUSION

For all these reasons, Defendants respectfully request that the Court deny CLF's motion in its entirety.

Dated: October 31, 2025

Respectfully submitted,

/s/ *Rose J. Jones*
Rose J. Jones (admitted *pro hac vice*)
HILGERS GRABEN PLLC
1372 Peachtree St NE
Atlanta, GA 30309
T: (402) 218-2106
rjones@hilgersgraben.com

Douglas A. Henderson (admitted *pro hac vice*)
Carmen R. Toledo (admitted *pro hac vice*)
Ryan T. Kearney (admitted *pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com
ctoledo@KSLAW.com
rkearney@kslaw.com

Antonio E. Lewis (admitted *pro hac vice*)
KING & SPALDING LLP
300 S Tryon Street Suite 1700
Charlotte, North Carolina 28202
T: (704) 503-2600
alewis@kslaw.com

Drew T. Bell (admitted pro hac vice)
King & Spalding LLP
500 W 2nd St, Suite 1800
Austin, Texas 78701
(512) 457-2000
dbell@kslaw.com

Jennifer Stuhldreher (admitted pro hac vice)
King & Spalding LLP
1100 Louisiana St, Suite 4100
Houston, Texas 77002
(713) 751-3200
jstuhldreher@kslaw.com

Robert D. Fine (RI Bar # 2447)
Chace Ruttenberg & Freedman, LP
One Park Row, Suite 300
Providence, RI 02903
T: (401) 453-6400
rfine@crfllp.com

Anthony G. Papetti (admitted *pro hac vice*)
Beveridge & Diamond, P.C.
825 Third Ave., 16th Floor
New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

John S. Guttmann (admitted *pro hac vice*)
Beveridge & Diamond, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (admitted *pro hac vice*)

        Beveridge & Diamond, P.C.
        400 West 15th Street Suite 1410
        Austin, TX 78701-1648
        T: (512) 391-8000
        F: (202) 789-6190
        breddy@bdlaw.com

        Megan L. Marzec Morgan (admitted *pro hac vice*)
        Roy D. Prather III (admitted *pro hac vice*)
        Beveridge & Diamond, P.C.
        201 North Charles Street, Suite 2210
        Baltimore, MD 21201-4150
        T: (410) 230-1305
        F: (410) 230-1389
        mmorgan@bdlaw.com
        rprather@bdlaw.com

        ***Counsel for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing instrument to be served on all counsel of record on October 31, 2025.

        <u>/s/ Rose. J. Jones</u>
        Rose J. Jones (admitted *pro hac vice*)
        HILGERS GRABEN PLLC
        1372 Peachtree St NE
        Atlanta, GA 30309
        T: (402) 218-2106
        rjones@hilgersgraben.com