UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CONSERVATION LAW FOUNDATION, INC.,     :
           Plaintiff,                       :
                                         :
       v.                           :          C.A. No. 17-396-JJM
                                         :
EQUILON ENTERPRISES LLC (d/b/a SHELL    :
OIL PRODUCTS US), et al.,                :
           Defendants.                   :

**MEMORANDUM AND ORDER REGARDING
UNSEALING OF JUDICIAL RECORDS**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

This suit is an enforcement action brought under the Clean Water Act and the Resource Conservation and Recovery Act pertaining to the Shell Defendants' operations at the Providence Terminal, a bulk storage and fuel terminal located in the Port of Providence. Conservation L. Found., Inc. v. Shell Oil Prods. US, C.A. No. 17-00396-WES, 2025 WL 1530508, at *1 (D.R.I. May 29, 2025). Now pending before the Court is the motion (ECF No. 312) of Plaintiff, Conservation Law Foundation, Inc. ("CLF") to unseal certain "judicial records" (also referred to as "judicial documents") that were filed in connection with the Shell Defendants' motion for partial summary judgment and considered by the Court in making its summary judgment determination. See Conservation L. Found., Inc. v. Shell Oil Prods. US, C.A. No. 17-396 WES, 2025 WL 3712265, at *4 (D.R.I. Dec. 23, 2025) (denying Shell Defendants' motion for partial summary judgment), reconsideration denied, C.A. No. 17-396 JJM, 2026 WL 593927 (D.R.I. Mar. 3, 2026). Pertinent to the motion to unseal are the proceedings in a similar case pending in the United States District Court for the District of Connecticut pertaining to a terminal in

Connecticut.  Conservation L. Found., Inc. v. Shell Oil Prods. US, et al., No. 3:21-CV-00933-

VDO (D. Conn. filed July 7, 2021).

In opposition to the motion to unseal, the Shell Defendants relied heavily on proceedings

in the parallel Connecticut proceeding, where (as of then) analogous materials remained sealed.

ECF No. 316 at 2.  However, while the motion to unseal was pending, the Connecticut court

issued a decision denying motions to seal and ordering that materials previously sealed

(analogous to the materials now in issue in this case) be unsealed because they had become

judicial documents in connection with Daubert motions.  Conservation L. Found., Inc. v. Shell

Oil Co., No. 3:21-cv-00933 (VDO), 2026 WL 764396, at *9 (D. Conn. Mar. 18, 2026).  Although

the Connecticut court held that in filings submitted in connection with Daubert motions the

presumption of public access is lower than the strong presumption applied to material introduced

in connection with dispositive motions or trial, it nevertheless found that the Shell Defendants'

declarations did not satisfy the burden of overcoming the applicable presumption with adequate

evidence of competitive harm.  Id. at *6-9.  Importantly, in this Court, the Shell Defendants must

sustain a higher burden because the operative motion is dispositive, yet they continue to rely on

the same declarations that the Connecticut court deemed insufficient.  See id.; ECF Nos. 316-5

(Declaration of Matthew Penny), 316-6 (Declaration of Sergio Jaramillo).

In light of the issuance of the Connecticut unsealing decision just days before the hearing

on this motion, the Court afforded the parties additional time to meet and confer and to submit

briefs regarding its significance and impact on the pending motion.  To allow time to do that, the

Court set a post-hearing briefing schedule.  As a result, the parties reached agreement on many of

the documents in issue, with CLF agreeing to redactions to one and the Shell Defendants

agreeing to unseal others.[1]  The remaining dispute is focused on three internal Shell documents

dealing with Design and Engineering Practices ("DEPs"), which set internal standards for use in

the design and construction of Shell projects.  See Penny Decl. ¶¶ 2, 5-6; Jaramillo Decl. ¶¶ 4,

11-12.  The Shell Defendants seek to redact virtually all of the content of the DEPs themselves

and all of the quotations and descriptions of them that appear in one partial summary judgment

brief and three statements of fact, as well as references to them in the quoted deposition

testimony of Dr. Paul Verlaan.[2]  As to each document, the Shell Defendants seek to sustain the

seal prohibiting public access to the unredacted portions.  CLF's motion to unseal these seven

---

[1] That is, to the extent that material was unsealed/unredacted in Connecticut, those specific items and references are now unsealed/unredacted in this Court by agreement of the parties.  ECF No. 340 at 2.

[2] There are seven documents remaining in issue; they fall into two groups.  First, the Shell Defendants seek to sustain extensive redactions (covering up virtually all of the content) of three internal Shell documents addressing DEPs.  Penny Decl. ¶ 2 (ECF No. 316-5).  They are:

- DEP Informative Metocean Design and Operating Considerations (Endorsement of ISO 19901-1:2005) (Feb. 2011).  ECF No. 247-4 (Exhibit H to ECF No. 252).

- DEP Informative Metocean Design and Operating Considerations for Offshore and Onshore Structures – Adaption to Climate Change (Feb. 2015).  ECF No. 247-5 (Exhibit J to ECF No. 252).

- DEP Meteorological and Oceanographic Design and Operating Considerations Offshore, Costal and Onshore (Amendments/Supplements to ISO 19901-1:2015) (Feb. 2017).  ECF No. 247-6 (Exhibit K to ECF No. 252).

Second, the Shell Defendants seek to redact references to the DEPs that appear in one brief and three statements of facts:

- Plaintiff's Corrected Response in Opposition to Defendants' Motion for Partial Summary Judgment.  ECF No. 251.

- Plaintiff's Statement of Additional Facts Not in Dispute.  ECF No. 252.

- Defendants' Response to Plaintiff's Statement of Additional Facts Not in Dispute.  ECF No. 255-1.

- Defendants' Response to Plaintiff's Statement of Additional Facts Not in Dispute.  ECF No. 260.

For the convenience of the Court, the Shell Defendants submitted (but did not file) a courtesy set of the documents in issue highlighted so that the Court could clearly determine what portions the Shell Defendants ask to maintain as sealed.  The Court hereby directs the Clerk's office to docket this submission under seal with Court access only to preserve a record of what was submitted.

documents is now ripe for determination.  For the reasons that follow, the motion to unseal what remains in issue is granted.

## I.        Standard of Review and Applicable Law

The Court's polestar for this motion is the common law presumption of the public's right of access – "vibrant . . . not unfettered" – to "judicial documents" or "judicial records," which include "'materials on which a court relies in determining the litigants' *substantive* rights.'" Glass Dimensions, Inc. v. State St. Corp., Civil Action No. 10-10588-FDS, 2013 WL 6280085, at *1 (D. Mass. Dec. 3, 2013) (emphasis in original) (quoting United States v. Kravetz, 706 F.3d 47, 54, 59 (1st Cir. 2013)); see Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978) (common law right of access applies to judicial records).  The presumption rests on the long-recognized and important principle "that public monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system."  Siedle v. Putnam Invs., Inc., 147 F.3d 7, 9-10 (1st Cir. 1998) (internal quotation marks omitted).

Consistent with this principle, as this Court has previously found, protective orders appropriately issue to provide for sealing of confidential discovery to facilitate production during the phase of the case when the interest of the producing party in protecting sensitive "'raw'" material is at its highest and the public interest in accessing such "'raw'" material is at its lowest. Conservation L. Found., Inc. v. Equilon Enters. LLC, C.A. No. 17-396-JJM, 2026 WL 221425, at *1 (D.R.I. Jan. 27, 2026) ("there is no tradition of public access to 'raw' discovery materials; 'restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information'") (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 32-34 (1984)), objection pending, ECF No. 332 (filed Mar. 25, 2026); see Poliquin v. Garden Way, Inc., 989 F.2d 527, 535 (1st Cir. 1993) ("effective discovery . . . is achieved by affording

relatively generous protection").  However, the public interest in access shifts as the case proceeds and the public interest heightens until the dispositive phase when it is at its peak and only the most sensitive documents, public disclosure of which would impose significant harm, should be redacted or (rarely) sealed.  Conservation L. Found., Inc., 2026 WL 221425, at *1.  Thus, once a confidential discovery document becomes a judicial record because it is presented to the court in connection with a merits-related motion and considered in connection with a merits-focused decision, the presumptive right of public access to it becomes "strong."  Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 121 (2d Cir. 2006); Roy v. FedEx Ground Package Sys., Inc., Case No. 3:17-cv-30116-KAR, 2024 WL 2025763, at *2 (D. Mass. May 7, 2024).

In the face of this strong presumption of public access to documents filed in connection with a summary judgment motion, the continued sealing of such judicial documents "must be based on a particular factual demonstration of potential harm, not on conclusory statements." Kravetz, 706 F.3d at 60 (internal quotation marks omitted); In re Providence Journal Co., Inc., 293 F.3d 1, 13 (1st Cir. 2002); Fed. Nat'l Mortg. Ass'n v. Greenleaf, No. 2:19-cv-00256-NT, 2020 WL 733847, at *2 (D. Me. Feb. 13, 2020).  This strong presumption applies even if the Court did not cite the documents in its ruling. Tourangeau v. Nappi Distribs., No. 2:20-cv-00012-JAW, 2022 WL 768688, at *4 (D. Me. Mar. 14, 2022) ("Just as the public has a right to know the evidence the Court relied on in adjudicating a motion before it, the public also has a right to know what evidence the Court *did not* rely upon in resolving the issue.") (emphasis in original).  That is, once a document has been considered by the Court in connection with a dispositive-of-the merits determination, it becomes a judicial record as to which the party seeking to sustain its non-public status bears a heavy burden of justifying continued sealing.  See Glass Dimensions, 2013 WL 6280085, at *1-2 (material should remain sealed based on

5

declarations by knowledgeable individuals to establish its sensitive and confidential nature, but only as long as "access to the material does not play a positive role that is significant in the functioning of the process at issue in the case at bar").  Put differently, "[t]he weight of [the] presumption is of the 'highest' for 'documents used by parties moving for summary judgment,' which 'should not remain under seal absent the most compelling reasons.'"  Conservation L. Found., Inc., 2026 WL 764396, at *3-4 (alterations in original) (quoting Conn. Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC, No. 3:18-cv-705 (VLB), 2020 WL 13303727, at *2 (D. Conn. Aug. 21, 2020)); see Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 410 (1st Cir. 1987) (once "strong" presumption is triggered, only "most compelling reasons can justify non-disclosure of judicial records") (internal quotation marks omitted).

Consistent with First Circuit law, if this Court sustains the sealing of a judicial record, it must make "particularized findings" justifying the sealing.  Maine v. Zealandia Holding Co., Inc., No. 1:13-cv-00471-JAW, 2014 WL 12726291, at *1 (D. Me. Jan. 31, 2014) (internal quotation marks omitted).

## II.     Background

Early in the history of this case, the Court entered a protective order (ECF No. 67) to permit discovery to flow freely.  With the protective order in place, factual discovery has explored the Shell Defendants' knowledge of flood and storm risks, their internal evaluations of terminal vulnerabilities, their operational decision-making concerning containment and stormwater controls, and whether they historically implemented measures consistent with industry best practices.  Conservation L. Found., Inc., 2025 WL 3712265, at *2.  The litigation has focused on the parties' dispute regarding the extent to which the Shell Defendants' corporate

climate-risk materials, and its practices at other terminals, bear on its conduct at the Providence Terminal. Id.

The Shell Defendants' partial summary judgment motion that is the foundation for CLF's contention that the documents in issue are judicial records was extensively briefed by both parties and was denied on December 23, 2025, Conservation L. Found., Inc., 2025 WL 3712265, at *4, and again on reconsideration on March 3, 2026, Conservation L. Found., Inc., 2026 WL 593927, at *1-2. This dispositive determination was based on the Court's analysis of the evidence presented by the parties in support of and opposition to the motion. The Court found that CLF had presented enough to establish a trial-worthy dispute regarding expert views on best practices, the Shell Defendants' internal understanding of climate-related risks, the industry response (and the historical approach) to whether and when coastal facilities were expected to consider climate-driven flooding risks and whether and when the Shell Defendants had internally evaluated those risks and/or industry materials suggesting that best practices had begun to shift during the relevant period. Conservation L. Found., Inc., 2025 WL 3712265, at *3-4. The Court's summary judgment decision specifically observes that the parallel Connecticut case presents a similar issue – "that, the permit in question in that case unambiguously imposes a minimization duty that in turn references and incorporates best industry practice." Id. at *4 n.1 (internal quotation marks omitted). The Court endorsed the Connecticut court's holding that, "[w]hether best industry practice is to consider climate change factors is a factual question that the Court cannot resolve at this time." Id. (internal quotation marks omitted).

The DEPs on which the instant motion to unseal is focused bear directly on these issues, presented over a time continuum from 2011 through 2017. Two of them (ECF No. 247-4 from 2011 and ECF No. 247-5 from 2015) are what the Penny Declaration describes as "informative,"

7

in that they are summary in nature and provide background for a more detailed "specification" DEP.  Penny Decl. ¶ 7.  Only one (ECF No. 247-6 from 2017) is a "specification," which contains the details generally used by a contractor performing work.  Penny Decl. ¶ 7.  However, this DEP specification is relatively short, in that it is an amendment to other documents.  ECF No. 336 at 6.

The Penny Declaration explains that, in general, DEPs "reflect the professional, technical know-how of Shell," and that access to them "is controlled through a restricted portal system that has security controls in place."  Penny Decl. ¶¶ 6, 9.  The Penny Declaration describes the internal controls used generally to protect the DEPs in the course of normal business, while acknowledging that the DEPs are sometimes provided to third parties, but that is done only by license "under contractual agreements through which Shell . . . is compensated[,]" and "[t]hus, the DEPs have commercial value."  Id. ¶ 11.  However, while the Penny Declaration establishes that DEPs have commercial value as a general matter, it does not explain why these specific DEPs implicate any privacy or competitive concerns.  See Conservation L. Found., Inc., 2026 WL 764396, at *8.  The same vagueness taints the other Declaration on which the Shell Defendants now rely – the June 4, 2025, Declaration from Sergio Jaramillo.  Id.  That is, the Jaramillo Declaration is only slightly more specific than the typical "'conclusory statements that documents contain confidential business information[.]'"  Id. (alteration in original) (quoting Sec. & Exch. Comm'n v. Ripple Labs, Inc., No. 20 Civ. 10832 (AT), 2022 WL 17751466, at *2 (S.D.N.Y. Dec. 19, 2022)).  It supplies no information regarding the confidentiality or privacy concerns posed by the specific DEPs relied on by CLF in connection with its opposition to the Shell Defendants' summary judgment motion.

III.    Analysis

8

Having carefully reviewed both the Penny Declaration and the Jaramillo Declaration and having examined the documents in issue, I agree with the Connecticut court's findings about the limitations of these generic and somewhat conclusory declarations and endorse and adopt them as my findings here. Thus, I find that nothing in either the Penny Declaration or the Jaramillo Declaration even purports to explain why these specific DEPs, which are now between nine and fifteen years old, continue to have such significant commercial value that their public disclosure would damage the Shell Defendants' competitive standing in the marketplace in a specific way.

Mindful of these findings, the first step in the Court's analysis is to determine whether the documents in issue have become judicial records. While it is clear that these documents were presented to the Court in connection with the Court's partial summary judgment determination, the Shell Defendants suggest that the DEPs were attached and referenced by CLF in its opposition to the summary judgment motion gratuitously, not for a legitimate litigation purpose, but rather to be able to use them for non-judicial advocacy.[3] ECF No. 340 at 4-5. Having carefully revisited the Court's partial summary judgment determination, the record on which the determination rested and the Court's consideration of that record, the Court soundly rejects the Shell Defendants' contention. That is, the Court finds that the materials in issue are clearly judicial records whose content was at the very core of the dispositive-of-the-merits argument that the Shell Defendants put in issue by filing their motion for partial summary judgment.

---

[3] The Shell Defendants unsuccessfully made the same argument in Connecticut, alleging that "CLF has previously broadcasted its motivation to publicize these materials based on a desire to solicit fundraising contributions from its donors – not in pursuit of any public need for the documents to be in the public domain." Conservation L. Found., Inc., 2026 WL 764396, at *9 (internal quotation marks omitted). In Connecticut, this argument of ulterior motive was rejected as unpersuasive. Id. As to the First Amendment concerns that this argument implicates, the Court notes that "parties have general first amendment freedoms with regard to information gained through discovery and . . . absent a valid court order to the contrary, they are entitled to disseminate the information as they see fit." Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 780 (1st Cir. 1988).

The Court also need not linger on the second and third steps of the analysis – that is, because these are judicial records considered in connection with a dispositive motion, the presumption that they must be made publicly available is very strong and the burden on the Shell Defendants to overcome the presumption and justify continued sealing is exceedingly heavy. Nor is it a stretch to conclude that the non-specific Penny/Jaramillo Declarations, having been found insufficient to overcome the weaker presumption applicable to <u>Daubert</u> judicial records, do not come close to meeting this burden now in the context of a dispositive motion.  <u>See</u> <u>Conservation L. Found., Inc.</u>, 2026 WL 764396, at *3-4, *8.  Thus, the Court finds that the Shell Defendants have not made the particularized showing required to justify the continued sealing either of the three DEPs or of the litigation materials that reference and/or quote from them, including the references to the Verlaan testimony.

## IV.     Conclusion

Based on the foregoing, the Court grants CLF's motion to unseal the judicial records that remain in issue.  ECF No. 336.  However, before these records become public documents, the Court directs the parties to meet and confer regarding a handful of links that appear in them.  The Court is unable to ascertain whether any of these links point to confidential internal online repositories or other confidential materials.  To the extent that such links permit access to confidential (that is, non-public) materials that have not become judicial records in this case or in the Connecticut case, the redaction of just the links may be sustained.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
May 7, 2026